Teresa S. Renaker – CA State Bar No. 187800
Margo Hasselman Greenough – CA State Bar No. 228529
Kirsten G. Scott – CA State Bar No. 253464
RENAKER HASSELMAN SCOTT LLP
235 Montgomery Street, Suite 944
San Francisco, CA 94104
Telephone: (415) 653-1733
Facsimile: (415) 727-5079
teresa@renakerhasselman.com
margo@renakerhasselman.com
kirsten@renakerhasselman.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| STEPHEN H. BAFFORD and LAURA BAFFORD, <br><br> Plaintiffs, <br><br> vs. <br><br> NORTHROP GRUMMAN CORPORATION, ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN, and ALIGHT SOLUTIONS LLC (formerly known as Hewitt Associates LLC), <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF ERISA AND STATE LAW** <br><br> **JURY TRIAL DEMANDED AS TO STATE-LAW CLAIMS** |

## JURISDICTION

1.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f). As to the state-law claims, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state-law claims form part of the same case or controversy. In addition, as to the state-law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy

1  exceeds the sum or value of $75,000, exclusive of interest and costs, and is

2  between citizens of different states.

3  **VENUE**

4  2.       Venue lies in the Central District of California pursuant to ERISA §

5  502(e)(2), 29 U.S.C. § 1132(e)(2), because the Northrop Grumman Pension Plan

6  ("the Northrop Plan") is administered in this District and Defendants Northrop

7  Grumman Corporation  ("Northrop"), Administrative Committee of the Northrop

8  Grumman Pension Plan ("Administrative Committee"), and Alight Solutions LLC

9  ("Alight") may be found in this District.

10  **INTRADISTRICT ASSIGNMENT**

11  3.       Pursuant to General Order 16-05, Section I.B.1.a.(1)(c), this case

12  should be assigned to the Western Division.

13  **NATURE OF THE DISPUTE**

14  4.       Plaintiffs Stephen Bafford and Laura Bafford bring this suit to

15  remedy harm that they suffered when the Northrop Plan reduced their monthly

16  pension benefit due to errors in Defendants' calculations of their benefit. The

17  Baffords relied on the erroneous calculations in planning for their retirement and

18  in deciding that Mr. Bafford would retire from his employment with Northrop in

19  2016 and commence receiving his pension under the Northrop Plan.

20  5.       For more than six years, Defendants issued Mr. Bafford pension

21  benefit statements showing that if he worked to at least age 55 and elected a 100

22  percent joint-and-survivor annuity form of benefit, the Northrop Plan would pay

23  over $2,000 per month for Mr. Bafford's lifetime and the same amount for Mrs.

24  Bafford's lifetime if he predeceased her. After Mr. Bafford retired at age 56 and

25  commenced receiving his pension, Defendants notified him that they had

26  provided the wrong figure in all the statements and in his pension election

27  paperwork, and that his actual Northrop Plan benefit was only $807.79 per

28  month.

1

**The Parties and the Plan**

2
3
4
5
6

6.      At all relevant times, Plaintiff Stephen Bafford has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan, and Plaintiff Laura Bafford has been a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(7), in the Northrop Plan. The Baffords reside in Ogden, Utah.

7
8
9
10
11
12
13
14
15
16
17
18

7.      Defendant Northrop is a Delaware corporation with its principal place of business in Falls Church, Virginia. Northrop is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Northrop Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Northrop Plan. Among other authority, Northrop has the authority to appoint the Northrop Plan's Plan Administrator and exercises discretion in selecting and monitoring the Plan Administrator and/or other fiduciaries. The sector headquarters for Northrop Grumman Aerospace Systems is located in Redondo Beach, Los Angeles County, California.

19
20
21
22
23
24
25
26
27
28

8.      Defendant Administrative Committee is the Plan Administrator of the Northrop Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). The Administrative Committee is a named fiduciary of the Northrop Plan by reason of being the Plan Administrator, and is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Northrop Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Northrop Plan. The Administrative Committee's address is in El Segundo, Los Angeles

County, California.

9.      As the Plan Administrator, the Administrative Committtee is the entity responsible for providing pension benefit statements to Northrop Plan participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a), among other responsibilities.

10.     Defendant Alight is an Illinois limited liability company with its principal place of business in Illinois. Beginning in 2008, Alight's predecessor, Hewitt Associates LLC ("Hewitt"), provided record-keeping and third-party administration services to the Northrop Plan. Alight maintains an office in Irvine, Orange County, California.

11.     Upon information and belief, Northrop and/or the Administrative Committee contracted with Hewitt to carry out certain of the Administrative Committee's responsibilities for the Northrop Plan, including its pension benefit statement responsibilities under ERISA § 105(a) and its responsibility for processing pension applications.

## FACTS

### Mr. Bafford's Employment and Pension Service

12.     Mr. Bafford began his employment with Northrop in April 1987, at age 26, as a Procurement Expeditor. He worked for Northrop in Pico Rivera, California, and Palmdale, California.

13.     As a Northrop employee, Plaintiff accrued pension benefits under the Northrop Grumman Retirement Plan, which is a sub-plan of the Northrop Plan.

14.     In February 1998, Mr. Bafford terminated employment with Northrop and went to work for TRW Corporation ("TRW"), in Ogden, Utah, as a Subcontract Manager.

15.     As a TRW employee, Mr. Bafford accrued pension benefits under the TRW Pension Plan.

16.     In December 2002, Northrop acquired TRW, and Mr. Bafford

1  became a Northrop employee again.

2      17.    Northrop renamed the TRW Pension Plan the Northrop Grumman

3  Space and Mission Systems Salaried Employees Pension Plan ("SMS Plan"). Mr.

4  Bafford continued to accrue benefits under the SMS Plan as a Northrop

5  employee.

6  **Pertinent Plan Terms**

7      18.    The Northrop Plan is an employee pension benefit plan as defined by

8  ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by Defendant Northrop. The

9  Northrop Plan is a defined benefit pension plan, meaning that each participating

10  employee is entitled to a fixed periodic payment during retirement based on a

11  pension calculation formula set forth in the plan.

12      19.    Prior to July 1, 2003, the Northrop Plan used a final average pay

13  formula to calculate benefits. Under this formula, a participant's pension was

14  calculated based on factors including his years of benefit service and his average

15  rate of annual salary during his highest three years of salary out of the last ten

16  years that he was a covered employee under the plan. After July 1, 2003,

17  participants who accrued benefits prior to July 1, 2003, continued to be entitled to

18  have those benefits calculated using the final average pay formula. Mr. Bafford's

19  Northrop Plan benefit is calculated based on the pre-July 1, 2003 benefit formula.

20      20.    Under the Northrop Plan terms applicable to Mr. Bafford, a

21  participant is entitled to a normal retirement benefit commencing at age 65.

22  However, a participant who has attained at least age 55 with at least 10 years of

23  service is entitled to a reduced early retirement benefit, and a participant whose

24  age plus his years of early retirement service equals at least 85 is entitled to an

25  unreduced early retirement benefit – that is, to receive his full age 65 pension

26  before age 65.

27  **Mr. Bafford's Pension Benefit Statements and Pension Election**

28      21.    As Mr. Bafford approached age 50 in 2010, he began requesting

pension benefit statements to assist him and Mrs. Bafford in planning for retirement.

22.     The statements that Mr. Bafford received indicate that they come from Northrop. However, upon information and belief, the statements that Mr. Bafford received were prepared and issued by Hewitt pursuant to its arrangement with Northrop and/or the Administrative Committee.

23.     In requesting statements, Mr. Bafford tested various scenarios based on different employment termination dates and benefit commencement dates. Hewitt's statements consistently informed Mr. Bafford that if he worked until at least age 55 and elected to receive his benefit in the form of a 100 percent joint-and-survivor annuity, his Northrop Plan benefit would be over $2,000 per month during his lifetime and the same amount for Mrs. Bafford's lifetime if he predeceased her. Specifically, Hewitt provided the following statements:

| Statement Date | Employment Termination Date | Benefit Commencement Date | 100% JSA Benefit Amount |
|---|---|---|---|
| Mar. 2010 | Oct. 2015 | Nov. 2015 | $2,033.93 |
| Nov. 2011 | Sept. 2015 | Oct. 2015 | $2,011.90 |
| Feb. 2013 | Sept. 2015 | Oct. 2015 | $2,007.27 |
| Feb. 2013 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Mar. 2014 | Jan. 2017 | Feb. 2017 | $2,110.64 |
| Oct. 2014 | Sept. 2015 | Oct. 2015 | $2,077.27 |
| Oct. 2014 | Sept. 2015 | Apr. 2016 | $2,098.02 |
| Oct. 2014 | Mar. 2016 | Apr. 2016 | $2,098.02 |
| Aug. 2015 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Aug. 2015 | Dec. 2016 | Jan. 2017 | $2,111.58 |
| Aug. 2015 | Apr. 2017 | May 2017 | $2,107.58 |
| June 2016 | Sept. 2016 | Oct. 2016 | $2,114.41 |

24.     Concurrently with requesting Northrop Plan statements, Mr. Bafford also requested and received statements of his pension benefit under the SMS plan.

25.     In July 2016, Mr. Bafford requested and received materials necessary

to commence his pension as of October 1, 2016. The materials included a statement again showing the 100 percent joint-and-survivor benefit amount of $2,114.41 per month.

26.     After Mr. Bafford submitted his pension paperwork, Hewitt issued him a "Retirement Plan Pension Election Confirmation Statement" showing that he had elected the 100 percent joint-and-survivor annuity benefit of $2,114.41 per month. Mr. Bafford signed and returned the accompanying "Pension Election Authorization Form," certifying that he had elected the 100 percent joint-and-survivor annuity form of benefit. The form states that Mr. Bafford "[c]ertifies that I understand this payment option pays **$2,114.41** per month," and "[c]ertifies that I understand my beneficiary is LAURA A. BAFFORD and will receive upon my death $2,114.41 per month."

27.     On August 11, 2016, Hewitt confirmed that it had received and processed Mr. Bafford's Pension Election Authorization Form and that his first payment would be made on October 1, 2016.

28.     From October 1, 2016, through January 1, 2017, the Northrop Plan made four monthly benefit payments to Mr. Bafford of $2,114.41 each.

### Defendants' Recalculation of the Northrop Plan Benefit

29.     On December 9, 2016, more than three months after Mr. Bafford's retirement, Hewitt notified Mr. Bafford that it had recalculated his benefit "based on updated information," and that his new monthly benefit would be $2,439.53 – that is, $325.12 *more* than his monthly Northrop Plan benefit. Yet the notice also stated that Mr. Bafford had been *overpaid* $6,033.97, and that beginning March 1, 2017, his benefit would be reduced by 25 percent per month until the overpayment was "fully repaid."

30.     On December 29, 2016, Hewitt issued Mr. Bafford another "Pension Plan Recalculation Notice," explaining that his monthly Northrop Plan benefit would be permanently reduced from $2,114.41 to $807.89 – a reduction of more

than 60 percent.

31.     In this notice, Hewitt admitted that there was no "updated information" that formed the basis of the recalculation. Instead, Hewitt admitted that it had used "incorrect pay" to generate the $2,114.41 monthly benefit figure. Hewitt explained that it had based its calculations of Mr. Bafford's Northrop Plan benefit on final average salary from his second period of Northrop employment, when it should have based the calculations on final average salary from his first period of Northrop employment.

32.     Thus, Hewitt recalculated Mr. Bafford's pension based on information that had been in Northrop's possession for nearly 20 years, including throughout the period when Hewitt issued at least a dozen statements showing that Mr. Bafford had earned a pension in excess of $2,000 per month.

33.     The current present value of the difference between the promised benefit of $2,114.41 and the reduced benefit of $807.89 over the Baffords' lifetimes is approximately $417,000.

**Plaintiffs' Reliance**

34.     In deciding when Mr. Bafford would retire, the Baffords relied on Defendants' promise of a monthly pension benefit in excess of $2,000 if Mr. Bafford worked until he reached eligibility for early retirement. The Baffords carefully analyzed their sources of retirement income in an effort to ensure that they would have adequate income to support themselves for the remainder of their lives. The consistent promise that the Northrop Plan benefit would be in excess of $2,000 per month was integral to the decision that Mr. Bafford would retire and to other financial decisions that the Baffords made in the years leading up to Mr. Bafford's retirement. Had the Baffords known that the benefit was $800 per month rather than $2,000 per month, Mr. Bafford would not have elected to retire at age 56.

35.     Until Hewitt's belated admission of its longstanding error, the

Baffords did not know, and had no reason to know, that Hewitt was miscalculating Mr. Bafford's Northrop Plan benefit.

## FIRST CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a), Against Defendants Northrop and Administrative Committee

36.     Plaintiffs incorporate Paragraphs 1 through 35 as though fully set forth herein.

37.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan. These duties include the duty to provide complete and accurate information regarding participants' benefits.

38.     Northrop and the Administrative Committee breached their fiduciary duties to Plaintiffs by acts and omissions including failing to ensure that they or their delegees provided Plaintiffs with complete and accurate information regarding the amount of the Northrop Plan benefit.

39.     Plaintiffs reasonably relied on the pension information they received in planning for their retirement.

40.     Plaintiffs have been harmed by Northrop's and the Administrative Committee's breaches in that their retirement income and savings are substantially less than they would have been had Plaintiffs received accurate information about the Northrop Plan benefit.

## SECOND CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a), Against Defendant Alight

41.     Plaintiffs incorporate Paragraphs 1 through 35 as though fully set forth herein.

42.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan. These duties include the duty to provide complete and accurate information regarding participants' benefits.

43.     At all relevant times, Alight's predecessor Hewitt was a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it had discretionary authority or discretionary responsibility in the administration of the Northrop Plan. In particular, Hewitt prepared summaries of the Northrop Plan provisions – sometimes referred to as "requirements documents." Upon information and belief, Hewitt performed its pension calculations and other services according to these summaries, rather than according to the Northrop Plan documents.

44.     Hewitt breached its fiduciary duty to Plaintiffs by acts and omissions including repeatedly providing Mr. Bafford with inaccurate information regarding the amount of his pension.

45.     Plaintiffs reasonably relied on the pension information they received in planning for their retirement.

46.     Plaintiffs have been harmed by Hewitt's breaches in that their retirement income and savings are substantially less than they would have been had they received accurate information about the Northrop Plan benefit.

### THIRD CLAIM FOR RELIEF

**Claim for Violation of ERISA § 105, 29 U.S.C. § 1025,
Against Defendant Administrative Committee**

47.     Plaintiffs incorporate Paragraphs 1 through 35 as though fully set forth herein.

COMPLAINT                                                                 PAGE 10

48.     ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan administrator furnish pension benefit statements to defined benefit plan participants. Specifically, a plan administrator must furnish a pension benefit statement (1) at least once every three years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and (2) to a participant or beneficiary of the plan upon written request.

49.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

50.     ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

51.     ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

52.     The Administrative Committee violated Section 105(a) by failing to provide Mr. Bafford with accurate statements of his Northrop Plan benefit and/or by failing to monitor the performance of its delegate that provided pension statements to Mr. Bafford. For at least six years prior to his retirement, Mr. Bafford never received an accurate statement of his Northrop Plan Benefit.

53.     Plaintiffs were harmed by the Administrative Committee's violations in that they relied on the erroneous statements in making retirement and financial

planning decisions.

## FOURTH CLAIM FOR RELIEF

### *In the Alternative to the Second Claim for Relief*
### Claim for Professional Negligence Against Defendant Alight

54.     Plaintiff incorporates Paragraphs 1 through 35 as though fully set forth herein.

55.     A third-party administrator performing professional services owes a duty of care to the intended beneficiaries of the professional services rendered, including, without limitation, (1) the duty to have that degree of learning and skill ordinarily possessed by a reputable third-party administrator practicing in the same or similar locality under similar circumstances; (2) the duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same or similar locality in similar circumstances; and (3) the duty to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning. A failure to perform any one of these duties constitutes negligence.

56.     A third-party administrator that holds itself out as a specialist in a particular field, such as the calculation of benefits under a pension plan, has the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to use the care and skill ordinarily used, by a reputable specialist practicing in the same field and in the same or similar locality and under similar circumstances. A failure to fulfill either duty constitutes negligence.

57.     Thus, a third-party administrator providing services to an employee benefit plan has a duty to exercise such care, skill, and diligence as other members of the profession commonly possess and exercise in the course of the provision of services to or for an employee pension benefit plan.

58.     Hewitt breached its professional duties by providing grossly inaccurate information to Plaintiffs regarding the amount of Mr. Bafford's benefit

under the Northrop Plan on numerous occasions over at least a six-year period, and by related acts and omissions.

59.     As a consequence of Hewitt's professional negligence, Plaintiffs have been injured in that they relied upon the inaccurate information in planning for their retirement, and have suffered losses as a result.

## FIFTH CLAIM FOR RELIEF

### *In the Alternative to the Second Claim for Relief*
### Claim for Negligent Misrepresentation Against Defendant Alight

60.     Plaintiffs incorporate Paragraphs 1 through 35 as though fully set forth herein.

61.     Hewitt misrepresented to Plaintiffs the amount of Mr. Bafford's benefit under the Northrop Plan.

62.     Hewitt had no reasonable ground for believing that its statements regarding the amount of Mr. Bafford's benefit were true.

63.     Hewitt had a duty to Plaintiffs to exercise reasonable care in providing them with statements of Mr. Bafford's pension benefit.

64.     Hewitt intended that Plaintiffs act in reliance on its statements of Mr. Bafford's pension benefit for purposes of financial planning, including because there is no purpose for a pension benefit statement other than to assess the value of the pension benefit.

65.     Plaintiffs justifiably relied on Hewitt's pension statements in planning for their retirement.

66.     Plaintiffs have been injured as a result of their justifiable reliance on the inaccurate information in planning for retirement, and have suffered losses as a result.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs prays that the Court grant the following relief: As to the First Claim for Relief:

COMPLAINT                                                                    PAGE 13

A.   Declare that Defendants Northrop and Administrative Committee have breached their fiduciary duties to Plaintiffs;

B.   Order that Defendants Northrop and Administrative Committee are estopped to deny that Plaintiffs are entitled to benefits under the Northrop Plan consistent with the statements provided to Mr. Bafford prior to December 2016;

C.   Surcharge Defendants Northrop and Administrative Committee in the amount necessary to place Plaintiffs in the position they would have occupied but for Defendants' breaches;

D.   Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

E.   Provide such other equitable relief as the Court deems appropriate.

As to the Second Claim for Relief:

A.   Declare that Defendant Alight has breached its fiduciary duties to Plaintiffs;

B.   Surcharge Defendant Alight in the amount necessary to place Plaintiffs in the position they would have occupied but for Defendant's breaches;

C.   Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

D.   Provide such other equitable relief as the Court deems appropriate.

As to the Third Claim for Relief:

A.   Declare that Defendant Administrative Committee violated ERISA § 105, 29 U.S.C. § 1025;

B.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), order that Defendant Administrative Committee is estopped to deny that Plaintiffs are entitled to benefits under the Northrop Plan consistent with the statements provided to Mr. Bafford prior to December 2016;

C.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such other equitable relief as the Court deems appropriate;

D.   Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the Plan Administrators personally liable to Plaintiffs in the amount of $110 a day from the date of each separate failure to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a);

E.   Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief as the Court deems proper;

F.   Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

G.   Provide such other relief as the Court deems equitable and just.

As to the Fourth Claim for Relief:

A.   Order that Alight pay Plaintiffs damages for the harm they have suffered as a consequence of Hewitt's professional negligence; and

B.   Provide such other relief as the Court deems equitable and just.

As to the Fifth Claim for Relief:

A.   Order that Alight pay Plaintiffs damages for the harm they have suffered as a consequence of Hewitt's negligent misrepresentations; and

B.   Provide such other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to their claims brought under state law.

Respectfully submitted,

Dated: December 7, 2018          RENAKER HASSELMAN SCOTT LLP

By:   */s/ Teresa S. Renaker*

Teresa S. Renaker
Attorneys for Plaintiffs