Teresa S. Renaker – CA State Bar No. 187800
teresa@renakerhasselman.com
Margo Hasselman Greenough – CA State Bar No. 228529
margo@renakerhasselman.com
Kirsten G. Scott – CA State Bar No. 253464
kirsten@renakerhasselman.com
RENAKER HASSELMAN SCOTT LLP
235 Montgomery Street, Suite 944
San Francisco, CA 94104
Telephone: (415) 653-1733
Facsimile: (415) 727-5079

Elizabeth Hopkins – CA State Bar No. 324431
ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STEPHEN H. BAFFORD and EVELYN L. WILSON on their own behalves and on behalf of a class of similarly situated participants and beneficiaries, and LAURA BAFFORD,<br><br>    Plaintiffs,<br><br>    vs.<br><br>NORTHROP GRUMMAN CORPORATION; ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN; and ALIGHT SOLUTIONS LLC (formerly known as Hewitt Associates LLC),<br><br>    Defendant. | Case No. 2:18-cv-10219-ODW-E<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF ERISA AND STATE LAW**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED AS TO STATE-LAW CLAIMS** |

**JURISDICTION**

1.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f). As to the state-law claims, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state-law claims form part of the same case or controversy. In addition, as to the state-law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**VENUE**

2.      Venue lies in the Central District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Northrop Grumman Pension Plan ("Northrop Plan") is administered in this District and Defendants Northrop Grumman Corporation  ("Northrop"), Administrative Committee of the Northrop Grumman Pension Plan ("Administrative Committee"), and Alight Solutions LLC ("Alight"), formerly Hewitt Associates, LLC ("Hewitt"), may be found in this District.

**INTRADISTRICT ASSIGNMENT**

3.      Pursuant to General Order 16-05, Section I.B.1.a.(1)(c), this case should be assigned to the Western Division.

**NATURE OF THE CASE**

4.      Plaintiffs Stephen H. Bafford and Evelyn L. Wilson bring this suit on behalf of themselves and on behalf all similarly situated participants in and beneficiaries of the Northrop Plan under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000 *et. seq.* ("ERISA"), for equitable relief to enforce rights under and remedy violations of ERISA, and to recover statutory penalties for Defendants' failure to comply with ERISA's disclosure requirements.

1  Alternatively, with respect to Defendant Alight, Plaintiffs seek to recover damages
2  stemming from professional negligence and negligent misrepresentation under
3  California law.

4  ### THE PARTIES

5      5.      Plaintiff Stephen H. Bafford is, and has been at all relevant times, a
6  participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan.
7  Mr. Bafford is a resident of Ogden, Utah.

8      6.      Plaintiff Evelyn L. Wilson is, and has been at all relevant times, a
9  participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan.
10 Ms. Wilson is a resident of Rancho Palos Verdes, California.

11     7.      Plaintiff Laura Bafford is, and has been at all relevant times, a
12 beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(7), of the Northrop Plan.
13 Ms. Bafford is a resident of Ogden, Utah.

14     8.      Defendant Northrop is a Delaware corporation with its principal place
15 of business in Falls Church, Virginia. Northrop is a fiduciary of the Northrop Plan
16 within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises
17 authority or control respecting management or disposition of the Northrop Plan's
18 assets, it exercises discretionary authority or discretionary control respecting
19 management of the Northrop Plan, and/or it has discretionary authority or
20 discretionary responsibility in the administration of the Northrop Plan. Among other
21 authority, Northrop has the authority to appoint the Northrop Plan's Plan
22 Administrator and exercises discretion in selecting and monitoring the Plan
23 Administrator and/or other fiduciaries. The sector headquarters for Northrop
24 Grumman Aerospace Systems is located in Redondo Beach, Los Angeles County,
25 California.

26     9.      Defendant Administrative Committee is the Plan Administrator of the
27 Northrop Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. §
28 1002(16)(a)(i). The Administrative Committee is a named fiduciary of the Northrop

Plan by reason of being the Plan Administrator, and is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Northrop Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Northrop Plan. The Administrative Committee's address is in El Segundo, Los Angeles County, California.

10.     As the Plan Administrator, the Administrative Committee is the entity responsible for providing pension benefit statements to the Northrop Plan participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a), among other responsibilities. The Northrop Plan designates the Administrative Committee as a named fiduciary, with responsibility for the general administration of the Northrop Plan. The Northrop Plan specifies that the Administrative Committee's responsibilities include the responsibility to comply with ERISA's reporting and disclosure requirements, to prepare and distribute communications to employees as a part of Northrop Plan operations, to construe and interpret the terms of the Northrop Plan, and to determine the amount of benefits and authorize payments from the Trust funding the Northrop Plan.

11.     Defendant Alight is an Illinois limited liability company with its principal place of business in Illinois. Beginning in 2008, Alight's predecessor, Hewitt, provided record-keeping and third-party administration services to the Northrop Plan. Alight maintains an office in Irvine, Orange County, California. Upon information and belief, pursuant to the Administrative Committee's delegation of authority, Hewitt operated the Northrop Grumman Benefits Center and a website at http://benefits.northropgrumman.com, and issued pension benefit statements and other communications on Northrop letterhead.

12.     Alight holds itself out as providing "a total retirement approach to help drive better solutions and outcomes," based on "40+ years of knowledge, expertise, and innovation managing retirement plans for large organizations, helping people save, plan and retire confidently." Alight publicly asserts that its defined benefit plan administration will enable employees "to retire confidently with industry-leading expertise, technology and support," with "a customer experience designed to help [employees] fully understand their options" and "tools and rigorous processes that assure quality in all aspects of the services we deliver," making "essential plan information easy to access and navigate."

13.     Upon information and belief, Northrop and/or the Administrative Committee contracted with Hewitt to carry out certain of the Administrative Committee's responsibilities for Northrop Plan administration, including its pension benefit statement responsibilities under ERISA § 105(a) and its responsibility for processing pension applications.

14.     Hewitt's services included providing an online platform that allowed participants to request statements of their accrued pension benefits based on potential future employment termination dates and benefit commencement dates, in purported satisfaction of the Administrative Committee's obligations under ERISA § 105(a).

## FACTS

### Pertinent Plan Terms

15.     The Northrop Plan is an employee pension benefit plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by Defendant Northrop. The Northrop Plan consists in part of sub-plans including the Northrop Grumman Retirement Plan and the Grumman Pension Plan. The Northrop Plan is a defined benefit pension plan, meaning that each participating employee is entitled to a fixed periodic payment during retirement based on a pension calculation formula set forth in the applicable sub-plan, and each surviving spouse of a participating employee is

1  entitled to a fixed periodic payment during his or her lifetime unless he or she has

2  validly waived the survivor benefit.

3       16.    Prior to July 1, 2003, each Northrop Plan sub-plan used a final average

4  pay formula to calculate benefits. Under the final average pay formula, a

5  participant's pension was calculated based on factors including his years of benefit

6  service and his average rate of annual salary during his highest three years of salary

7  out of the last ten years that he was a covered employee under the plan.

8       17.    Effective July 1, 2003, the Northrop Plan switched to a less-generous

9  "cash balance" formula. However, because ERISA prohibits reductions of accrued

10  benefits, Northrop Plan participants who accrued benefits before the cash balance

11  conversion continued to be entitled to have those benefits calculated under the more-

12  generous final average pay formula.

13       18.    Thus, after July 1, 2003, participants who accrued benefits prior to July

14  1, 2003, continued to be entitled to have those benefits calculated using the final

15  average pay formula. Plaintiffs' Northrop Plan benefits are calculated based on the

16  pre-July 1, 2003 benefit formula. Through a complex formula pieced together from

17  multiple plan documents, definitions, and appendices, the final average pay formula

18  recognized Plaintiffs' years of service after returning to Northrop for vesting and

19  early retirement credit, but did not recognize their earnings after returning to

20  Northrop in determining their final average earnings. Plaintiffs had no way to

21  ascertain and apply this multi-step formula without assistance from Defendants.

22       19.    Under the Northrop Plan's terms, a participant is entitled to a normal

23  retirement benefit commencing at age 65. A participant who has attained at least age

24  55 with at least 10 years of service is entitled to a reduced early retirement benefit,

25  and a participant whose age plus his years of early retirement service equals at least

26  85 is entitled to an unreduced early retirement benefit – that is, to receive his full age

27  65 pension before age 65.

28

6

20.     As used in ERISA, "accrued benefit" means the participant's benefit expressed as an annual benefit beginning at normal retirement age, or the actuarial equivalent of that amount. ERISA §§ 3(23)(A), 204(c)(3), 29 U.S.C. §§ 1002(23)(A), 1054(c)(3). The Plan defines "accrued benefit" consistent with these rules.

21.     ERISA defines "normal retirement benefit" as the greater of a participant's benefit at normal retirement age or his or her early retirement benefit.

22.     Because the Northrop Plan's final average pay formulae calculate benefits based in part on a participant's years of service at employment termination and age at benefit commencement, a participant's pension benefit will vary depending upon his or her employment termination date and benefit commencement date. Thus, Hewitt's online platform allowed Northrop Plan participants to request that Hewitt determine the effect of different combinations of dates on their pension benefit amounts, and the statements generated and mailed by Hewitt to participants provided that information.

### Plaintiffs' Employment and Pension Service

23.     Mr. Bafford began his employment with Northrop in April 1987, at age 26, as a Procurement Expeditor. He worked for Northrop in Pico Rivera, California, and Palmdale, California.

24.     Ms. Wilson began her employment with Northrop in September 1986 as a software engineer.

25.     As Northrop employees, Mr. Bafford and Ms. Wilson accrued pension benefits under the Northrop Grumman Retirement Plan, which is one of the sub-plans of the Northrop Plan. Ms. Wilson also accrued benefits under the Grumman Pension Plan, another Northrop Plan sub-plan.

26.     In September 1997, Ms. Wilson was laid off by Northrop and went to work for TRW Corporation ("TRW") in California as a software engineer.

27.     In February 1998, Mr. Bafford terminated employment with Northrop and went to work for TRW in Ogden, Utah, as a Subcontract Manager.

28.     As TRW employees, Mr. Bafford and Ms. Wilson accrued pension benefits under the TRW Pension Plan ("TRW Plan").

29.     In December 2002, Northrop acquired TRW, and Mr. Bafford and Ms. Wilson became Northrop employees again.

30.     Upon information and belief, more than 20,000 TRW employees became Northrop employees as a result of the December 2002 acquisition.

31.     Northrop renamed the TRW Plan the Northrop Grumman Space and Mission Systems Salaried Employees Pension Plan. Mr. Bafford and Ms. Wilson continued to accrue benefits under the renamed TRW Plan as Northrop employees.

**Pension Benefit Statements**

32.     Plaintiffs and the members of the proposed Class were the victims of a systemic calculation error affecting Northrop Plan participants who, while working for Northrop, accrued benefits under pension plans formerly sponsored by acquired companies. According to Pension Recalculation Notices issued by Defendants to Mr. Bafford and Ms. Wilson, the error involved calculating these participants' pensions based on their final average earnings following their return to Northrop employment, rather than on their final average earnings from their first periods of Northrop employment.

33.     The systemic error resulted in participants' benefits being overstated.

34.     The systemic error persisted from at least 2010 until late 2016.

35.     The systemic error infected pension benefit statements provided to participants, pension election paperwork provided to participants, and pension checks provided to participants.

36.     For example, beginning in 2010, Mr. Bafford began requesting pension benefit statements as he approached age 50 to assist him and Ms. Bafford in

planning for retirement. Mr. Bafford used the online platform to request statements, which were then mailed to him.

37.    Hewitt's statements consistently informed Mr. Bafford that if he worked until at least age 55 and elected to receive his benefit in the form of a 100 percent joint and survivor annuity, his Northrop Plan benefit would be over $2,000 per month during his lifetime and the same amount for Ms. Bafford's lifetime if he predeceased her. Specifically, Hewitt provided the following statements:

| Statement Date | Employment Termination Date | Benefit Commencement Date | 100% JSA Benefit Amount |
| --- | --- | --- | --- |
| Mar. 2010 | Oct. 2015 | Nov. 2015 | $2,033.93 |
| Nov. 2011 | Sept. 2015 | Oct. 2015 | $2,011.90 |
| Feb. 2013 | Sept. 2015 | Oct. 2015 | $2,007.27 |
| Feb. 2013 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Mar. 2014 | Jan. 2017 | Feb. 2017 | $2,110.64 |
| Oct. 2014 | Sept. 2015 | Oct. 2015 | $2,077.27 |
| Oct. 2014 | Sept. 2015 | Apr. 2016 | $2,098.02 |
| Oct. 2014 | Mar. 2016 | Apr. 2016 | $2,098.02 |
| Aug. 2015 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Aug. 2015 | Dec. 2016 | Jan. 2017 | $2,111.58 |
| Aug. 2015 | Apr. 2017 | May 2017 | $2,107.58 |
| June 2016 | Sept. 2016 | Oct. 2016 | $2,114.41 |

38.    Each of the statements provided to Mr. Bafford showed that it was based on his earnings from his second period of Northrop employment.

9

39.     Likewise, Ms. Wilson made numerous requests for benefit statements. For instance, in February 2011, pursuant to Ms. Wilson's request, Hewitt sent Ms. Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on May 31, 2011, and commenced her pension on June 1, 2011. The statement used Ms. Wilson's earnings from her most recent three years of employment: 2009, 2010, and 2011.

40.     Similarly, in November 2013, pursuant to Ms. Wilson's request, Hewitt sent Ms. Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on January 31, 2014, and commenced her pension on February 1, 2014. Again, the statement used Ms. Wilson's average earnings from her last three years of employment: 2012, 2013, and 2014. The statements showed if Ms. Wilson retired on February 1, 2014, and elected to receive her benefit in the form of a 50 percent joint-and-survivor annuity, her Northrop Plan benefit would be $1,630.11 during her lifetime and $815.06 for her spouse's lifetime if she predeceased him.

**Plaintiffs' Retirements**

41.     Ms. Wilson retired on February 1, 2014, and, consistent with the statements, she began receiving benefits in the amount of $1,630.11 per month under the Northrop Grumman Retirement Plan  and $117.36 per month under the Grumman Pension Plan, both based on her average earnings during her final three years of service at Northrop.

42.     From February 1, 2014, through March 1, 2017, the Northrop Plan made payments to Ms. Wilson of $1,630.11 per month for her Northrop Grumman Retirement Plan benefit and $117.36 per month for her Grumman Pension Plan benefit.

43.     In July 2016, Mr. Bafford requested and received materials necessary to commence his pension as of October 1, 2016. The materials included a statement

CASE NO. 2:18-cv-10219-ODW-E
FIRST AMENDED COMPLAINT

1  again showing the 100 percent joint-and-survivor benefit amount of $2,114.41 per

2  month.

3       44.  After Mr. Bafford submitted his pension paperwork, Hewitt issued him

4  a "Retirement Plan Pension Election Confirmation Statement" on Northrop

5  letterhead, showing that he had elected the 100 percent joint-and-survivor annuity

6  benefit of $2,114.41 per month. Mr. Bafford signed and returned the accompanying

7  "Pension Election Authorization Form," certifying that he had elected the 100

8  percent joint-and-survivor annuity form of benefit. The form states that Mr. Bafford

9  "[c]ertifies that I understand this payment option pays **$2,114.41** per month," and

10  "[c]ertifies that I understand my beneficiary is LAURA A. BAFFORD and will

11  receive upon my death $2,114.41 per month."

12       45.  On August 11, 2016, Hewitt confirmed on Northrop letterhead that it

13  had received and would process Mr. Bafford's Pension Election Authorization Form

14  and that his first payment would be made on October 1, 2016.

15       46.  From October 1, 2016, through January 1, 2017, the Northrop Plan

16  made monthly benefit payments to Mr. Bafford of $2,114.41 each.

17               **Discovery of the Systemic Error; Benefit Recalculations**

18       47.  Upon information and belief, in 2016 Northrop and/or the

19  Administrative Committee replaced Hewitt as recordkeeper and third-party

20  administrator of the Northrop Plan.

21       48.  Upon information and belief, plan fiduciaries performed an audit in

22  2016 as part of the hand-off to Fidelity, the new third-party administrator, and

23  discovered the systemic overstatement of benefits.

24       49.  In December 2016, more than three months after his retirement, Mr.

25  Bafford received a "Pension Plan Recalculation Notice" on Northrop letterhead,

26  stating that Northrop had recalculated his benefit "based on updated information."

27       50.  In January 2017, Mr. Bafford received another "Pension Plan

28  Recalculation Notice" on Northrop letterhead, explaining that his monthly Northrop

Plan benefit would be permanently reduced from $2,114.41 to $807.89 – a reduction of more than 60 percent.

51.     The second recalculation notice admitted that there was no "updated information" that formed the basis of the recalculation. Instead, the notice explained that that Mr. Bafford's pension amount had been based on "incorrect pay." Specifically, the benefit had been based on Mr. Bafford's final average salary from his second period of Northrop employment, but should have been based on final average salary from his first period of Northrop employment.

52.     Thus, Mr. Bafford's pension was recalculated based on information that had been in Northrop's possession for nearly 20 years, including throughout the period when Hewitt issued at least a dozen statements showing that Mr. Bafford had earned a pension in excess of $2,000 per month.

53.     In February 2017, three years after her retirement, Ms. Wilson received a Pension Plan Recalculation Notice on Northrop letterhead. Although Ms. Wilson was told for numerous years that her benefits would be based on her earnings from her final three years of service at Northrop, and the Northrop Plan actually paid those benefits for three years, the Pension Plan Recalculation Notice states that there was a mistake in the benefit calculation. The notice states that Ms. Wilson's pension benefits would be recalculated using her 1995-1997 salary, the final average salary from her first period of Northrop employment. The recalculation decreased her retirement benefits dramatically to less than half the retirement benefits she had been promised and was receiving for three years.

54.     Thus, as with Mr. Bafford, Defendants recalculated Ms. Wilson's Northrop Grumman Retirement Plan and Grumman Pension Plan benefits based on information that had been in Northrop's possession for 20 years, including the entire time Hewitt issued statements showing she had earned pension benefits in excess of $1,600 and the entire three years that the Northrop Plan actually paid her that amount.

CASE NO. 2:18-cv-10219-ODW-E
FIRST AMENDED COMPLAINT

55.     Northrop insisted that Ms. Wilson repay the alleged "overpayment" of over $35,000, even though any mistake in the calculation was through no fault of Ms. Wilson, and stated that if Ms. Wilson did not repay the alleged overpayment in a lump sum, her already diminished pension would be reduced further until the Northrop Plan had collected the alleged overpayment.

**Plaintiffs' Reliance**

56.     In issuing pension benefit statements, pension election paperwork, and pension payments, Defendants intended to, and did, induce reliance on the part of Northrop Plan participants, including Plaintiffs. The sole purpose for requesting a pension benefit statement is to learn the amount of a participant's pension benefit upon retirement.

57.     Due to the complexity of the Northrop Plan terms and the required calculations, and the multiple plan documents involved, Northrop Plan participants had no way to verify the benefit amounts provided in pension benefit statements, pension election paperwork, and pension payments.

58.     Specifically, in deciding when to retire, and in making other financial decisions to plan for retirement, Plaintiffs relied on Defendants' promises of a monthly pension benefit in excess of $2,000 for Mr. Bafford and in excess of $1,700 for Ms. Wilson.

**CLASS ALLEGATIONS**

59.     Mr. Bafford and Ms. Wilson bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (2).

60.     The Class is defined as all Northrop Plan participants and beneficiaries whose final average pay benefits were miscalculated due to participants accruing benefits, while working at Northrop, under a plan previously sponsored by an acquired company, and whose final average pay benefits were recalculated after June 1, 2016.

61.     Plaintiffs reserve the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

62.     The proposed class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

63.     Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. The Northrop Plan's publicly available Form 5500 (Annual Return/Report of Employee Benefit Plan), for the Plan year ending December 31, 2015, states that there were more than 111,000 Northrop Plan participants during that year. Plaintiffs are informed and believe that hundreds of former Northrop employees were hired by TRW, many of whom subsequently returned to Northrop employment when Northrop acquired TRW. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that the substantial number of Northrop Plan participants and beneficiaries who have been similarly affected precludes joinder of all affected participants and beneficiaries. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the members of the class are readily determinable from the Defendants' records.

64.     There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

      a. Whether Defendants acted in a fiduciary capacity in providing pension benefit statements to Northrop Plan participants;

      b. Whether Defendants breached their fiduciary and statutory duties by failing to ensure the accuracy of the benefits statements provided to Northrop Plan participants;

      c. Whether Plaintiffs and the Class are entitled to equitable relief from Defendants' violations of ERISA §§ 404(a), 105(a), and/or 406; and/or to statutory penalties for Defendants' violations of ERISA § 105(a);

d.  Whether, if Defendant Alight was not acting as a fiduciary, it acted negligently with respect to the Class under State law;

e.  Whether Defendants engaged in a transaction prohibited by ERISA when they caused the Northrop Plan to pay compensation to Hewitt for work that Defendants contend was unreliable.

65.  The claims of the named class representatives are typical of the claims of the proposed Class. Plaintiffs and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of applicable Federal and State law. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

66.  The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the Mr. Bafford and Ms. Wilson and the other members of the proposed Class.

67.  This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, *inter alia*, whether Defendants acted in a fiduciary capacity in providing inaccurate pension benefit statements to Plaintiffs and class members, whether Northrop and the Administrative Committee should be estopped to deny that Plaintiffs and class members are entitled to the miscalculated benefits, and whether other equitable relief is available for Defendants' ERISA violations.

68.     This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate monetary, injunctive and other equitable relief in favor of the Class. In particular, Defendants' miscalculation of pension benefits for Northrop Plan participants who accrued benefits under plans formerly sponsored by acquired companies, such as TRW, was systemic in nature, affecting all similarly situated Northrop Plan participants in the same way.

## FIRST CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a), Against Defendants Northrop and the Administrative Committee

69.     Plaintiffs incorporate the above paragraphs as though fully set forth herein.

70.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, and that a fiduciary act under a prudent person standard of care. These duties include the duty to provide complete and accurate information regarding participants' benefits.

71.     Northrop and the Administrative Committee breached their fiduciary duties to Plaintiffs and the Class members by acts and omissions including failing to ensure that they or their delegees provided Plaintiffs with complete and accurate information regarding the amount of the Northrop Plan benefit.

72.     Plaintiffs and the Class members reasonably relied on the pension information they received in planning for their retirement.

73.     Plaintiffs and the Class members have been harmed by Northrop's and the Administrative Committee's breaches in that they received and relied on inaccurate information about their retirement income in planning for retirement.

## SECOND CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),

### Against Defendant Alight

74.     Plaintiffs incorporate Paragraphs 1 through 58 as though fully set forth herein.

75.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, and that a fiduciary act under a prudent person standard of care. These duties include the duty to provide complete and accurate information regarding participants' benefits.

76.     At all relevant times, Alight's predecessor Hewitt was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plans, and/or it had discretionary authority or discretionary responsibility in the administration of the Plans. In particular, Hewitt prepared summaries of the Northrop Plan provisions – sometimes referred to as "requirements documents." Upon information and belief, Hewitt performed its pension calculations and other services according to these summaries, rather than according to the Northrop Plan documents.

77.     Hewitt breached its fiduciary duty to Plaintiffs and the Class members by acts and omissions including failing to apply the Northrop Plan provisions in calculating participants' benefits and repeatedly providing Plaintiffs and the Class members with inaccurate information regarding the amounts of their pensions.

78.     Plaintiffs and the Class members reasonably relied on the pension information they received in planning for their retirement.

CASE NO. 2:18-cv-10219-ODW-E
FIRST AMENDED COMPLAINT

79.     Plaintiffs and the Class members have been harmed by Hewitt's breaches in that they received and relied on inaccurate information about their retirement income in planning for retirement.

### THIRD CLAIM FOR RELIEF

### Claim for Violation of ERISA § 105, 29 U.S.C. § 1025,

### Against Defendant Administrative Committee

80.     Plaintiffs incorporate Paragraphs 1 through 58 as though fully set forth herein.

81.     ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan administrator furnish pension benefit statements to defined benefit plan participants. Specifically, a plan administrator must furnish a pension benefit statement (1) at least once every three years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and (2) to a participant or beneficiary of the plan upon written request.

82.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

83.     ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

84.     ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated

18

as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

85.   The Administrative Committee violated Section 105(a) by failing to provide Plaintiffs and the Class members with accurate statements of their Northrop Plan benefits and/or by failing to monitor the performance of its delegate that provided pension statements to Plaintiffs and the Class members.

86.   Plaintiffs and the Class members have been harmed by the Administrative Committee's breaches in that they received and relied on inaccurate information about their retirement income in planning for retirement.

## FOURTH CLAIM FOR RELIEF

### *In the Alternative to the Second Claim for Relief*

### Claim for Professional Negligence Against Defendant Alight

87.   Plaintiffs incorporate Paragraphs 1 through 58 as though fully set forth herein.

88.   A third-party administrator performing professional services owes a duty of care to the intended beneficiaries of the professional services rendered, including, without limitation, (1) the duty to have that degree of learning and skill ordinarily possessed by a reputable third-party administrator practicing in the same or similar locality under similar circumstances; (2) the duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same or similar locality in similar circumstances; and (3) the duty to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning. A failure to perform any one of these duties constitutes negligence.

89.   A third-party administrator that holds itself out as a specialist in a particular field, such as the calculation of benefits under a pension plan, has the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to use the care and skill ordinarily used, by a reputable specialist practicing in the same field and in the

same or similar locality and under similar circumstances. A failure to fulfill either duty constitutes negligence.

90.    Thus, a third-party administrator providing services to an employee benefit plan has a duty to exercise such care, skill, and diligence as other members of the profession commonly possess and exercise in the course of the provision of services to or for an employee pension benefit plan.

91.    Hewitt breached its professional duties by providing grossly inaccurate information to Plaintiffs and Class members regarding the amount of their benefits under the Northrop Plan on numerous occasions over at least a six-year period, and by related acts and omissions.

92.    As a consequence of Hewitt's professional negligence, Plaintiffs and Class members have been injured in that they relied upon the inaccurate information in planning for their retirements, and have suffered losses as a result.

**FIFTH CLAIM FOR RELIEF**

**In the Alternative to the Second Claim for Relief**

**Claim for Negligent Misrepresentation Against Defendant Alight**

93.    Plaintiffs incorporate Paragraphs 1 through 58 as though fully set forth herein.

94.    Hewitt misrepresented to Plaintiffs and the Class members the amount of their benefits under the Northrop Plan.

95.    Hewitt had no reasonable grounds for believing that its statements regarding the amount of Plaintiffs' and the Class members' benefits were true.

96.    Hewitt had a duty to Plaintiffs and the Class members to exercise reasonable care in providing them with statements of pension benefits.

97.    Hewitt intended that Plaintiffs and the Class members act in reliance on its statements of their pension benefit for purposes of financial planning, including because there is no purpose for a pension benefit statement other than to assess the value of the pension benefits.

98.     Plaintiffs and the Class members justifiably relied on Hewitt's pension statements in planning for their retirement.

99.     Plaintiffs and the Class members have been injured as a result of their justifiable reliance on the inaccurate information in planning for retirement, and have suffered losses as a result.

## SIXTH CLAIM FOR RELIEF

## Claim for Violation of ERISA § 406(a), 29 U.S.C. § 1106(a), Against All Defendants

100.    Plaintiffs incorporate Paragraphs 1 through 58 as though fully set forth herein.

101.    ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits all transactions between a plan and a party in interest, including any furnishing of services between a plan and a party in interest and any transfer of plan assets to a party in interest.

102.    ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), permits a plan to pay no more than reasonable compensation to a party in interest for services necessary for the operation of the plan.

103.    ERISA § 3(14)(B), 29 U.S.C. § 1102(14)(B), defines "party in interest" to include a person providing services to an ERISA plan.

104.    The Northrop Plan paid compensation to Hewitt for providing services to the Northrop Plan, including providing pension benefit statements to Northrop Plan participants. For example, the Northrop Plan's IRS Form 5500 for the 2015 plan year states that the Northrop Plan paid more than $11 million to Hewitt for recordkeeping services.

105.    Upon information and belief, Defendants contend that the pension benefit statements and pension election paperwork provided to Northrop Plan participants by Hewitt were inherently unreliable and unfit for their purpose of notifying participants of the amount of their accrued benefits under the Northrop Plan.

106.   If Defendants are correct that Plaintiffs and Class members were not justified in relying upon Hewitt's statements, then reasonable compensation for Hewitt's services was zero and any compensation above zero paid by the Northrop Plan to Hewitt for these services was unreasonable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class members pray that the court grant the following relief:

**As to the First Claim for Relief:**

A.   Declare that Defendants Northrop and Administrative Committee have breached their fiduciary duties to Plaintiffs and the Class members;

B.   Order that Defendants Northrop and Administrative Committee are estopped to deny that Plaintiffs are entitled to benefits under the Northrop Plan consistent with the statements furnished to Plaintiffs and the Class members;

C.   Surcharge Defendants Northrop and the Administrative Committee in the amount necessary to place Plaintiffs and the Class members in the position they would have occupied but for Defendants' breaches;

D.   Reform the Northrop Plan to provide the final average pay benefits promised to Plaintiffs and Class members;

E.   Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

F.   Provide such other equitable relief as the Court deems appropriate.

**As to the Second Claim for Relief:**

A.   Declare that Defendant Alright has breached its fiduciary duties to Plaintiffs and the Class members;

B.   Surcharge Defendant Alight in the amount necessary to place Plaintiffs and the Class members in the position they would have occupied but for Defendant's breaches;

C.    Award Plaintiffs and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

D.    Provide such other equitable relief as the Court deems appropriate.

**As to the Third Claim for Relief:**

A.    Declare that Defendant Administrative Committee violated ERISA § 105, 29 U.S.C. § 1025;

B.    Pursuant to ERISA § 502(a)(3), 29 U.S.C.1132(a)(3), order that Defendant Administrative Committee is estopped to deny that Plaintiffs are entitled to benefits under the Plans consistent with the statements provided to Plaintiffs and the Class members prior to their date of retirement;

C.    Reform the Northrop Plan to provide the final average pay benefits promised to Plaintiffs and Class members;

D.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such other equitable relief as the Court deems appropriate;

E.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the Administrative Committee personally liable to Plaintiffs in the amount of $110 per day from the date of each separate failure to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a);

F.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief as the Court deems proper;

G.    Award Plaintiffs and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA 502(g), 29 U.S.C. § 1132(g); and

H.    Provide such other relief as the Court deems equitable and just.

**As to the Fourth Claim for Relief:**

A.    Order that Alight pay Plaintiffs and the Class members damages for the harm they have suffered as a result of Hewitt's professional negligence; and

B.    Provide such other relief as the Court deems equitable and just.

**As to the Fifth Claim for Relief:**

A.    Order that Alight pay Plaintiffs damages for the harm they have suffered as a result of Hewitt's negligent misrepresentations; and

B.    Provide such other relief as the Court deems equitable and just.

**As to the Sixth Claim for Relief:**

A.    Declare that compensation paid by the Northrop Plan to Hewitt for calculating benefits under the Northrop Plan, providing pension benefit statements, providing pension election paperwork, and related services was unreasonable;

B.    Order that Defendants make the Northrop Plan and its participants whole for unreasonable compensation paid to Hewitt;

C.    Award Plaintiffs and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

D.    Provide such other relief as the Court deems equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and the Class members demand a jury trial as to their claims brought under state law.

Respectfully submitted

Dated:  March 29, 2019                    RENAKER HASSELMAN SCOTT LLP
                                          KANTOR & KANTOR, LLP

                                          By: */s/ Elizabeth Hopkins*
                                             Elizabeth Hopkins
                                             Attorneys for Plaintiffs
                                             and the Proposed Class