# United States District Court
# Central District of California

| | |
|---|---|
| STEPHEN H. BAFFORD et al.,<br><br>       Plaintiffs,<br><br>  v.<br><br>NORTHROP GRUMMAN<br>CORPORATION et al.,<br><br>       Defendants. | Case №. 2:18-cv-10219-ODW (Ex)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS [40] [42]** |

## I.    INTRODUCTION

Plaintiffs Stephen H. Bafford ("Bafford"), Laura Bafford, and Evelyn L. Wilson ("Wilson") (collectively, "Plaintiffs") for themselves and on behalf of all similarly situated participants in and beneficiaries of the Northrop Plan under the Employee Retirement Income Security Act ("ERISA"), bring this action against Northrop Grumman Corporation ("NGC"), the Administrative Committee of the Northrop Grumman Pension Plan (the "Committee"), and Alight Solutions LLC, formerly known as Hewitt Associates LLC ("Hewitt") (collectively, "Defendants") for equitable relief, and recovery of statutory penalties for Defendants' failure to comply with ERISA's disclosure requirements.    (First Am. Compl. ("FAC") ¶¶ 4–11, ECF No. 32.) Defendants now seek dismissal of all of Plaintiffs claims.  (Hewitt's Mot. to Dismiss.

("Hewitt's Mot."), Northrop's Mot. to Dismiss ("Northrop's Mot."), ECF Nos. 40, 42.) For the reasons that follow, the Court **GRANTS** Defendants' Motion, and **DISMISSES** Plaintiffs' claims One, Two, Three, and Six **WITHOUT PREJUDICE** and **DISMISSES** Plaintiffs' claims Four and Five **WITH PREJUDICE**.[1]

## II.    FACTUAL BACKGROUND

NGC is a Delaware corporation and sponsor of the Northrop Grumman Pension Plan ("Plan"). (FAC ¶¶ 8, 15.) The Plan, in turn, is comprised of a number of sub-plans, including the Northrop Grumman Retirement Plan and the Grumman Pension Plan, which are both at issue. (FAC ¶ 15.) The Committee is the Plan administrator of the sub-plans at issue. (FAC ¶ 9.)

The Plan is a defined benefit pension plan, and accordingly, each participating employee is entitled to a fixed periodic payment during retirement, which is based on a pension calculation formula set forth in the applicable sub-plan. (FAC ¶ 15.) Prior to July 1, 2003, each NGC sub-plan used a "final average pay" formula to calculate benefits. (FAC ¶ 16.) Under that formula, a participant's pension was calculated based on factors, including their years of service, and the average rate of annual salary during their highest three years of salary out of the last ten years that they were a covered employee under the plan. (FAC ¶ 16.) Effective July 1, 2003, the Plan converted to a "cash balance" formula, accordingly, participants who accrued benefits before the cash balance conversion continued to be entitled to have those benefits calculated under the "final average pay" formula. (FAC ¶¶ 16, 17.)

Consequently, employees who separated from NGC but later returned were credited for their years of service during their second period of employment for purposes of benefit vesting and early retirement credit. (FAC ¶ 18.) However, their annual salaries from their second period of employment are not considered for the "final

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

average pay" formula calculation. (FAC ¶ 18.) Instead, their highest three years of salary, from their first period of employment, are considered. (FAC ¶ 18.)

To help participants determine their retirement benefits, the Committee contracted with Hewitt to operate the Northrop Grumman Benefits Center, the Plan website, and issue pension benefit statements and other communications. (FAC ¶ 11.) Hewitt's services included operating an online platform that allowed participants to request statements of their accrued pension benefits based on potential future employment termination dates and benefit commencement dates. (FAC ¶ 14.)

Both Bafford and Wilson initially worked for NGC, left NGC, and then returned to NGC. (FAC ¶¶ 23, 24, 26, 27, 29.) During their first employment period with NGC, they both accrued benefits under the Plan. (FAC ¶ 25.) During their second employment period with NGC, they also continued to accrue service credit towards early retirement under the Plan. (FAC ¶ 18.)

During their second employment period with Northrop, Bafford and Wilson both requested and received statements of their accrued benefits under the Plan. (FAC ¶¶ 36, 37, 39, 40.) These statements came on Northrop letterhead, and advised them that more information was available by calling the Northrop Grumman Benefits Center or consulting a Northrop Grumman website. (FAC ¶¶ 11, 44, 45, 49, 50, 53.) Based on specific inputs provided by the participants, Hewitt would estimate their prospective benefits and then mail the requested information to the participants. (FAC ¶¶ 22, 37, 76.) Each statement that Bafford received from Hewitt showed a 100 percent joint-and-survivor annuity benefit of over $2,000 per month. (FAC ¶ 37.) Similarly, Ms. Wilson also received statements that presented a 50 percent joint-and-survivor annuity benefits of $1,412.78 and $101.72, which was based on Ms. Wilson's second period of employment salary. (FAC ¶ 39, Pls.' Opp'n to Defs.' Mot. ("Opp'n") 5, ECF No. 49.)

Bafford retired on October 1, 2016, and began receiving $2,114.41 in monthly benefits. (FAC ¶ 43.) However, in December 2016, Hewitt discovered that it had incorrectly calculated his benefits and informed him via "recalculation notice" that his

corrected monthly benefit amount was $807.89. (FAC ¶ 50.) Similarly, Wilson retired on February 1, 2014, and began receiving her benefits in the amount of $1,747.47 per month. (FAC ¶ 41.) In February 2017, Hewitt also informed Wilson that it had incorrectly calculated her benefits and informed her that her corrected monthly benefit amount was $823.93. (FAC ¶ 53; Opp'n 7.) Defendants then demanded that Wilson repay over $35,000 in overpayment. (FAC ¶ 55.)

The "recalculation notices" sent by Defendants to Plaintiffs explained that the prior benefit calculations were incorrectly calculated. (FAC ¶ 51.) Specifically, their annual salaries from their second period of employment were incorrectly factored in the "final average pay" formula. (FAC ¶ 51.) Instead, their annual salaries from their first employment period with Northrop should have been factored into the "final average pay" formula. (FAC ¶ 51.)

Accordingly, Plaintiffs assert that Defendants violated their duty to provide complete and accurate information regarding participants' benefits. Therefore, Plaintiffs assert the following claims: (1) Defendants breached their fiduciary duties under ERISA § 404(a); (2) the Committee violated ERISA §105; (3) in the alternative to breaching its fiduciary duties, Hewitt committed professional negligence; (4) Hewitt committed negligent misrepresentation; and (5) Defendants engaged in a prohibited transaction under ERISA § 406(a). (FAC ¶¶ 71, 77, 85, 91, 94, 106.) Defendants now seek dismissal of all Plaintiffs' claims.

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. DISCUSSION

### A. Whether Plaintiffs Plausibly Allege An Actionable Misrepresentation Claim

Plaintiffs allege that NGC and the Committee breaching their fiduciary duties and violated section 1104(a) by failing to ensure that they or their delegees provided Plaintiffs with complete and accurate information regarding the Plaintiffs' benefit amounts. (FAC ¶ 71.)

Under ERISA § 404(a), fiduciaries have the following duties: the duty of loyalty, the duty of prudence, the duty to diversify investments, and the duty to act in accordance with the governing plan documents and instruments. 29 U.S.C. § 1104(a)(1). With respect to the duty of prudence, a fiduciary must act "with the type of 'care, skill,

prudence, and diligence under the circumstances' not of a lay person, but of one experienced and knowledgeable with these matters." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1133 (9th Cir. 2013). Accordingly, in every case charging breach of an ERISA fiduciary duty, the threshold question is not whether actions of some person employed to provide services under plan adversely affected the plan beneficiary's interest, but whether that person was acting as fiduciary, in that he or she was performing a fiduciary function, when taking action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

"[F]iduciaries breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). "An ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits." *Id*. (citation omitted). "A fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Id*. (citation omitted).

## 1. Whether Plaintiffs Sufficiently Alleges That NGC Breached Its Fiduciary Duty By Failing To Monitor

Plaintiffs assert that NGC failed to monitor the performance of the Committee, and consequently, has breached its fiduciary duties. (FAC ¶ 8.) Specifically, Plaintiffs assert that they have plausibly alleged systematic calculation errors, which "could not have slipped below the radar of adequate monitoring." (FAC ¶¶ 32–40; Opp'n 9.) However, NGC disagrees. NGC argues that Plaintiffs failed to adequately allege that NGC did not review the Committee's performance at reasonable intervals, and thereby, ensuring compliance with the Plan's terms and statutory standards. (Reply in Supp. of Northrop Mot. ("Reply") 2, ECF No. 52.) Accordingly, the court now addresses the Parties' arguments.

"Under ERISA, fiduciaries have a limited duty to monitor and review the performance of their appointed fiduciaries. In particular, appointing fiduciaries should

review the performance of their appointees at reasonable intervals and in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards." *In re Computer Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009), *aff'd sub nom. Quan v. Computer Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010). Accordingly, to plausibly allege that a defendant has breached its duty to monitor, plaintiff must at the very least allege facts demonstrating that defendant: (1) failed to evaluate their appointees performance, or to have a system in place for doing so; (2) failed to ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plan's administrative fees and ensuring that the fees were competitive; and (3) failed to remove appointees whose performance was inadequate. *Marshall v. Northrop Grumman Corp.*, No. 16-cv-06794-AB (JCx), 2017 WL 2930839, at *11 (C.D. Cal. Jan. 30, 2017) (holding that such allegations are sufficient to state a claim for failure to monitor.)

Here, Plaintiffs merely allege that NGC breached its duty to monitor by failing to address systemic calculation errors, which permitted Hewitt to provide Plaintiffs with inaccurate pension benefit statements. (*See* FAC ¶¶ 32–40.) Plaintiffs make no other allegations to support their assertion that NGC failed to monitor. Instead, Plaintiffs argue that they are not required to plead any further facts addressing the processes used to manage the plan. (*See* Opp'n 10.) Thus, Plaintiffs assert that the facts they have alleged support "a reasonable inference that either NGC entirely failed to review the performance of the Committee" or "any review it conducted was inadequate," even without specifically alleging such in the FAC. (Opp'n 10.)

Plaintiffs cite *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) in support of their argument. However, the Court finds this case inapposite. In Braden, Plaintiffs claim involved retail-class mutual funds, and alleged that the retail-class mutual funds paid kickbacks to the plan's trustee. *Id*. at 594–95. Whereas here, Plaintiffs allege that NGC failed to monitor systemic calculations errors. (*See* FAC ¶¶ 32–40.) Consequently, without more, the Court declines to adopt such an inference

asserted by Plaintiffs. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation." Rather "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true.").

Accordingly, the Court finds that Plaintiffs' FAC fails to plausibly allege that NGC failed to review the performance of the Committee at reasonable intervals and in such a manner as may be reasonably expected to ensure that its performance was in compliance with the terms of the plan and statutory standards.[2] Therefore, Plaintiffs' claim that NGC violated ERISA section 404(a), 29 U.S.C. section 1104(a) fails.

Accordingly, Defendants' request to dismiss Plaintiffs' first cause of action against NGC and the Committee is **GRANTED WITHOUT PREJUDICE**.

## 2. Whether Plaintiffs Sufficiently Alleges that Hewitt Committed a Fiduciary Act that Imputed a Breach of Fiduciary Duty Upon the Committee

At issue is whether Hewitt's calculation of Plaintiffs' future benefits and communication of those estimates to Plaintiffs were either a discretionary or fiduciary act that serves as a basis for the Committee's derivative liability. (Northrop's Mot. 13–14.) Defendants assert that providing benefit calculations is not a fiduciary act by law, and accordingly, they did not breach their fiduciary duties when Hewitt provided inaccurate benefit calculations. (Northrop's Mot. 11.) Whereas, Plaintiffs argue that Hewitt did function as a fiduciary in preparing the erroneous benefit calculations. (Opp'n 12–13.)

In every case charging breach of ERISA fiduciary duty, the threshold question is not whether actions of some person employed to provide services under plan adversely affected the plan beneficiary's interest, but whether that person was acting as fiduciary, in that he or she was performing a fiduciary function, when taking action subject to

---

[2] Even if Plaintiffs had made plausible allegations, the Court remains unconvinced that two individual instances of repeated miscalculations establish a failure to monitor on the behalf of NGC. Here, it appears that Plaintiffs are attempting to fit a circle peg into a square hole.

complaint. *Pegram*, 530 U.S. at 226. To determine whether a party is acting as an ERISA fiduciary, the relevant inquiry is whether the party exercised "discretionary authority or discretionary control" as to the management or administration of a plan. 29 U.S.C. § 1002(21)(A); *CSA 401(K) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135, 1138 (9th Cir. 1999) (stating that "third-party administrators are not fiduciaries if they merely perform ministerial functions, including the preparation of financial reports").

The Committee asserts that it did not breach any fiduciary duties when Hewitt provided Plaintiffs with inaccurate pension benefit estimates. (Hewitt's Mot. 6–8; Northrop's Mot. 9.) Plaintiffs oppose the motions by arguing that Hewitt did act as a fiduciary in preparing the erroneous benefit statements. (Opp'n 13.) In support of its argument, Plaintiffs assert that "Plan administrators perform a fiduciary function when they provide information to help 'beneficiaries make an informed choice' about their plan benefits." (Opp'n 13.) To support this assertion, Plaintiffs cite to *King*, which they believe defeats the conclusion that "the Plan's name fiduciary, the Committee, shed[s] its fiduciary status when its agents provided erroneous benefit statements to Plaintiffs." (Opp'n 13 (citing *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730 (9th Cir. 2017).) The Court disagrees. Plaintiffs fail to demonstrate that facts and legal issues in *King* are analogous to those present in this case. For example, benefits calculations pursuant to a plan formula was not at issue in *King*. Instead, in *King*, the fiduciary provided a misleading summary of modifications to the plan's terms, which left the plaintiff uncertain as to whether the plan contained a lifetime cap on health benefits. *King*, 871 F.3d at 744–45.

Plaintiffs also cite to *Varity* for the proposition that "[c]onveying information about the likely future of plan benefits is a fiduciary function." (Opp'n 2, 17 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996).) However, *Varity* involved communications, made to defraud plan participants through "trickery" and "deliberate deception," about the future of an entire plan. *Varity Corp.*, 516 U.S. at 492, 494. Here,

Hewitt simply provided miscalculations of benefits. Hence, the Court declines to extend the reasoning of *Varity* to the present facts and circumstances.

The facts in this matter are much more analogous to *Lebahn* and *Livick*, which are cited by Defendants.[3] (Northrop's Mot. 12.) In *Lebahn* and *Livick*, the Tenth Circuit and First Circuit held that simply calculating benefits or providing estimates of benefits are not fiduciary functions because such actions do not include the exercise of "discretionary authority" or "discretionary control" as to the management or administration of a plan. *See Lebahn v. Nat'l Farmers Union Uniform Pension Plan*, 828 F.3d 1180, 1186 (10th Cir. 2016); *Livick v. Gillette Co.*, 524 F.3d 24, 29–30 (1st Cir. 2008). Here, as in both *Lebahn* and *Livick*, Hewitt simply miscalculated Plaintiffs' pension benefits and provided those miscalculations to Plaintiffs.[4] Accordingly, Hewitt's miscalculation cannot be the basis for the Committee's breach of fiduciary duty because "with no fiduciary function involved, there can be no breach of fiduciary duty." *Livick*, 524 F.3d at 30; *see also Pegram*, 530 U.S. at 226. Therefore, Plaintiffs have failed to adequately allege a cognizable legal theory of liability that can be imputed upon the Committee.

Finding that Hewitt's miscalculations and communication of those miscalculations did not constitute a fiduciary act; The Committee's and Hewitt's motion to dismiss Plaintiffs' first and second cause of action is **GRANTED WITHOUT PREJUDICE**.

---

[3] Neither Plaintiffs nor Defendants cite a Ninth Circuit opinion which addresses whether a purely pension benefit miscalculation and communication of that miscalculation constitutes a breach of fiduciary duties. Accordingly, the Court turns to other Circuit Courts holdings.

[4] Plaintiffs allege that Hewitt established its own policies and procedures in calculating the benefits, but fails to identify any specific policies and procedures allegedly used by Hewitt. (*See generally* FAC.) Accordingly, Plaintiffs have failed to satisfy the pleading standard by merely offering labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.    Whether Plaintiffs Adequately Allege Violations of ERISA Section 105(a)**

At issue is whether the Committee violated its obligations under ERISA section 105(a) when it provided or allowed Hewitt to provide inaccurate pension benefit statements to Plaintiffs.  (Opp'n 24–25.)  The Committee argues there are two problems with Plaintiffs' claim pursuant to section 105.  (Northrop's Mot. 18–19.)  First, Plaintiffs did not submit a written request for a statement.  Second, Plaintiffs merely allege that administrators provided inaccurate statements–not that they failed to provide one.

ERISA section 105(a) requires that a Plan Administrator provide participants with a "pension benefit statement" (i) every three years or (ii) upon written request.  29 U.S.C. § 1025(a)(1)(B)(i)–(ii).  However, "[u]sing an interactive website to make a request for a pension statement does not amount to a written request under ERISA § 105, 29 U.S.C. § 1025."  *Wilson v. Bank of Am. Pension Plan for Legacy Companies*, No. 18-CV-07755-TSH, 2019 WL 2549044, at *3 (N.D. Cal. June 20, 2019).  Accordingly, such conduct of providing internet-based pension request statements is beyond the scope of ERISA section 105(a).  *Id.* (concluding that congressional failure "to say that statement requests can also be made electronically dooms the argument that using [websites] to request statements constitutes a "written" request.")

Here, Plaintiffs only specifically state that they used an online platform to request pension benefit statements.  (FAC ¶¶ 36, 39, 40.)  Plaintiffs do not specify whether they actually made any written requests, other than their online request.  (*See* FAC.)  Consequently, Plaintiffs have failed to adequately plead a cause of action in accordance with ERISA section 105(a).  *Wilson*, 2019 WL 2549044, at *3.  Therefore, Plaintiffs third cause of action against the Committee fails and is **DISMISSED WITHOUT PREJUDICE.**

**C.    Whether Plaintiffs' State Law Claims Are Preempted By ERISA**

At issue is whether Plaintiffs' state law claims of professional negligence and negligent misrepresentation are preempted by ERISA.  Plaintiffs argue that "California's law of negligence are not preempted because these laws do not act

'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to these laws' operation." (Opp'n 35.) Whereas Hewitt argues that Plaintiffs' state laws claims are preempted because they are "connected with" or "refer to" the ERISA Plan. (Hewitt's Mot. 11–12.) For the reasons to follow, the Court agrees that Plaintiffs' state-law claims are preempted by ERISA. (Hewitt's Mot. 12–16.)

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." ERISA § 514(a), 29 U.S.C. § 1144(a). Nevertheless, the Court of Appeals noted that "the Supreme Court has instructed that a law relates to an employee benefit plan if it has either a connection with or reference to such a plan." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) (citation and quotation marks omitted). With regards to "reference to," "[t]o determine whether a law has a forbidden reference to ERISA plans, we ask whether (1) the law acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the law's operation." *Id*. (citations and quotation marks omitted).

Here as in *Paulsen*, there is no "reference to" preemption because "[t]he Employees' professional negligence claims are based on common law negligence principles and California Civil Code §§ 1708 and 1714(a). These laws do not act 'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to these laws' operation." *Id*. Accordingly, the Court finds that "reference to" preemption is inapplicable.

The second part of this inquiry is whether the state law has a "connection with" an employee benefit plan. *Id*. The Ninth Circuit has "employed a 'relationship test' in analyzing 'connection with' preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, [or] between employer and employee." *Id*. (quoting *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)). In *Paulsen*, the Ninth Circuit held employees' state law claims are not preempted by ERISA when "the duty giving rise to the negligence claim runs from . . .

a non-fiduciary service provider." 559 F.3d at 1083. In comparison, in *General American Life Insurance Co. v. Castonguay*, the Ninth Circuit held a state law claim was preempted by ERISA because it arose out of a relationship ERISA regulates. 984 F.2d 1518, 1522 (9th Cir. 1993). "Stated another way, where 'the existence of [an ERISA] plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990)).

Here, the conduct giving rise to Plaintiffs' claims is an alleged miscalculation of Plaintiffs' pension benefits. Thus, but for the Plan, Plaintiffs' entitlement to a pension benefit consistent with its terms and Hewitt's role in calculating benefits under the Plan, Plaintiffs would have no claim against Hewitt. Here, unlike *Paulsen*, a relationship between "plan and plan member" is directly at issue. Moreover, the existence of the Plan is a critical factor in establishing liability under California state law, and therefore, the California state law claims are preempted. *Wise*, 600 F.3d at 1190. (finding that Plaintiff's state law claims were preempted because she had to allege the existence of an ERISA plan to state her claims under state law). Accordingly, the Court finds that Plaintiffs' claims have a "connection with" an ERISA Plan, and thus preempted. Therefore, the Court **GRANTS** Hewitt's Motion and **DISMISSES** Plaintiff's Fourth and Fifth Causes of Action **WITH PREJUDICE**.

**D.      Whether Plaintiffs Adequately Allege Violation of ERISA Section 406(a)**

At issue is whether the compensation paid by the Committee to Hewitt was unreasonable, and thus, violated ERISA section 406(a). Plaintiffs alleges that Hewitt's services were worth zero and any compensation above zero was unreasonable. (FAC ¶ 106.) Defendants in response argue that Plaintiffs have provided insufficient facts to plausibly state a prohibited transaction claim pursuant to ERISA section 406(a). (Hewitt's Mot. 21–22; Northrop's Mot. 21–22.)

ERISA section 502(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA. 29 U.S.C. § 1132(a)(3). To state a claim under Section 502(a)(3) against a non-fiduciary, "a plaintiff who is a 'participant, beneficiary, or fiduciary' must prove both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993); and (2) that the relief sought is 'appropriate equitable relief,' 29 U.S.C. § 1132(a)(3)(B)." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014). Moreover, under *Harris*, the non-fiduciary must have "actual or constructive knowledge" of the circumstances that rendered any prohibited transaction wrongful. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

Accordingly, ERISA section 406(a) begins with the premise that virtually all transactions between a plan and a party in interest are prohibited, unless a statutory or administrative exemption applies. *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008). A "party in interest" is defined broadly to include "any fiduciary, a person providing services to the plan, an employer whose employees are covered by the plan, and certain shareholders and relatives." *Id.* at 1222 (citing *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir.2002)); 29 U.S.C. § 1102(14). ERISA section 408(b) then provides for a broad array of statutory and administrative exemptions for section 406(a). Included is an exemption that permits a fiduciary to make "reasonable arrangements with a party in interest" for "services necessary for the establishment or operation of the plan" so long as "no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

Here, Plaintiffs allege that the Committee paid compensation to Hewitt for services that included providing Plan participants with pension benefit statements. (FAC ¶ 104.) However, Plaintiffs allege that the statements provided to Plan participants by Hewitt were inherently unreliable and unfit for their purpose of notifying participants of the amount of their accrued benefits. (FAC ¶ 105.) Therefore, Plaintiffs

assert that Hewitt should not be compensated for its services and any compensation was unreasonably high pursuant to 29 U.S.C. section 1106. (FAC ¶ 106).

However, the Court finds that Plaintiffs pleading is insufficient. First, pursuant to *Harris*, Plaintiffs have failed to allege that Hewitt had either "actual or constructive knowledge" of the circumstances that rendered the prohibited transaction wrongful. *See Harris*, 530 U.S. 238, 251 (2000). Second, Hewitt is a "party in interest" that provided services necessary for the operation of the plan, and accordingly, the activity alleged falls squarely within the statutory and administrative exemptions of ERISA section 408(b) for section 406(a). *See* 29 U.S.C. § 1108(b)(2). Therefore, Defendants motion to dismiss Plaintiffs' sixth cause of action is **GRANTED WITHOUT PREJUDICE**.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Hewitt's Motion and **DISMISSES WITH PREJUDICE** Plaintiffs' Fourth and Fifth claims. (ECF No. 40.) However, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' First, Second, Third, and Sixth cause of actions because the Court does not find that amendment would be futile. (ECF Nos. 40, 42.) It is conceivable, according to the facts of the case, that Plaintiffs could allege facts to establish ERISA violations. Accordingly, the Court **GRANTS** Plaintiffs leave to amend their Complaint and refile no later than 21 days from the date of this order.

**IT IS SO ORDERED.**

January 7, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

15