FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN H. BAFFORD; LAURA BAFFORD; EVELYN L. WILSON, on their own behalves and on behalf of a class of similarly situated participants and beneficiaries, *Plaintiffs-Appellants*, | No. 20-55222 D.C. No. 2:18-cv-10219-ODW-E |
| v. | OPINION |
| NORTHROP GRUMMAN CORPORATION; ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN; ALIGHT SOLUTIONS LLC, FKA Hewitt Associates LLC, *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted February 11, 2021
Pasadena, California

Filed April 15, 2021

Before: DANNY J. BOGGS,[*] MILAN D. SMITH, JR.,
and MARY H. MURGUIA, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### ERISA

The panel affirmed in part and vacated in part the district court's dismissal of an action brought by members of an employee pension plan, alleging breach of fiduciary duty under the Employee Retirement Income Security Act and state-law professional negligence and negligent misrepresentation claims.

Northrop Grumman, plan sponsor, delegated administration of the plan to an Administrative Committee, which in turn contracted with Hewitt, a company that provided outside administrative services for the plan. Plaintiffs requested statements showing what their monthly pension benefit would be, using participant-entered assumptions. The statements mailed to plaintiffs by Hewitt grossly overestimated the benefits to which they would be entitled.

Plaintiffs alleged that Hewitt, the Committee, and Northrop had breached their fiduciary duties and that the Committee had failed to provide ERISA-required benefit

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

information. Agreeing with the First Circuit, the panel held that calculation of benefits pursuant to a formula is not a fiduciary function, and so plaintiffs failed to state a claim for breach of a fiduciary duty by any of the three defendants. Furthermore, plaintiffs did not adequately plead that they submitted written requests for pension benefit statements as required to state a claim for violation of 29 U.S.C. § 1025(a)(1)(B)(ii). The panel therefore affirmed the dismissal of plaintiffs' ERISA claims. However, because plaintiffs could plead facts adequate to allege that they made written requests via an electronic writing, the panel directed the district court to permit plaintiffs to file an amended complaint.

Vacating in part, the panel held that plaintiffs' state-law professional negligence and negligent misrepresentation claims were not preempted by ERISA because they did not have a "reference to or connection with" an ERISA plan. The panel remanded for further proceedings.

## COUNSEL

Elizabeth Hopkins (argued) and Susan Meter, Kantor & Kantor LLP, Northridge, California; Teresa S. Renaker, Margo Hasselman Greenough, and Kirsten G. Scott, Renaker Hasselman Scott LLP, San Francisco, California; for Plaintiffs-Appellants.

Eileen R. Ridley (argued) and Jason Y. Wu, Foley & Lardner LLP, San Francisco, California; Kimberly A. Klinsport and Alyssa L. Tiche, Foley & Lardner LLP, Los Angeles, California; for Defendant-Appellee Alight Solutions LLC.

Nancy G. Ross (argued), Richard E. Nowack, and Brett E. Legner, Mayer Brown LLP, Chicago, Illinois; Alexander Vitruk, Mayer Brown LLP, Los Angeles, California; for Defendants-Appellees Northrop Grumman Corporation and Administrative Committee of the Northrop Grumman Pension Plan.

Norman Stein, Pension Rights Center, Washington, D.C.; Jeffrey Lewis, Keller Rohrback LLP, Oakland, California; for Amici Curiae Pension Rights Center and National Employment Lawyers Association.

Stephen P. Lucke, Andrew Holly, Timothy Droske, and Nicholas J. Bullard, Dorsey & Whitney LLP, Minneapolis, Minnesota; Janet M. Jacobson, American Benefits Council, Washington, D.C.; for Amicus Curiae American Benefits Council.

## OPINION

M. SMITH, Circuit Judge:

Northrop Grumman sponsored an employee pension plan (Plan) that is subject to the requirements of the Employee Retirement Income Security Act (ERISA). Northrop delegated administration of the Plan to an Administrative Committee (Committee), which in turn contracted with Hewitt (now Alight Solutions), a company that provided outside administrative services for the Plan. One of Hewitt's responsibilities was to generate statements for Plan participants showing what their monthly pension benefit would be when they retired, using participant-entered assumptions. Plaintiffs Stephen Bafford and Evelyn Wilson both requested these statements using an online platform

provided by Hewitt in the years leading up to their retirement.  Hewitt mailed the statements to Plaintiffs on Northrop letterhead.

The statements mailed to Plaintiffs in response to their online platform requests grossly overestimated the benefits to which each plaintiff would be entitled.  After Plaintiffs retired and began collecting benefits in the amount the statements predicted they would, Northrop sent them notices that the statements generated by the online platform had been incorrect.  Instead of the approximately $2,000 and $1,600 per month benefit Hewitt previously estimated, Bafford and Wilson were only entitled to receive $807 and $823 per month, respectively.

Bafford and Wilson sued.  They alleged that Hewitt, the Committee, and Northrop had breached their fiduciary duties and that the Committee failed to provide ERISA-required benefit information.  In an alternative to their ERISA claims, Plaintiffs asserted state-law professional negligence and negligent misrepresentation claims against Hewitt.  The district court granted Defendants' motion to dismiss, and Plaintiffs appealed.  We affirm in part, vacate in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are alleged in the complaint and taken as true for the purposes of a motion to dismiss.  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019).

Northrop sponsors the Northrop Grumman Retirement Plan and the Grumman Pension Plan.  Plaintiffs Stephen Bafford and Evelyn Wilson, each of whom separated from Northrop prior to July 2003 and later returned to work, were entitled to retirement benefits based on their highest three

years of salary from their *first* period of employment. In the years prior to retirement, but after their returns from their earlier separations from Northrop, Plaintiffs requested pension benefit estimates from time to time using the online platform provided by Hewitt and inserting varying hypothetical dates of retirement to see how their benefits would change. The statements generated in response to Plaintiffs' use of the online platform were titled "Retirement Plan Pension Estimate Calculation Statement," and said, "Here's the pension estimate you requested. These amounts are estimated benefits using your personal information on file, the assumptions you entered . . . , and the current terms of the Retirement Plan. Actual benefits payable to you may vary from the amounts on this estimate."

Indeed, the actual benefits payable did vary, because the estimates generated through the online platform calculated the anticipated benefit using Plaintiffs' salaries during their *second* period of employment, not the *first* period, as required by the Plan. The benefit statements Bafford received prior to his retirement indicated that he would receive a retirement benefit of approximately $2,000 per month. The benefit statements Wilson received prior to her retirement indicated that she would receive a retirement benefit of approximately $1,600 per month.

Both plaintiffs retired—Wilson in February 2014 and Bafford in October 2016—and each began receiving monthly retirement benefits in line with the statement estimates. However, in 2016, during a transition to a replacement recordkeeper, the errors in the calculation were discovered. In December 2016, Bafford was informed that his monthly retirement benefits would only be $807.89 per month; in February 2017, Wilson was informed that her monthly retirement benefits would be $823.93 per month,

and that she was required to repay over $35,000 of the benefit she had already received.

Plaintiffs brought separate suits that were later consolidated. Plaintiffs alleged that (1) Northrop, the Committee, and Hewitt breached their fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a); (2) the Committee violated ERISA § 105, 29 U.S.C. § 1025, by providing inaccurate pension benefit statements; (3) Hewitt was liable for professional negligence; (4) Hewitt was liable for negligent misrepresentation; and (5) Northrop, the Committee, and Hewitt violated ERISA § 406(a), 29 U.S.C. § 1106(a), by Northrop and the Committee paying Hewitt for recordkeeping services that were worthless.[1] The district court dismissed Plaintiffs' complaint for failure to state a claim. Plaintiffs appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"We review de novo a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Curtis*, 913 F.3d at 1151. On review, "[w]e accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted).

---

[1] Plaintiffs did not appeal the district court's dismissal of their claim pursuant to 29 U.S.C. § 1106(a).

## ANALYSIS

### A.

An entity is a fiduciary under ERISA to the extent it has or exercises any discretionary authority, control, or responsibility in the management or administration of an ERISA plan. 29 U.S.C. § 1002(21)(A)(i), (iii). An ERISA fiduciary must discharge its duties "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A) (cleaned up). In doing so, a fiduciary must use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages. *See* 29 U.S.C. § 1109(a); *see also Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004).

### 1.

Northrop and the Committee do not dispute that they are named fiduciaries under the Plan. The question is whether Plaintiffs adequately alleged that the Committee breached a fiduciary duty to provide accurate benefit information, and—tied to that—whether Northrop breached a fiduciary duty to monitor the Committee's performance.

The complaint alleges that Northrop and the Committee "breached their fiduciary duties to Plaintiffs and the Class

members by . . . failing to ensure that they or their delegees provided Plaintiffs with complete and accurate information regarding the amount of the Northrop Plan benefit" based on Hewitt's erroneous calculations. The parties dispute whether Hewitt was performing a fiduciary function.

"There are two types of fiduciaries under ERISA. First, a party that is designated 'in the plan instrument' as a fiduciary is a 'named fiduciary.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019) (quoting 29 U.S.C. § 1102(a)(2)). Second, a person who exercises discretionary control over management or administration of a plan is a "functional fiduciary." *Id.* at 653–54 (citing 29 U.S.C. § 1002(21)(A)).

When a plaintiff seeks to hold a *functional* fiduciary liable for breach of fiduciary duty, the plaintiff must allege that the defendant was performing a fiduciary function during the purported violation. In *Pegram v. Herdrich*, 530 U.S. 211 (2000), the Supreme Court wrote that ERISA

> does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only to the extent that he acts in such a capacity in relation to a plan. In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Id.* at 225–26 (internal citation and quotation marks omitted). However, the defendant in *Pegram* was alleged to be a *functional* fiduciary, not a named fiduciary, so *Pegram* theoretically left open the question of whether the same "threshold question" applies when the defendant is a named fiduciary.

In *Depot*, 915 F.3d at 654, we analyzed the alleged fiduciary breach of a functional fiduciary using the *Pegram* framework. However, neither the Supreme Court nor our court has addressed the question of whether a *named* fiduciary also must be performing a fiduciary function in order to breach a fiduciary duty. *See Acosta v. Brain*, 910 F.3d 502, 518 (9th Cir. 2018) (writing that although the threshold question is whether an employer is wearing his "fiduciary hat," the court lacked "basic information such as whether [the defendant] was a named or functional fiduciary"). Nor has our circuit decided whether calculating benefit amounts pursuant to a pre-set formula is a fiduciary function, such that failing to exercise due care in the course of the calculation is a breach of fiduciary duty.

Drawing on *Pegram*, the First Circuit answered both these questions, and held that calculation of a pension benefit by a named fiduciary was not a fiduciary function in a case very similar to this one. *Livick v. Gillette Co.*, 524 F.3d 24 (1st Cir. 2008). In *Livick*, Gillette's human resources officer and its online benefit estimator both overstated Livick's accrued pension benefit. *Id.* at 27. Livick was laid off from Gillette and turned down another job in reliance on the overstatement, but Gillette then corrected the overstatement. *Id.* Livick sued Gillette under ERISA alleging a breach of fiduciary duty. *Id.* at 27–28.

The First Circuit began with the proposition that "[a] fiduciary named in an ERISA plan can undertake non-

fiduciary duties." *Id.* at 29. In arriving at that conclusion, the court consulted a Department of Labor interpretive bulletin, 29 C.F.R. § 2509.75-8 (Cmt. D-2), and the court found its reasoning persuasive. *Livick*, 524 F.3d at 29. According to the bulletin, "calculation of benefits, and preparation of reports concerning participants' benefits are ministerial functions, and a person who performs purely ministerial functions within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." *Id.* (cleaned up). Accordingly, because the named fiduciary in *Livick* was performing a ministerial function, the alleged wrongs were not breaches of a fiduciary duty. *Id.* The Fourth Circuit is in accord with the proposition that a named fiduciary may perform non-fiduciary functions. *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 n.13 (4th Cir. 2019) (citing *Pegram* and *Livick* and stating that "there is no liability for breach of fiduciary duty if the challenged conduct of the plan administrator and named fiduciary is not fiduciary in nature, as there can be no breach of a nonexistent fiduciary duty.").

In *Sullivan-Mestecky v. Verizon Communications Inc.*, 961 F.3d 91, 104 (2d Cir. 2020), the Second Circuit reached a contrary conclusion. According to the Second Circuit, "plan administrators 'may perform a fiduciary function through ministerial agents' . . . even 'without converting those individual agents themselves into fiduciaries.'" *Id*. (quoting *In re DeRogatis*, 904 F.3d 174, 192 (2d Cir. 2018)). Thus, the *Sullivan-Mestecky* court permitted a plaintiff to maintain a suit for fiduciary breach against an employer based on the imputed gross negligence of a third-party ministerial benefits administrator. *Id.* Underlying the Second Circuit's reasoning in *Sullivan-Mestecky* were two principles, taken from *DeRogatis*: (1) that entities "act as

fiduciaries when they communicate with plan members and beneficiaries about plan benefits," and (2) that these communicative duties "encompass[] communications conducted by issuing written plan materials like summary plan descriptions, as well as through members' individualized consultations with benefits counselors." *DeRogatis*, 904 F.3d at 192; *see also Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 591 (7th Cir. 2000). Thus, where a third-party ministerial benefits administrator undertakes these duties on a fiduciary's behalf, the fiduciary cannot hide behind that delegation to escape liability for fiduciary breach. *Sullivan-Mestecky*, 961 F.3d at 104. In other words, if a fiduciary delegates a fiduciary function to an entity that normally performs a ministerial function, that entity's performance of a fiduciary function can still constitute a breach of fiduciary duty, imputed to the delegating fiduciary.

*Sullivan-Mestecky* and other out-of-circuit precedent Plaintiffs cite do not apply here because Plaintiffs do not allege that Hewitt was "issuing written plan materials like summary plan descriptions," or providing "individualized consultations with benefits counselors." *DeRogatis*, 904 F.3d at 192. We agree that these activities are well-established fiduciary functions. The touchstone of our reasoning is that Hewitt's calculation of participants' future pension benefit estimates was itself not the type of communication with beneficiaries that is fiduciary in nature. Northrop's delegation of this duty to Hewitt is not the operative fact that exempts Defendants from liability for a fiduciary breach; the operative fact is that the function being performed was not fiduciary in nature. Consistent with *Pegram*, *Livick*, and *Dawson-Murdock*, we hold that the alleged wrong must occur in connection with the performance of a fiduciary function to be cognizable as a breach of fiduciary duty. Furthermore, we agree with *Livick*

in finding the Department of Labor's interpretive bulletin, 29 C.F.R. § 2509.75-8 (Cmt. D-2), persuasive. The interpretive bulletin comports with the fundamental precept that *discretion* is one of the central touchstones for a fiduciary role. *See Ariz. State Carpenters Pension Tr. Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1997). Calculating a benefit within the framework of a policy set by another entity does not involve the requisite discretion or control to constitute a fiduciary function. Consequently, we hold that Plaintiffs have not alleged that Hewitt was performing a fiduciary function in miscalculating retirement benefits. As a result, Northrop and the Committee did not breach a fiduciary duty by failing to ensure that Hewitt correctly calculated Plaintiffs' benefits. We affirm the district court's dismissal of Plaintiffs' fiduciary duty claims against Northrop and the Committee.

**2.**

Plaintiffs' complaint alleges that Hewitt was a fiduciary because it exercised discretionary control, authority, or responsibility for the Plan's administration or management. Specifically, Plaintiffs alleged that Hewitt "prepared summaries of the Northrop Plan provisions" and, "[u]pon information and belief," used those summaries to calculate pension benefit estimates. Consequently, Plaintiffs conclude, Hewitt breached its fiduciary duty by "failing to apply the Northrop Plan provisions in calculating participants' benefits and repeatedly providing Plaintiffs and the Class members with inaccurate information regarding the amounts of their pensions."

This claim fails for the same reason that Plaintiffs' claim against Northrop and the Committee fails: calculation of pension benefits is a ministerial function that does not have a fiduciary duty attached to it. Thus, even if Hewitt were a

functional fiduciary with respect to some of its actions, it would not have been acting as a fiduciary when performing calculations according to the Plan formula.  *See Acosta*, 910 F.3d at 517 ("ERISA requires that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat *when making fiduciary decisions*." (cleaned up)).

**B.**

ERISA requires the administrator of a defined benefit plan to "furnish a pension benefit statement (i) at least once every 3 years to each participant . . . , and (ii) to a participant or beneficiary of the plan upon written request."  29 U.S.C. § 1025(a)(1)(B).  In the alternative to (i), the administrator may provide "notice of the availability of the pension benefit statement and the ways in which the participant may obtain such statement" at least once a year.  *Id.* § 1025(a)(3)(A).

The Committee's escape from liability on the fiduciary duty claim does not necessarily exonerate it from its other statutory obligations.  In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), after stating that the primary function of the fiduciary duty is to constrain discretionary authority not covered by other statutory provisions (such as § 1025(a)'s requirement to furnish benefit statements), the Supreme Court wrote, "[i]f the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose."  *Id.* at 504.

**1.**

Plaintiffs' claim fails as to the first clause, (a)(1)(B)(i), because the complaint includes no allegations showing that the Committee failed to provide yearly notice of the availability of the pension benefit statement, as allowed by (a)(3)(A).  Thus, taking Plaintiffs' pleaded facts as true, the

Committee could still have complied with (a)(1)(B)(i) by providing notice of the process for requesting a pension benefit statement.

**2.**

Plaintiffs' claim pursuant to the second clause, (a)(1)(B)(ii), presents a more difficult question. The district court held that Plaintiffs' complaint failed to state a claim because it did not adequately allege that Plaintiffs' requests for pension benefit statements were "written." Although we hold that use of an online platform to request a pension benefit statement *can* satisfy the writing requirement for 29 U.S.C. § 1025(a)(1)(B)(ii), Plaintiffs' pleaded allegations in the complaint here are still insufficient because the complaint does not allege that the online platform request was "written."

Thus far, no circuit has addressed whether a pension benefit estimate request via an online portal is sufficient to constitute a "written request" for purposes of § 1025(a). In *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2006), the Eighth Circuit considered whether a telephonic request for a pension benefit statement was a "written request." Rejecting the plaintiff's argument that his telephone call was an "electronic recording" akin to a writing under the Federal Rules of Evidence, the Eighth Circuit held that the plaintiff was not entitled to statutory penalties. *Id.* at 919. Because only a telephone call was at issue, the court did not address "whether a participant's use of the e-mail alternative would be a request 'in writing.'" *Id.*

Several district courts in the Ninth Circuit have considered whether online platform requests constitute written requests under § 1025(a), and, based on the structure of the statute, have ruled against plaintiffs who have argued

for that construction.  *See, e.g.*, *Mabry v. ConocoPhillips Co.*, No. 20-cv-00039-SLG, 2021 WL 189144, at *10–11 (D. Alaska Jan. 19, 2021); *Wilson v. Bank of Am. Pension Plan*, No. 18-cv-07755-TSH, 2019 WL 2549044, at *3 (N.D. Cal. June 20, 2019).  As the district court noted in *Mabry*, we "ha[ve] not addressed" this question.  *Mabry*, 2021 WL 189144, at *10.

In this case, the district court was correct to the extent that the bare allegation that Plaintiffs used an online platform to request a pension benefit estimate does not satisfy the "written request" requirement of § 1025(a).  However, we also conclude that the statute does not limit adequate requests to only those written by hand on a piece of paper and conveyed in the postal system.  In other words, an adequate electronic writing suffices.

Our reasoning is straightforward and relies on the common understanding of the word "written."  "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (cleaned up).

Black's Law Dictionary defines a "writing" as "[a]ny intentional recording of words in a visual form, whether in handwriting, printing, typewriting, or any other tangible form that may be viewed or heard with or without mechanical aids."  *Writing*, Black's Law Dictionary (11th ed. 2019).  We think it plainly true that a typed request for a pension benefit statement qualifies as a written request under the text of the statute.

We reject the notion that the subsections surrounding § 1025(a)(1)(B)(ii) support a different reading.  The district court in this case—and other district courts noted above—looked to subsection (a)(2)(A)(iv).  This subsection lists acceptable delivery methods for the pension benefit statement: "written, electronic, or other appropriate form[.]"  The contrast between the specification that the request must be "written," and the allowance for "written [or] electronic" statement delivery is a distinction without a difference.  Nothing in the statute suggests that Congress intended to disqualify *type*written requests for pension benefit statements from triggering ERISA's obligations.  Moreover, the two subsections address entirely different subjects: the *form* of the request and the *method* of the statement's delivery.  The two subsections are therefore not analogous in a way that allows us to draw conclusions from the electronic delivery option in one of them.  We therefore reject the contention that an online platform request for a pension benefit statement can *never* trigger a plan administrator's statutory obligations pursuant to § 1025(a).  Such a narrow construction would be inconsistent with the purpose of ERISA, which is "designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).

Plaintiffs' complaint did not include specific allegations about the manner in which Plaintiffs submitted their request for a pension benefit statement via the online platform.  If Plaintiffs' complaint alleged facts which, if true, would show Plaintiffs' "intentional recording of words in a visual form" that conveyed a request for a pension benefit statement, their § 1025(a)(1)(B)(ii) claim could survive.  *Writing*, Black's Law Dictionary (11th ed. 2019).  The complaint does not specify which words—if any—Plaintiffs intentionally

recorded in a visual form, so we are not able to determine whether those words are a sufficient request to trigger the statutory obligations.  Because the complaint lacks such detail, the district court was correct to dismiss it without prejudice on the ground that it did not allege a written request.

## C.

In an alternative to their ERISA claim against Hewitt, Plaintiffs raise state-law professional negligence and negligent misrepresentation claims. The district court dismissed these claims on the ground that they are preempted by ERISA.

ERISA preempts state-law causes of action that "relate to any employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (quoting 29 U.S.C. § 1144(a)).  "The question whether a certain state action is pre-empted by federal law is one of congressional intent." *Id.* (cleaned up).  The Supreme Court has "observed in the past that the express pre-emption provisions of ERISA are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Id.* at 45–46 (internal quotation marks omitted).  "[A] state law relates to a benefit plan[,] in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 47 (internal quotation marks and citation omitted)).

## 1.

"To determine whether a law has a forbidden reference to ERISA plans, we ask whether (1) the law acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the law's operation." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009)

(cleaned up). It is well-settled that "professional negligence claims are based on common law negligence principles and California Civil Code §§ 1708 and 1714(a). These laws do not act 'immediately and exclusively on ERISA plans, and the existence of an ERISA plan is not essential to these laws' operation." *Paulsen*, 559 F.3d at 1082. Plaintiffs' professional negligence claim is not preempted on this ground; for the same reason, their negligent misrepresentation claim is not preempted.

## 2.

We have "employed a 'relationship test' in analyzing 'connection with' preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Id.* (quoting *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)). In *Paulsen*, we concluded that a professional negligence claim against a third-party actuary was not preempted because the claims did not bear on any of the three relationships enumerated. *Id.* at 1083. We wrote:

> At most[, the claims] might interfere with a relationship between the plan and its third-party service provider. . . . Although a state law negligence claim such as this one might encroach on an ERISA-regulated relationship were it made against a plan sponsor, it does not encroach on any actuary-participant relationship governed by ERISA when asserted against a non-fiduciary actuary.

*Id.* at 1083. Instead, "[t]he duty giving rise to the negligence claim runs from a third-party actuary, *i.e.*, a non-fiduciary

service provider, to the plan participants as intended third party beneficiaries of the actuary's service contract." *Id.*

The broad congressional purpose underlying ERISA is to protect the rights and interests of beneficiaries under employer-sponsored plans. *See Varity*, 516 U.S. at 497, 515. Because congressional intent is relevant to the preemption analysis, it bears noting that there is no "ERISA-related purpose that denial of a remedy would serve" in this instance. *Id.* at 515. Holding both that Hewitt's calculations were not a fiduciary function and that state-law claims are preempted would deprive Plaintiffs of a remedy for the wrong they allege without examination of the merits of their claim. Broadly, this would be inconsistent with ERISA's purpose.

The *Paulsen* reasoning applies with equal force here. Plaintiffs' claims against Hewitt do not bear on the relationship between Plaintiffs and the Plan; between Northrop, the Committee, and the Plan; or between Plaintiffs, Northrop, and the Committee.[2] Consequently, the state-law professional negligence claim does not have a "connection with" an ERISA plan as the caselaw uses that phrase, and ERISA does not preempt the cause of action.

---

[2] The district court concluded that "but for the Plan, Plaintiffs' entitlement to a pension benefit consistent with its terms and Hewitt's role in calculating benefits under the Plan, Plaintiffs would have no claim against Hewitt. Here, unlike *Paulsen*, a relationship between 'plan and plan member' is directly at issue." The district court's reasoning is flawed. In this case, as in *Paulsen*, but for the ERISA plan, the third-party would not have had any role to play. *Paulsen*, 559 F.3d at 1065 ("In connection with the plan spinoff, [the employer] engaged the actuarial services of [the third party] to value the benefit liabilities to be transferred to the [employer-sponsored] plan."). *Paulsen* therefore does not meaningfully differ from the facts of this case.

Similarly, the state-law negligent misrepresentation claim relates only to the relationship between Plaintiffs and Hewitt; this claim is also not preempted under the "connection with" prong.

Defendants' briefs include attacks on the merits of the state-law claims. Because the district court dismissed the state-law claims based on ERISA preemption and did not address the merits, the district court should consider these arguments in the first instance on remand.

## CONCLUSION

Calculation of benefits pursuant to a formula is not a fiduciary function, so Plaintiffs failed to state a claim for breach of a fiduciary duty by any of the three defendants. Furthermore, Plaintiffs did not adequately plead that they submitted written requests for pension benefit statements as required to state a claim for violation of 29 U.S.C. § 1025(a)(1)(B)(ii). For these reasons, we affirm the district court's dismissal of Plaintiffs' ERISA claims. However, because Plaintiffs could plead facts adequate to allege they made written requests, we direct the district court to permit Plaintiffs to file an amended complaint. Finally, Plaintiffs' state-law professional negligence and negligent misrepresentation claims are not preempted by ERISA because they do not have a "reference to or connection with" an ERISA plan. We therefore vacate the district court's dismissal of Plaintiffs' state-law claims, and we remand for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**