Teresa S. Renaker – CA State Bar No. 187800
teresa@renakerhasselman.com
Kirsten G. Scott – CA State Bar No. 253464
kirsten@renakerhasselman.com
RENAKER HASSELMAN SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94104
Telephone: (415) 653-1733
Facsimile: (415) 727-5079

Elizabeth Hopkins – CA State Bar No. 324431
ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN H. BAFFORD and EVELYN L. WILSON on their own behalves and on behalf of a class of similarly situated participants and beneficiaries, and LAURA BAFFORD,<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHROP GRUMMAN CORPORATION; ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN; and ALIGHT SOLUTIONS LLC (formerly known as Hewitt Associates LLC),<br><br>Defendant. | Case No. 2:18-cv-10219-ODW-E<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF ERISA AND STATE LAW**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED AS TO STATE-LAW CLAIMS** |

## JURISDICTION

1.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f). As

1  to the state-law claims, this Court has supplemental subject matter jurisdiction
2  pursuant to 28 U.S.C. § 1367(a) because the state-law claims form part of the same
3  case or controversy. In addition, as to the state-law claims, this Court has subject
4  matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy
5  exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
6  citizens of different states.

7  **VENUE**

8  2.     Venue lies in the Central District of California pursuant to ERISA §
9  502(e)(2), 29 U.S.C. § 1132(e)(2), because the Northrop Grumman Pension Plan
10  ("Northrop Plan") is administered in this District and Defendants Northrop
11  Grumman Corporation ("Northrop"), Administrative Committee of the Northrop
12  Grumman Pension Plan ("Administrative Committee"), and Alight Solutions LLC
13  ("Alight"), formerly Hewitt Associates, LLC ("Hewitt"), may be found in this
14  District.

15  **INTRADISTRICT ASSIGNMENT**

16  3.     Pursuant to General Order 16-05, Section I.B.1.a.(1)(c), this case should
17  be assigned to the Western Division.

18  **NATURE OF THE CASE**

19  4.     Plaintiffs Stephen H. Bafford and Evelyn L. Wilson bring this suit on
20  behalf of themselves and on behalf all similarly situated participants in and
21  beneficiaries of the Northrop Plan under the Employee Retirement Income Security
22  Act of 1974, as amended, 29 U.S.C. § 1000 *et. seq.* ("ERISA"), for equitable relief
23  to enforce rights under and remedy violations of ERISA, and to recover statutory
24  penalties for Defendants' failure to comply with ERISA's disclosure requirements.
25  Alternatively, with respect to Defendant Alight, Plaintiffs seek to recover damages
26  stemming from professional negligence and negligent misrepresentation under
27  California law.
28  //

## THE PARTIES

5.     Plaintiff Stephen H. Bafford is, and has been at all relevant times, a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan. Mr. Bafford is a resident of Ogden, Utah.

6.     Plaintiff Evelyn L. Wilson is, and has been at all relevant times, a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan. Ms. Wilson is a resident of Rancho Palos Verdes, California.

7.     Plaintiff Laura Bafford is, and has been at all relevant times, a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(7), of the Northrop Plan. Ms. Bafford is a resident of Ogden, Utah.

8.     Defendant Northrop is a Delaware corporation with its principal place of business in Falls Church, Virginia. Northrop is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Northrop Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Northrop Plan. Among other authority, Northrop has the authority to appoint the Northrop Plan's Plan Administrator and exercises discretion in selecting and monitoring the Plan Administrator and/or other fiduciaries. The sector headquarters for Northrop Grumman Aerospace Systems is located in Redondo Beach, Los Angeles County, California.

9.     Defendant Administrative Committee is the Plan Administrator of the Northrop Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). The Administrative Committee is a named fiduciary of the Northrop Plan by reason of being the Plan Administrator, and is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Northrop Plan's

assets, it exercises discretionary authority or discretionary control respecting management of the Northrop Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Northrop Plan. The Administrative Committee's address is in El Segundo, Los Angeles County, California.

10. As the Plan Administrator, the Administrative Committee is the entity responsible for providing pension benefit statements to the Northrop Plan participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a), among other responsibilities. The Northrop Plan designates the Administrative Committee as a named fiduciary, with responsibility for the general administration of the Northrop Plan. The Northrop Plan specifies that the Administrative Committee's responsibilities include the responsibility to comply with ERISA's reporting and disclosure requirements, to prepare and distribute communications to employees as a part of Northrop Plan operations, to construe and interpret the terms of the Northrop Plan, and to determine the amount of benefits and authorize payments from the Trust funding the Northrop Plan.

11. Defendant Alight is an Illinois limited liability company with its principal place of business in Illinois. Beginning in 2008, Alight's predecessor, Hewitt, provided record-keeping and third-party administration services to the Northrop Plan. Alight maintains an office in Irvine, Orange County, California. Upon information and belief, pursuant to the Administrative Committee's delegation of authority, Hewitt operated the Northrop Grumman Benefits Center and a website at http://benefits.northropgrumman.com, and issued pension benefit statements and other communications on Northrop letterhead.

12. Alight holds itself out as providing "a total retirement approach to help drive better solutions and outcomes," based on "40+ years of knowledge, expertise, and innovation managing retirement plans for large organizations, helping people save, plan and retire confidently." Alight publicly asserts that its defined benefit plan

administration will enable employees "to retire confidently with industry-leading expertise, technology and support," with "a customer experience designed to help [employees] fully understand their options" and "tools and rigorous processes that assure quality in all aspects of the services we deliver," making "essential plan information easy to access and navigate."

13.     Upon information and belief, Northrop and/or the Administrative Committee contracted with Hewitt to carry out certain of the Administrative Committee's responsibilities for Northrop Plan administration, including its pension benefit statement responsibilities under ERISA § 105(a) and its responsibility for processing pension applications.

14.     Hewitt's services included providing an online platform that allowed participants to request statements of their accrued pension benefits based on potential future employment termination dates and benefit commencement dates, in purported satisfaction of the Administrative Committee's obligations under ERISA § 105(a).

## FACTS

### Pertinent Plan Terms

15.     The Northrop Plan is an employee pension benefit plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by Defendant Northrop. The Northrop Plan consists in part of sub-plans including the Northrop Grumman Retirement Plan and the Grumman Pension Plan. The Northrop Plan is a defined benefit pension plan, meaning that each participating employee is entitled to a fixed periodic payment during retirement based on a pension calculation formula set forth in the applicable sub-plan, and each surviving spouse of a participating employee is entitled to a fixed periodic payment during his or her lifetime unless he or she has validly waived the survivor benefit.

16.     Prior to July 1, 2003, each Northrop Plan sub-plan used a final average pay formula to calculate benefits. Under the final average pay formula, a

1 participant's pension was calculated based on factors including his years of benefit

2 service and his average rate of annual salary during his highest three years of salary

3 out of the last ten years that he was a covered employee under the plan.

4      17.    Effective July 1, 2003, the Northrop Plan switched to a less-generous

5 "cash balance" formula. However, because ERISA prohibits reductions of accrued

6 benefits, Northrop Plan participants who accrued benefits before the cash balance

7 conversion continued to be entitled to have those benefits calculated under the more-

8 generous final average pay formula.

9      18.    Thus, after July 1, 2003, participants who accrued benefits prior to July

10 1, 2003, continued to be entitled to have those benefits calculated using the final

11 average pay formula. Plaintiffs' Northrop Plan benefits are calculated based on the

12 pre-July 1, 2003 benefit formula. Through a complex formula pieced together from

13 multiple plan documents, definitions, and appendices, the final average pay formula

14 recognized Plaintiffs' years of service after returning to Northrop for vesting and

15 early retirement credit, but did not recognize their earnings after returning to

16 Northrop in determining their final average earnings. Plaintiffs had no way to

17 ascertain and apply this multi-step formula without assistance from Defendants.

18      19.    Under the Northrop Plan's terms, a participant is entitled to a normal

19 retirement benefit commencing at age 65. A participant who has attained at least age

20 55 with at least 10 years of service is entitled to a reduced early retirement benefit,

21 and a participant whose age plus his years of early retirement service equals at least

22 85 is entitled to an unreduced early retirement benefit – that is, to receive his full age

23 65 pension before age 65.

24      20.    As used in ERISA, "accrued benefit" means the participant's benefit

25 expressed as an annual benefit beginning at normal retirement age, or the actuarial

26 equivalent of that amount. ERISA §§ 3(23)(A), 204(c)(3), 29 U.S.C. §§

27 1002(23)(A), 1054(c)(3). The Plan defines "accrued benefit" consistent with these

28 rules.

21.     ERISA defines "normal retirement benefit" as the greater of a participant's benefit at normal retirement age or his or her early retirement benefit.

22.     Because the Northrop Plan's final average pay formulae calculate benefits based in part on a participant's years of service at employment termination and age at benefit commencement, a participant's pension benefit will vary depending upon his or her employment termination date and benefit commencement date. Thus, Hewitt's online platform allowed Northrop Plan participants to request that Hewitt determine the effect of different combinations of dates on their pension benefit amounts, and the statements generated and mailed by Hewitt to participants provided that information.

## **Plaintiffs' Employment and Pension Service**

23.     Mr. Bafford began his employment with Northrop in April 1987, at age 26, as a Procurement Expeditor. He worked for Northrop in Pico Rivera, California, and Palmdale, California.

24.     Ms. Wilson began her employment with Northrop in September 1986 as a software engineer.

25.     As Northrop employees, Mr. Bafford and Ms. Wilson accrued pension benefits under the Northrop Grumman Retirement Plan, which is one of the sub-plans of the Northrop Plan. Ms. Wilson also accrued benefits under the Grumman Pension Plan, another Northrop Plan sub-plan.

26.     In September 1997, Ms. Wilson was laid off by Northrop and went to work for TRW Corporation ("TRW") in California as a software engineer.

27.     In February 1998, Mr. Bafford terminated employment with Northrop and went to work for TRW in Ogden, Utah, as a Subcontract Manager.

28.     As TRW employees, Mr. Bafford and Ms. Wilson accrued pension benefits under the TRW Pension Plan ("TRW Plan").

29.     In December 2002, Northrop acquired TRW, and Mr. Bafford and Ms. Wilson became Northrop employees again.

CASE NO. 2:18-cv-10219-ODW-E
SECOND AMENDED COMPLAINT

29A.    During the transition back to Northrop employment, Mr. Bafford and Ms. Wilson attended meetings at which Northrop representatives informed them that they would not initially be able to obtain pension statements online, as they had been able to do at TRW, but assured them that this issue would be corrected so that they could obtain pension statements online.

30.    Upon information and belief, more than 20,000 TRW employees became Northrop employees as a result of the December 2002 acquisition.

31.    Northrop renamed the TRW Plan the Northrop Grumman Space and Mission Systems Salaried Employees Pension Plan. Mr. Bafford and Ms. Wilson continued to accrue benefits under the renamed TRW Plan as Northrop employees.

**Pension Benefit Statements**

32.    Plaintiffs and the members of the proposed Class were the victims of a systemic calculation error affecting Northrop Plan participants who, while working for Northrop, accrued benefits under pension plans formerly sponsored by acquired companies. According to Pension Recalculation Notices issued by Defendants to Mr. Bafford and Ms. Wilson, the error involved calculating these participants' pensions based on their final average earnings following their return to Northrop employment, rather than on their final average earnings from their first periods of Northrop employment.

33.    The systemic error resulted in participants' benefits being overstated.

34.    The systemic error persisted from at least 2010 until late 2016.

35.    The systemic error infected pension benefit statements provided to participants, pension election paperwork provided to participants, and pension checks provided to participants.

36.    For example, beginning in 2010, Mr. Bafford began requesting pension benefit statements as he approached age 50 to assist him and Ms. Bafford in planning for retirement. Mr. Bafford used the online platform to request statements,

CASE NO. 2:18-cv-10219-ODW-E
SECOND AMENDED COMPLAINT

which were then mailed to him.

37.    Hewitt's statements consistently informed Mr. Bafford that if he worked until at least age 55 and elected to receive his benefit in the form of a 100 percent joint and survivor annuity, his Northrop Plan benefit would be over $2,000 per month during his lifetime and the same amount for Ms. Bafford's lifetime if he predeceased her. Specifically, Hewitt provided the following statements:

| Statement Date | Employment Termination Date | Benefit Commencement Date | 100% JSA Benefit Amount |
|---|---|---|---|
| Mar. 2010 | Oct. 2015 | Nov. 2015 | $2,033.93 |
| Nov. 2011 | Sept. 2015 | Oct. 2015 | $2,011.90 |
| Feb. 2013 | Sept. 2015 | Oct. 2015 | $2,007.27 |
| Feb. 2013 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Mar. 2014 | Jan. 2017 | Feb. 2017 | $2,110.64 |
| Oct. 2014 | Sept. 2015 | Oct. 2015 | $2,077.27 |
| Oct. 2014 | Sept. 2015 | Apr. 2016 | $2,098.02 |
| Oct. 2014 | Mar. 2016 | Apr. 2016 | $2,098.02 |
| Aug. 2015 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Aug. 2015 | Dec. 2016 | Jan. 2017 | $2,111.58 |
| Aug. 2015 | Apr. 2017 | May 2017 | $2,107.58 |
| June 2016 | Sept. 2016 | Oct. 2016 | $2,114.41 |

38.    Each of the statements provided to Mr. Bafford showed that it was based on his earnings from his second period of Northrop employment.

39.    Likewise, Ms. Wilson made numerous requests for benefit statements. For instance, in February 2011, pursuant to Ms. Wilson's request, Hewitt sent Ms.

Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on May 31, 2011, and commenced her pension on June 1, 2011. The statement used Ms. Wilson's earnings from her most recent three years of employment: 2009, 2010, and 2011.

40.     Similarly, in November 2013, pursuant to Ms. Wilson's request, Hewitt sent Ms. Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on January 31, 2014, and commenced her pension on February 1, 2014. Again, the statement used Ms. Wilson's average earnings from her last three years of employment: 2012, 2013, and 2014. The statements showed if Ms. Wilson retired on February 1, 2014, and elected to receive her benefit in the form of a 50 percent joint-and-survivor annuity, her Northrop Plan benefit would be $1,630.11 during her lifetime and $815.06 for her spouse's lifetime if she predeceased him.

40A.   Specifically, each time either Plaintiff sought to obtain a new pension benefit statement, he or she made a written request by first logging on to the Northrop benefits website by typing in his or her name and Social Security number or employee identification number. The website had areas for different benefits, including health, 401(k), and pension. Plaintiffs navigated to the pension area of the website by clicking on menu options.

40B.   At that point, each time, the website responded to Plaintiffs' written requests with a message that it could not provide them with a pension benefit statement, and directed them to call a telephone number to request a statement.

40C.   Each Plaintiff then called the telephone number as instructed, provided his or her name and Social Security number or employee identification number, and provided the employment termination date or dates and benefit commencement retirement date or dates for which he or she wished to see a statement. They then received statements for the requested

dates by mail.

40D.   Each Plaintiff made a written request for a statement from the website multiple times during the years before they retired, because they had been told by Northrop management that online statements would become available. Also, each Plaintiff was aware that other employees could obtain pension benefit statements by making written requests online.

40E.   However, although the website allowed Plaintiffs to view statements that had previously been sent to them by mail, it always instructed them to continue their written requests for new pension benefit statements by telephone.

40F.   The summary plan description issued for the Northrop Plan in January 2014 directed participants to consult the website for pension benefit information, instructing as follows:

**Keeping Track of Your Benefit.**

You can track the amount of your accrued benefit and project your estimated benefit at retirement online at *My Benefits Access*, available at *Benefits OnLine* at http://benefits.northropgrumman.com. . . . Tracking the amount of your cash balance benefit is a key part of planning for a financially secure retirement. It can help you make informed decisions about how much to save on your own and how to diversify your 40(k) savings or other investments.

40G.   By telling Northrop Plan participants in the summary plan description that obtaining their "estimated" benefit amount online would help them make informed retirement planning decisions, the Benefits Committee assured them that the "estimate" would be sufficiently accurate to enable effective planning. This assurance by the Benefits Committee was false, because the benefit amounts that the Benefits Committee provided to Plaintiffs and the proposed Class members via Hewitt's website were grossly overstated. As a result, the information undermined Plaintiffs' retirement

planning rather than facilitating it as the summary plan description promised.

40H.   Plaintiffs did not receive any pension benefit statements other than those they requested in writing as described above. They did not receive an unsolicited statement every three years while they were actively employed.

40I.   Plaintiffs were never told by the online system, the telephone representatives, or any other Northrop or Hewitt source that they should make their requests for pension benefit statements by mailing paper requests. Instead, they were instructed to make the requests by telephone.

40J.   Upon information and belief, Plaintiffs never received any annual notice of the availability of pension benefit statements or the ways in which they could obtain such statements.

40K.   Upon information and belief, Northrop Plan participants with the same Northrop-TRW-Northrop employment pattern as Plaintiffs, but who were assigned to a "heritage Northrop sector" after Northrop's acquisition of TRW, were able to obtain pension benefit statements from the website by typing in their anticipated employment termination and benefit commencement dates, rather than being directed to submit this information by telephone as Plaintiffs were. However, the statements that these Class members received were inaccurate in exactly the same way as the statements that Plaintiffs received: they calculated the participants' final average pay benefits using their earnings from their second period of Northrop employment rather than their first period of Northrop employment.

## Plaintiffs' Retirements

41.   Ms. Wilson retired on February 1, 2014, and, consistent with the statements, she began receiving benefits in the amount of $1,630.11 per month under the Northrop Grumman Retirement Plan and $117.36 per month under the Grumman Pension Plan, both based on her average earnings during her final three years of

1  service at Northrop.

2     42.    From February 1, 2014, through March 1, 2017, the Northrop Plan

3  made payments to Ms. Wilson of $1,630.11 per month for her Northrop Grumman

4  Retirement Plan benefit and $117.36 per month for her Grumman Pension Plan

5  benefit.

6     43.    In July 2016, Mr. Bafford requested and received materials necessary to

7  commence his pension as of October 1, 2016. The materials included a statement

8  again showing the 100 percent joint-and-survivor benefit amount of $2,114.41 per

9  month.

10    44.    After Mr. Bafford submitted his pension paperwork, Hewitt issued him

11  a "Retirement Plan Pension Election Confirmation Statement" on Northrop

12  letterhead, showing that he had elected the 100 percent joint-and-survivor annuity

13  benefit of $2,114.41 per month. Mr. Bafford signed and returned the accompanying

14  "Pension Election Authorization Form," certifying that he had elected the 100

15  percent joint-and-survivor annuity form of benefit. The form states that Mr. Bafford

16  "[c]ertifies that I understand this payment option pays **$2,114.41** per month," and

17  "[c]ertifies that I understand my beneficiary is LAURA A. BAFFORD and will

18  receive upon my death $2,114.41 per month."

19    45.    On August 11, 2016, Hewitt confirmed on Northrop letterhead that it

20  had received and would process Mr. Bafford's Pension Election Authorization Form

21  and that his first payment would be made on October 1, 2016.

22    46.    From October 1, 2016, through January 1, 2017, the Northrop Plan

23  made monthly benefit payments to Mr. Bafford of $2,114.41 each.

24           **Discovery of the Systemic Error; Benefit Recalculations**

25    47.    Upon information and belief, in 2016 Northrop and/or the

26  Administrative Committee replaced Hewitt as recordkeeper and third-party

27  administrator of the Northrop Plan.

28    48.    Upon information and belief, plan fiduciaries performed an audit in

13

1   2016 as part of the hand-off to Fidelity, the new third-party administrator, and
2   discovered the systemic overstatement of benefits.

3       49.    In December 2016, more than three months after his retirement, Mr.
4   Bafford received a "Pension Plan Recalculation Notice" on Northrop letterhead,
5   stating that Northrop had recalculated his benefit "based on updated information."

6       50.    In January 2017, Mr. Bafford received another "Pension Plan
7   Recalculation Notice" on Northrop letterhead, explaining that his monthly Northrop
8   Plan benefit would be permanently reduced from $2,114.41 to $807.89 – a reduction
9   of more than 60 percent.

10      51.    The second recalculation notice admitted that there was no "updated
11  information" that formed the basis of the recalculation. Instead, the notice explained
12  that that Mr. Bafford's pension amount had been based on "incorrect pay."
13  Specifically, the benefit had been based on Mr. Bafford's final average salary from
14  his second period of Northrop employment, but should have been based on final
15  average salary from his first period of Northrop employment.

16      52.    Thus, Mr. Bafford's pension was recalculated based on information that
17  had been in Northrop's possession for nearly 20 years, including throughout the
18  period when Hewitt issued at least a dozen statements showing that Mr. Bafford had
19  earned a pension in excess of $2,000 per month.

20      53.    In February 2017, three years after her retirement, Ms. Wilson received
21  a Pension Plan Recalculation Notice on Northrop letterhead. Although Ms. Wilson
22  was told for numerous years that her benefits would be based on her earnings from
23  her final three years of service at Northrop, and the Northrop Plan actually paid
24  those benefits for three years, the Pension Plan Recalculation Notice states that there
25  was a mistake in the benefit calculation. The notice states that Ms. Wilson's pension
26  benefits would be recalculated using her 1995-1997 salary, the final average salary
27  from her first period of Northrop employment. The recalculation decreased her
28  retirement benefits dramatically to less than half the retirement benefits she had been

14

1 | promised and was receiving for three years.

2 | 54.    Thus, as with Mr. Bafford, Defendants recalculated Ms. Wilson's

3 | Northrop Grumman Retirement Plan and Grumman Pension Plan benefits based on

4 | information that had been in Northrop's possession for 20 years, including the entire

5 | time Hewitt issued statements showing she had earned pension benefits in excess of

6 | $1,600 and the entire three years that the Northrop Plan actually paid her that

7 | amount.

8 | 55.    Northrop insisted that Ms. Wilson repay the alleged "overpayment" of

9 | over $35,000, even though any mistake in the calculation was through no fault of

10 | Ms. Wilson, and stated that if Ms. Wilson did not repay the alleged overpayment in a

11 | lump sum, her already diminished pension would be reduced further until the

12 | Northrop Plan had collected the alleged overpayment.

13 | **Plaintiffs' Reliance**

14 | 56.    In issuing pension benefit statements, pension election paperwork, and

15 | pension payments, Defendants intended to, and did, induce reliance on the part of

16 | Northrop Plan participants, including Plaintiffs. The sole purpose for requesting a

17 | pension benefit statement is to learn the amount of a participant's pension benefit

18 | upon retirement.

19 | 57.    Due to the complexity of the Northrop Plan terms and the required

20 | calculations, and the multiple plan documents involved, Northrop Plan participants

21 | had no way to verify the benefit amounts provided in pension benefit statements,

22 | pension election paperwork, and pension payments.

23 | 58.    Specifically, in deciding when to retire, and in making other financial

24 | decisions to plan for retirement, Plaintiffs relied on Defendants' promises of a

25 | monthly pension benefit in excess of $2,000 for Mr. Bafford and in excess of $1,700

26 | for Ms. Wilson.

27 | **CLASS ALLEGATIONS**

28 | 59.    Mr. Bafford and Ms. Wilson bring this action on behalf of themselves

15

and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (2).

60.    The Class is defined as all Northrop Plan participants and beneficiaries whose final average pay benefits were miscalculated due to participants accruing benefits, while working at Northrop, under a plan previously sponsored by an acquired company, and whose final average pay benefits were recalculated after June 1, 2016.

61.    Plaintiffs reserve the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

62.    The proposed class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

63.    Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. The Northrop Plan's publicly available Form 5500 (Annual Return/Report of Employee Benefit Plan), for the Plan year ending December 31, 2015, states that there were more than 111,000 Northrop Plan participants during that year. Plaintiffs are informed and believe that hundreds of former Northrop employees were hired by TRW, many of whom subsequently returned to Northrop employment when Northrop acquired TRW. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that the substantial number of Northrop Plan participants and beneficiaries who have been similarly affected precludes joinder of all affected participants and beneficiaries. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the members of the class are readily determinable from the Defendants' records.

64.    There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

a.    Whether Defendants acted in a fiduciary capacity in providing pension benefit statements to Northrop Plan participants;

CASE NO. 2:18-cv-10219-ODW-E
SECOND AMENDED COMPLAINT

b. Whether Defendants breached their fiduciary and statutory duties by failing to ensure the accuracy of the benefits statements provided to Northrop Plan participants;

c. Whether Plaintiffs and the Class are entitled to equitable relief from Defendants' violations of ERISA §§ 404(a), 105(a), and/or 406; and/or to statutory penalties for Defendants' violations of ERISA § 105(a);

d. Whether, if Defendant Alight was not acting as a fiduciary, it acted negligently with respect to the Class under State law;

e. Whether Defendants engaged in a transaction prohibited by ERISA when they caused the Northrop Plan to pay compensation to Hewitt for work that Defendants contend was unreliable.

65.     The claims of the named class representatives are typical of the claims of the proposed Class. Plaintiffs and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of applicable Federal and State law. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

66.     The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the Mr. Bafford and Ms. Wilson and the other members of the proposed Class.

67.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual

17

1   class members could produce varying adjudications as to, *inter alia*, whether

2   Defendants acted in a fiduciary capacity in providing inaccurate pension benefit

3   statements to Plaintiffs and class members, whether Northrop and the Administrative

4   Committee should be estopped to deny that Plaintiffs and class members are entitled

5   to the miscalculated benefits, and whether other equitable relief is available for

6   Defendants' ERISA violations.

7        68.     This action is maintainable as a class action under Rule 23(b)(2)

8   because Defendants have acted and/or refused to act on grounds generally applicable

9   to the Class, thereby making appropriate monetary, injunctive and other equitable

10  relief in favor of the Class. In particular, Defendants' miscalculation of pension

11  benefits for Northrop Plan participants who accrued benefits under plans formerly

12  sponsored by acquired companies, such as TRW, was systemic in nature, affecting

13  all similarly situated Northrop Plan participants in the same way.

### FIRST CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),

### Against Defendants Northrop and the Administrative Committee

17  69-73.   Claim dismissed.

### SECOND CLAIM FOR RELIEF

### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),

### Against Defendant Alight

21  74-79.   Claim dismissed.

### THIRD CLAIM FOR RELIEF

### Claim for Violation of ERISA § 105, 29 U.S.C. § 1025,

### Against Defendant Administrative Committee

25       80.     Plaintiffs incorporate Paragraphs 1 through 68 as though fully set forth

26  herein.

27       81.     ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan

28  administrator furnish pension benefit statements to defined benefit plan participants.

Specifically, a plan administrator must furnish a pension benefit statement (1) at least once every three years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and (2) to a participant or beneficiary of the plan upon written request.

81A.    Pursuant to ERISA § 105(a)(3)(A), the requirement to provide a triennial statement is met "with respect to a participant if at least once each year the administrator provides to the participant notice of the availability of the pension benefit statement and the ways in which the participant may obtain such statement."

82.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

83.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

84.    ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

85.    The Administrative Committee violated Section 105(a) by failing to provide Plaintiffs and the Class members with accurate statements of their Northrop Plan benefits and/or by failing to monitor the performance of its delegate that provided pension statements to Plaintiffs and the Class members.

85A.   Specifically, the Administrative Committee violated Section 105(a) by failing to provide Plaintiffs and Class members with either triennial statements or annual notices of how to obtain a statement, and by failing to provide accurate statements in response to written requests by Plaintiffs and Class members.

86.   Plaintiffs and the Class members have been harmed by the Administrative Committee's breaches in that they received and relied on inaccurate information about their retirement income in planning for retirement.

## FOURTH CLAIM FOR RELIEF

### *In the Alternative to the Second Claim for Relief*

### Claim for Professional Negligence Against Defendant Alight

87.   Plaintiffs incorporate Paragraphs 1 through 68 as though fully set forth herein.

88.   A third-party administrator performing professional services owes a duty of care to the intended beneficiaries of the professional services rendered, including, without limitation, (1) the duty to have that degree of learning and skill ordinarily possessed by a reputable third-party administrator practicing in the same or similar locality under similar circumstances; (2) the duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same or similar locality in similar circumstances; and (3) the duty to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning. A failure to perform any one of these duties constitutes negligence.

89.   A third-party administrator that holds itself out as a specialist in a particular field, such as the calculation of benefits under a pension plan, has the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to use the care and skill ordinarily used, by a reputable specialist practicing in the same field and in the same or similar locality and under similar circumstances. A failure to fulfill either

20

1  duty constitutes negligence.

2       90.    Thus, a third-party administrator providing services to an employee

3  benefit plan has a duty to exercise such care, skill, and diligence as other members of

4  the profession commonly possess and exercise in the course of the provision of

5  services to or for an employee pension benefit plan.

6       91.    Hewitt breached its professional duties by providing grossly inaccurate

7  information to Plaintiffs and Class members regarding the amount of their benefits

8  under the Northrop Plan on numerous occasions over at least a six-year period, and

9  by related acts and omissions.

10      92.    As a consequence of Hewitt's professional negligence, Plaintiffs and

11  Class members have been injured in that they relied upon the inaccurate information

12  in planning for their retirements, and have suffered losses as a result.

13                          **FIFTH CLAIM FOR RELIEF**

14              ***In the Alternative to the Second Claim for Relief***

15      **Claim for Negligent Misrepresentation Against Defendant Alight**

16      93.    Plaintiffs incorporate Paragraphs 1 through 68 as though fully set forth

17  herein.

18      94.    Hewitt misrepresented to Plaintiffs and the Class members the amount

19  of their benefits under the Northrop Plan.

20      95.    Hewitt had no reasonable grounds for believing that its statements

21  regarding the amount of Plaintiffs' and the Class members' benefits were true.

22      96.    Hewitt had a duty to Plaintiffs and the Class members to exercise

23  reasonable care in providing them with statements of pension benefits.

24      97.    Hewitt intended that Plaintiffs and the Class members act in reliance on

25  its statements of their pension benefit for purposes of financial planning, including

26  because there is no purpose for a pension benefit statement other than to assess the

27  value of the pension benefits.

28      98.    Plaintiffs and the Class members justifiably relied on Hewitt's pension

1 | statements in planning for their retirement.

2 |       99.    Plaintiffs and the Class members have been injured as a result of their

3 | justifiable reliance on the inaccurate information in planning for retirement, and

4 | have suffered losses as a result.

5 | **SIXTH CLAIM FOR RELIEF**

6 | **Claim for Violation of ERISA § 406(a), 29 U.S.C. § 1106(a), Against All**

7 | **Defendants**

8 |       100-106.    Claim dismissed.

9 | **PRAYER FOR RELIEF**

10 |       WHEREFORE, Plaintiffs and the Class members pray that the court grant the

11 | following relief:

12 |       **As to the First Claim for Relief:**

13 | Claim dismissed.

14 |       **As to the Second Claim for Relief:**

15 | Claim dismissed.

16 |       **As to the Third Claim for Relief:**

17 |       A.    Declare that Defendant Administrative Committee violated ERISA §

18 | 105, 29 U.S.C. § 1025;

19 |       B.    Pursuant to ERISA § 502(a)(3), 29 U.S.C.1132(a)(3), order that

20 | Defendant Administrative Committee is estopped to deny that Plaintiffs are entitled

21 | to benefits under the Plans consistent with the statements provided to Plaintiffs and

22 | the Class members prior to their date of retirement;

23 |       C.    Reform the Northrop Plan to provide the final average pay benefits

24 | promised to Plaintiffs and Class members;

25 |       D.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such

26 | other equitable relief as the Court deems appropriate;

27 |       E.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the

28 | Administrative Committee personally liable to Plaintiffs in the amount of $110 per

1  day from the date of each separate failure to meet the requirements of ERISA §

2  105(a), 29 U.S.C. § 1025(a);

3      F.      Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief

4  as the Court deems proper;

5      G.      Award Plaintiffs and the Class members reasonable attorneys' fees and

6  costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

7      H.      Provide such other relief as the Court deems equitable and just.

8      **As to the Fourth Claim for Relief:**

9      A.      Order that Alight pay Plaintiffs and the Class members damages for the

10  harm they have suffered as a result of Hewitt's professional negligence; and

11      B.      Provide such other relief as the Court deems equitable and just.

12      **As to the Fifth Claim for Relief:**

13      A.      Order that Alight pay Plaintiffs and the Class members damages for the

14  harm they have suffered as a result of Hewitt's negligent misrepresentations; and

15      B.      Provide such other relief as the Court deems equitable and just.

16      **As to the Sixth Claim for Relief:**

17      Claim dismissed.

18                          **<u>DEMAND FOR JURY TRIAL</u>**

19      Plaintiffs and the Class members demand a jury trial as to their claims brought

20  under state law.

21                                      Respectfully submitted,

22  Dated:  August 13, 2021              RENAKER HASSELMAN SCOTT LLP
                                         KANTOR & KANTOR, LLP
23

24                              By:    *s/ Teresa S. Renaker*
                                         Teresa S. Renaker
25                                       Attorneys for Plaintiffs
                                         and the Proposed Class
26

27

28