O

# United States District Court
# Central District of California

| | |
|---|---|
| STEPHEN H. BAFFORD, et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>NORTHROP GRUMMAN<br>CORPORATION, et al.,<br><br>　　　　　　Defendants. | Case № 2:18-cv-10219-ODW (Ex)<br><br>**ORDER GRANTING ADMINISTRATIVE COMMITTEE'S MOTION TO DISMISS [84] AND DEFERRING RULING ON ALIGHT'S MOTION TO DISMISS [85]; CONDITIONAL ORDER TO SHOW CAUSE RE: SUPPLEMENTAL JURISDICTION** |

## I.　INTRODUCTION

In this case, Plaintiffs Stephen H. Bafford, Laura Bafford, and Evelyn L. Wilson bring a putative class action against Defendants Northrop Grumman Corporation; Administrative Committee of the Northrop Grumman Pension Plan; and Alight Solutions LLC for damages arising from miscalculation of Plaintiffs' retirement benefits. The operative Second Amended Complaint, filed August 13, 2021, sets forth a claim against the Administrative Committee for violations of the Employee Retirement Income Security Act ("ERISA") and two state-law claims against Alight. (Second Am. Compl. ("SAC"), ECF No. 83.) The Administrative Committee and Alight each move to dismiss pursuant to Federal Rule of Civil Procedure

("Rule") 12(b)(6).  (Committee Mot., ECF No. 84; Alight Mot., ECF No. 85.)  For the following reasons, the Court **GRANTS** the Administrative Committee's Motion with limited leave to amend, **DEFERS** ruling on Alight's motion, and **ORDERS** Plaintiffs and Alight **TO SHOW CAUSE** regarding supplemental jurisdiction.[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

For purposes of these Rule 12(b)(6) motions, the Court accepts Plaintiffs' well-pleaded allegations as true.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Plaintiffs are retirees and former employees of Northrop.  They began working for Northrop in the late 1980s, during which time they accrued pension benefits under two defined benefit subplans of Northrop's pension plan (the "Northrop Plan").  (SAC ¶¶ 23–25.)  The Administrative Committee is the Plan Administrator and fiduciary of the Northrop Grumman Pension Plan pursuant to ERISA, 29 U.S.C. §§ 1002(16)(a)(i), 1002(21).  (SAC ¶ 9.)  The Administrative Committee is therefore responsible for, among other things, providing pension benefit statements to Northrop Plan participants in accordance with the requirements of ERISA.  (SAC ¶ 10.)  Beginning in 2008, the Administrative Committee delegated this responsibility to Alight's predecessor.[2]  (SAC ¶ 11.)

In the late 1990s, Plaintiffs stopped working for Northrop and began to work for the TRW Corporation.  (SAC ¶¶ 26–28.)  As TRW employees, they accrued pension benefits under TRW's pension plan (the "TRW Plan").  (SAC ¶ 28.)

In December 2002, Northrop acquired TRW and, as a result, Plaintiffs became Northrop employees again.  (SAC ¶ 29.)  Plaintiffs continued to accrue benefits under the TRW Plan as Northrop Employees.  (SAC ¶ 31.)  The TRW Plan and its benefits are not at issue in this lawsuit.

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] For simplicity, throughout this Order the Court refers to both Alight and its predecessor, Hewitt Associates LLC, as "Alight."

Beginning in 2010, Plaintiffs began requesting pension benefit statements for their Northrop Plan benefits through Alight. (SAC ¶ 36.) In the SAC, Bafford sets forth a chart indicating the twelve pension benefit statements he received between March 2010 and June 2016, all of which indicated a monthly 100% joint and survivor annuity benefit of approximately $2,100.00. (SAC ¶ 37.) Wilson requested similar statements from Alight. (SAC ¶¶ 39–40.)

Wilson retired in 2014, and Bafford apparently retired in 2016. (SAC ¶¶ 41, 43–44.) They each began receiving monthly pension benefits in accordance with the estimates and statements Alight had provided them. (SAC ¶¶ 42, 26.) Then, in late 2016 and early 2017, they received from Northrop a recalculation notice informing them of a systemic error that resulted in Northrop substantially overestimating and overpaying Plaintiffs' pension benefits. (SAC ¶¶ 49, 50.) Northrop informed Bafford that his monthly benefit would be reduced from approximately $2,000 to approximately $800. (SAC ¶ 50.) Northrop similarly informed Wilson that her benefits should have been less than half of what they had been up to that point and requested that Wilson repay over $35,000 of the benefit she had already received. (SAC ¶ 53.)

The error occurred as follows. The subplans in which Plaintiffs are participants are defined benefit pension plans, in which "retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); (SAC ¶ 15). A retiree's fixed payment is based on a pension calculation formula set forth in that retiree's subplan. (*See id.*)

Under Plaintiffs' subplans, a final average pay formula is used to calculate the amount of the defined benefit payments, and the two main considerations are: (1) the number of years of service compared to the employee's age; and (2) the average rate of annual salary ("average earnings") during the employee's highest three years of salary out of the last ten years the employee was covered under the Plan. (SAC 16.) The second consideration is the one Alight miscalculated. Plaintiffs accrued benefits under

1   the Northrop Plan during their earlier years with Northrop.  When they later returned to
2   Northrop after its acquisition of TRW, they continued to accrue retirement benefits
3   under TRW's plan, not Northrop's.  Thus, the second variable should have been
4   calculated based on Plaintiffs' average earnings during their early years with Northrop,
5   in the late '80s and early '90s.  Instead, Alight calculated Plaintiffs' benefits based on
6   their average earnings during their later years with Northrop, which were higher than
7   their salaries many years prior.  On the basis of this miscalculation of average earnings,
8   Alight overstated—and Northrop overpaid—Plaintiffs' benefits.  (SAC ¶¶ 32–35.)

   Based on these events, Plaintiffs asserted claims on behalf of themselves and a putative class of employees against Defendants for: (1) violation of ERISA, 29 U.S.C. § 1104(a), against Northrop and the Administrative Committee; (2) violation of ERISA, 29 U.S.C. § 1104(a), against Alight; (3) violation of ERISA, 29 U.S.C. § 1025; (4) professional negligence, against Alight; (5) negligent misrepresentation, against Alight; and (6) violation of ERISA, 29 U.S.C. § 1106(a), against all Defendants.  (First Am. Compl. ("FAC"), ECF No. 32.)  In April 2019, the Administrative Committee and Alight each moved to dismiss the FAC, and the Court granted Defendants' motions, dismissing the fourth and fifth claims with prejudice and without leave to amend, and dismissing all other claims with leave to amend.  (Order Dismissing FAC, ECF No. 68.) Instead of amending, Plaintiffs filed a Notice of Intent Not to Amend, (ECF No. 69), and the Court entered Judgment in favor of Defendants, (J., ECF No. 73.)

   Plaintiffs appealed, and on April 15, 2021, the Ninth Circuit issued its Opinion, affirming in part and vacating in part the Court's dismissal.  *Bafford v. Northrop Grumman Corp.* ("*Bafford I*"), 994 F.3d 1020 (9th Cir. 2021).  The Ninth Circuit affirmed the Court's dismissal of the ERISA claims (the first, second, third, and sixth) and confirmed that this Court was correct to provide leave to amend the third claim.  *Id.* at 1030.  The Ninth Circuit proceeded to find that, contrary to this Court's prior determination, Plaintiffs' negligence and negligent misrepresentation claims were not

preempted by ERISA. It accordingly vacated the dismissal of the negligence and negligent misrepresentation claims and remanded for further proceedings. *Id.* at 1032.

Following the Ninth Circuit's mandate, Plaintiffs filed the operative Second Amended Complaint. Plaintiffs omit the first, second, and sixth claims from their Second Amended Complaint, maintaining the third claim against the Administrative Committee and the fourth and fifth claims against Alight. The Administrative Committee and Alight each move to dismiss pursuant to Rule 12(b)(6). (Committee Mot.; Committee Opp'n, ECF No. 87; Committee Reply, ECF No. 90; Alight Mot.; Alight Opp'n, ECF No. 88; Alight Reply, ECF No. 91.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim—to survive a dismissal motion. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations

that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## IV. DISCUSSION

The Court first addresses the Administrative Committee's motion and the sole cause of action asserted against it.

### A. Administrative Committee's Motion: ERISA Requirement to Furnish Pension Benefit Statements, 29 U.S.C. § 1025(a)(1)(B)

Plaintiffs' claim against the Administrative Committee is for failure to furnish pension benefit statements as required by 29 U.S.C. § 1025(a)(1)(B). The Administrative Committee moves to dismiss the remaining ERISA claim on the grounds that (1) part of the claim is beyond the scope of the Ninth Circuit's remand, (2) the entire claim is insufficiently pleaded, and (3) the entire claim is time-barred.

Plaintiffs previously asserted this claim in their FAC. In that pleading, the key allegation was that "[t]he Administrative Committee violated Section 105(a) by failing to provide Plaintiffs and the Class members with accurate statements of their Northrop Plan benefits and/or by failing to monitor the performance of its delegate that provided pension statements to Plaintiffs and the Class members." (FAC ¶ 85.) In moving to dismiss this claim as pleaded in the FAC, the Administrative Committee argued that

(1) Plaintiffs did not submit a written request for a statement, and alternatively, (2) Plaintiffs alleged only that the Administrative Committee provided inaccurate statements, not that the Administrative Committee failed to provide one at all. (Committee Mot. Dismiss FAC 18–19, ECF No. 42.)  The Court proceeded to dismiss the claim on the sole ground that Plaintiffs had alleged only that they used an online platform to request pension benefit statements, which did not qualify as a written request.  (Order Dismissing FAC 11.)  The Court did not reach the Administrative Committee's second argument.

On appeal of this decision, the Ninth Circuit found that this Court was correct to dismiss the claim on the ground that Plaintiffs did not submit a written request, because Plaintiffs had not provided sufficient detail in the FAC about the nature of their written request.  *Bafford I*, 994 F.3d at 1030.  In making this finding, however, the Court of Appeal noted that an online request could theoretically qualify as a written request under 29 U.S.C. § 1025(a)(1)(B)(ii), and it directed this Court to provide Plaintiffs with an opportunity to amend accordingly.

Plaintiffs amended, and the key allegation setting forth the Administrative Committee's wrongdoing is now as follows:

> [T]he Administrative Committee violated Section 105(a) by failing to provide Plaintiffs and Class members with either triennial statements or annual notices of how to obtain a statement, and by failing to provide accurate statements in response to written requests by Plaintiffs and Class members.

(SAC ¶ 85A.)  Based on this allegation, the Court observes that Plaintiffs are now alleging <u>three</u> distinct theories of the Administrative Committee's violation of ERISA § 105:

(1) The Administrative Committee failed to provide an automatic triennial statement or an automatic annual notice of how to obtain a statement, as required by 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A);

(2) The Administrative Committee failed to provide any benefit statement at all in response to Plaintiffs' written requests, as required by § 1025(a)(1)(B)(ii); and

(3) Separate and apart from whether the Administrative Committee produced timely statements automatically or by request, when it did send Plaintiffs statements, the statements contained inaccurate benefit figures.

These are not merely three different ways of committing the same wrong; they are three different wrongs, with three different sets of factual predicates and resulting injuries. The Court proceeds by analyzing each theory individually.

For the reasons that follow, Plaintiffs have not stated and cannot state a claim for ERISA violations under the third theory. By contrast, given Plaintiffs' allegations in the SAC and in light of the Ninth Circuit's mandate, Plaintiffs may be able to state a claim for ERISA violations under one of the first two theories. The Court will therefore dismiss the entire claim and provide leave for Plaintiffs to plead two distinct causes of action that focus narrowly on the Administrative Committee's alleged failures to provide any benefit statements at all. The Court begins with theory number three.

### 1. Failure to provide accurate benefit amounts

Under Plaintiffs' third theory, the Administrative Committee violated ERISA § 105 when it, through Alight, provided Plaintiffs with pension benefit statements that contained highly inaccurate benefit estimates. Defendants again argue that ERISA §§105(a) and 502(c) do not provide for a statutory penalty for an inaccurate statement. (Committee Mot. 12.) The key issue, therefore, is whether the ERISA statute that obligates plan administrators to provide pension benefit statements, ERISA § 105, 29 U.S.C. § 1025, also obligates plan administrators to ensure that the information on the statements is accurate. If it does, then Plaintiffs may be entitled to relief pursuant to ERISA's civil remedy provision, 29 U.S.C. § 1132(a), in the form of an injunction or "other appropriate equitable relief," *id.* § 1132(a)(3); (SAC ¶ 82), or in the form of

civil penalties of up to $100[3] per day from the date of the violation, 29 U.S.C. § 1132(a)(1)(A), (c)(1); (SAC ¶¶ 83–84). If it does not, then no violation of ERISA § 105 has occurred, and no relief is available.

The Court begins by looking to the plain language of the statute. *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011). Where the meaning of the plain language of a statute is clear, "the sole function of the court is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). The statute at issue, ERISA § 105, 29 U.S.C. § 1025, is a lengthy statute that obligates plan administrators to provide numerous items of information on a pension benefit statement and dictates the circumstances under which such statements must be provided. Nowhere in ERISA § 105—either in the provisions relevant to this lawsuit, or to any other of its subdivisions—is there any plain language suggesting that an inaccuracy in a statement constitutes an ERISA violation. Absent any such suggestion, it is highly unlikely that ERISA's provision of an injunction or equitable relief for a "violat[ion of] any provision of this subchapter" offers relief for inaccuracies in pension benefit statements. 29 U.S.C. § 1132(a)(3)(A). *Cf. Chambers v. European Am. Bank and Tr. Co.*, 601 F. Supp. 630, 638–39 (E.D.N.Y. 1985) (collecting cases examining ERISA § 105 / § 502(c) penalties based on "delay in [a participant's] receipt of the information").

For these same reasons, it is unlikely that the provision of ERISA imposing civil penalties, 29 U.S.C. § 1132(c)(1), on employers who violate ERISA's pension benefit statement requirements, 29 U.S.C. § 1025, provides for civil penalties here. The ERISA civil penalty provision itself lends further support to this conclusion. Under this provision, penalties accrue based on the number of days that have elapsed since the "fail[ure] or refus[al] to comply with" a properly made request for information. 29 U.S.C. § 1132(c)(1). By causing the penalty to grow in proportion to the amount of

---

[3] This statutory penalty has been increased to $110 per day for violations occurring after July 29, 1997. *See* 29 C.F.R. § 2575.502c–1.

time that has passed since the participant made the request, Congress incentivized plan administrators to minimize delay in responding to participant requests for information. *See In re Interstate Bakeries Corp.*, 704 F.3d 528, 534 (8th Cir 2013). Moreover, because the harm a plan participant incurs when the participant does not receive any statement at all is roughly proportional to the amount of time that the participant has gone without a statement, it is logical that the penalty grows as this amount of time increases. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 848 (2d Cir. 2013) (directing courts imposing penalties for violating ERISA § 105 to consider, among other things, "the length of the delay" and "the number of requests made"); *Moon v. Rush*, 69 F. Supp. 3d 1035, 1046–47 (E.D. Cal. 2014) (quoting and applying these factors).

By contrast, if a pension benefit statement contains an inaccurate benefit estimate, the amount a participant is harmed by that inaccuracy, if any, is in no way tied to the number of days that have passed since the participant received the inaccurate estimate. If Congress had intended for ERISA § 105 to provide for penalties for inaccurate benefit estimates in benefit statements, one would have expected to see, in the provisions of ERISA that establish civil penalties for § 105 violations, a penalty scheme that is related in some cognizable way to the harm incurred. Here, ostensibly, the greater the difference between the inaccurate estimate and the correct benefit amount, the more Plaintiffs were harmed. But ERISA's civil penalty provision is devoid of any sort of penalty or other remedy that refers to the difference between the inaccurate benefit estimate and the correct amount.

Moreover, courts have held that the limitations period on ERISA § 105 / § 502(c) penalty claims begins to run thirty-one days after the participant makes their written request for documentation. *Hemphill v. Estate of Ryskamp*, 619 F. Supp. 2d 954, 975; *Stone*, 5 F.3d at 439. This rule underscores that the right § 105 provides plan participants is one of timely provision of information, not accurate provision of information. The parties present no authority, and the Court could locate none,

suggesting that the limitations period on § 105 claims begins to run from the date that the plan administrator provides an inaccurate benefit statement (or from any date otherwise related to the plan administrator's miscalculations).

Courts that have confronted whether inaccuracies constitute ERISA § 105 violations have tended to assume or sidestep the question and dismiss the claim based on the failure of a different element. For example, in *Hawkes v. Wells Fargo & Co.*, No. 17-cv-00632-JSW, 2018 WL 11182067 (N.D. Cal. May 23, 2018), the plaintiff, a defined benefit pension plan participant, alleged that her plan administrator provided her with inaccurate statements of her pension benefit on multiple occasions over several years. *Id.* at *1. The plaintiff asserted a claim under ERISA § 105, *id.* at *3, and the plan administrator argued that a mere error in benefits calculations would not give rise to relief under ERISA § 105. *Id.* at *5. Rather than decide whether the plan administrator's legal argument was correct, the court reasoned that, even if it was, the facts alleged were "not sufficient to show that the Plan Administrators actively and deliberately misled Plaintiff and that the facts alleged do not amount to the type of 'egregious misconduct' that would entitle Plaintiff" to individual substantive relief. *Id.* The court accordingly dismissed the claim to the extent it was based on errors in benefits calculations. *Id.* Similar reasoning applies here: no one disputes that the miscalculation of Plaintiffs' benefits was an administrative error, and Plaintiffs' SAC lacks allegations that any Defendant actively or deliberately misled Plaintiffs.

The Eighth Circuit in *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2006) took an approach similar to that in *Hawkes*. The trial court in *Christensen* had found that the plan administrator did not violate ERISA § 105 because the participant's request was not writing as required, and alternatively that, because of the plan administrator's lack of bad faith, no penalty was warranted even if there was a "technical violation" of § 105. *Id.* at 919.

The Eighth Circuit affirmed dismissal on both these bases. *Id.* As to the second basis, the Court of Appeal adopted the trial court's treatment of the issue, reasoning

that, even if the plan administrator "technically violated" ERISA § 105 by providing incorrect benefit estimates, the district court was within its discretion to refuse to impose any penalty. *Id.* The Court of Appeal observed that the statements were explicitly non-binding estimates and that the error that led to the miscalculation was apparent on the face of the statement, such that the participant could have detected the error had he reviewed the estimates more carefully. *Id.* In concluding the employer had not breached its duty of loyalty, the Eighth Circuit referred to the inaccuracies only as "technical violations" without explicitly deciding whether such violations in and of themselves legally entitled a participant to penalties or other relief under ERISA. *Id.* at 917–18 ("A mistake in the administration of a pension plan is not a violation of the duty of loyalty absent evidence that plan administrators acted in the interests of someone other than participants and beneficiaries."). Similar reasoning applies here: Plaintiffs have not set forth allegations showing anything beyond a good-faith mistake in calculation of benefits and have accordingly failed to allege facts showing a violation of the duty of loyalty.

Here, the parties cited no precedent, and the Court could find none, that directly answers the question whether providing a participant with an inaccurate pension benefit statement constitutes an ERISA § 105 violation. Based on all the foregoing observations, the Court concludes that the provision of an inaccurate figure on a pension benefit statement does not, in and of itself, constitute a violation of ERISA § 105.

Accordingly, Plaintiffs' ERISA claim is dismissed to the extent it is based on inaccuracies int their pension benefit statements. Moreover, even if benefit statement inaccuracies constitute "technical" violations of ERISA, the Court would nevertheless find, like the district court in *Hawkes*, that Plaintiffs failed to set forth any allegation suggesting the Administrative Committee's errors were active, deliberate, or in bad faith. The Court would also find, taking its cue from the Eighth Circuit in *Christensen*, that Plaintiffs failed to adequately plead that the Administrative Committee breached its duty of loyalty.

For all these reasons, Plaintiffs have not stated and cannot state a claim for relief for violation of ERISA § 105 based on inaccurate figures in their statements. Accordingly, to the extent Plaintiffs' ERISA claim is based on inaccuracies in pension benefit statements, the claim is **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**.

        *2.*     *Failure to provide statements automatically or when requested*

Plaintiffs' two remaining theories of ERISA § 105 violations are the Administrative Committee's (1) failure to provide an automatic triennial benefit statement or an automatic annual notice of how to obtain a benefit statement, as required by 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A); and (2) failure to provide any benefit statement at all in response to Plaintiffs' written requests, as required by § 1025(a)(1)(B)(ii). In light of the Ninth Circuit's mandate and Plaintiffs' new allegations, (*see, e.g.,* SAC ¶¶ 40A-40G), it is plausible that Plaintiffs have stated or could state a claim for these two particular violations. The problem with the SAC, however, is that Plaintiffs' failure-to-provide-statements allegations are so intertwined with Plaintiffs' inaccurate-figures-on-statements allegations that it is impossible for the Court to determine if Plaintiffs have stated a claim for the former while disregarding allegations of the latter.

Accordingly, the Court will proceed by **DISMISSING** the ERISA claim in its entirety **WITH LEAVE TO AMEND** as follows. Plaintiffs are granted narrow leave to assert two new, separate claims: one for failure to provide an automatic triennial statement or an automatic annual notice of how to obtain a statement, as required by 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A); and a second for failure to provide any benefit statement at all in response to Plaintiffs' written requests, as required by § 1025(a)(1)(B)(ii). If Plaintiffs choose to so amend, they must plead a complete set of case-specific facts to illustrate the alleged ERISA violations and must not rely on conclusory assertions that "merely track[] the language of the statute itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v.*

*Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018). Moreover, in order to avoid ambiguities which might support further dismissal, Plaintiffs are strongly encouraged to include all facts supporting each of these claims under the heading for that claim.

### B. Alight's Motion: State-Law Claims

Remaining at issue is Alight's Motion and the two claims asserted against Alight: professional negligence and negligent misrepresentation. Both claims are California state law claims.

Should Plaintiffs choose not to amend their ERISA claim pursuant to the narrow leave provided above, or should Plaintiffs' ERISA claim otherwise ultimately be dismissed with prejudice, the Court would be left with only supplemental jurisdiction over the state-law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

Moreover, even if Plaintiffs do ultimately plead one or more viable ERISA claims for failure to provide statements automatically or as requested, the Court would maintain doubts about whether exercise of supplemental jurisdiction over Plaintiff's state-law claims would be appropriate. Supplemental jurisdiction is proper where the relationship between the federal and state claims is such that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For example, in a case where retired pilots sued their airline under ERISA for pension benefits and added a state law claim for breach of contract regarding flight privileges, the district court was within its discretion to decline supplemental

jurisdiction over the breach of contract claim. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996). Here, similarly, the ERISA claims Plaintiffs have leave to plead are quite attenuated from their claims against Alight, such that supplemental jurisdiction may not be appropriate even if Plaintiffs' ERISA claims are ultimately viable.

Based on these considerations, the Court **DEFERS** ruling on Alight's motion and orders the parties to show cause as provided below.

## V. CONCLUSION

For the reasons discussed above, the Administrative Committee's Motion to Dismiss is **GRANTED**. (ECF No. 84.) Plaintiffs' ERISA claim is **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** to the extent Plaintiffs seek relief for inaccuracies in their pension benefit statements. The ERISA claim is otherwise **DISMISSED WITH LEAVE TO AMEND** to assert (1) a claim for failure to provide an automatic triennial statement or an automatic annual notice of how to obtain a statement, as required by 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A); and/or (2) a claim for failure to provide any benefit statement at all in response to Plaintiffs' written requests, as required by § 1025(a)(1)(B)(ii).

Plaintiffs' Third Amended Complaint, if any, is due no later than **twenty-one (21) days** from the date of this Order. If Plaintiffs do not file a Third Amended Complaint, then as of the lapse of their deadline to amend, the ERISA claim will be deemed dismissed in its entirety with prejudice.

The Court **DEFERS** ruling on Alight's Motion to Dismiss. (ECF No. 84.) If Plaintiffs choose not to further amend, then the Court will, upon expiration of the deadline to amend, decline supplemental jurisdiction over the remaining claims. *Wade*, 87 F.3d at 1101. If, on the other hand, Plaintiffs choose to amend their Complaint, then the Court requires additional briefing on supplemental jurisdiction. The parties are therefore **CONDITIONALLY ORDERED TO SHOW CAUSE**. <u>If</u> Plaintiffs timely amend their Complaint, <u>then</u> Plaintiffs are ordered to file a brief, no later than **three (3)**

**days** from the date they file their Third Amended Complaint, explaining why the Court should not dismiss the state-law claims due to lack of subject-matter jurisdiction ("OSC Response"). Alight may then file an opposition no later than **seven (7) days** from the date Plaintiffs file their OSC Response. Briefs shall be no more than ten (10) pages. The parties should understand this Order to be an inquiry into both the facial and the factual sufficiency of the parties' showing of subject matter jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014).

Failure to comply may result in dismissal of Plaintiffs' claims against Alight. To be clear, this Conditional Order to Show Cause will be deemed discharged if Plaintiffs do not timely amend.

**IT IS SO ORDERED.**

February 1, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**