1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

# United States District Court
# Central District of California

STEPHEN H. BAFFORD, et al.,

                 Plaintiffs,

   v.

NORTHROP GRUMMAN
CORPORATION, et al.,

               Defendants.

Case № 2:18-cv-10219-ODW (Ex)

**ORDER DECLINING
SUPPLEMENTAL JURISDICTION
AND DISMISSING WITHOUT
PREJUDICE CLAIMS AGAINST
ALIGHT; ORDER DENYING AS
MOOT ALIGHT'S MOTION TO
DISMISS [85]**

## I.    INTRODUCTION

Plaintiffs Stephen H. Bafford, Laura Bafford, and Evelyn L. Wilson bring a putative class action against Defendants Northrop Grumman Corporation; Administrative Committee of the Northrop Grumman Pension Plan; and Alight Solutions LLC for damages arising from miscalculation of Plaintiffs' retirement benefits.  The operative Third Amended Complaint, filed February 22, 2022, sets forth a claim against the Administrative Committee for violations of the Employee Retirement Income Security Act ("ERISA") and state-law claims for negligence and negligent misrepresentation against Alight.   (Third Am. Compl. ("TAC"), ECF No. 101.)

The Court ordered the parties to show cause regarding supplemental jurisdiction, and then regarding diversity jurisdiction, over the claims against Alight.  (Order, ECF No. 100; Order to Show Further Cause, ECF No. 109.)   The Court has reviewed Plaintiffs' and Alight's responses to these two Orders.  (Suppl. Jurisdiction Mem., ECF No. 102; Notice Non-Opp'n, ECF No. 103; Diversity Resp., ECF No. 110.)

As discussed below, the Court lacks subject matter jurisdiction over the claims against Alight and accordingly dismisses those claims without prejudice.  As a result, Alight's currently pending Motion to Dismiss, (ECF No. 85), is moot.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court recited the facts of this case in detail in its February 1, 2022 Order dismissing the claims against the Administrative Committee.  The Court incorporates those facts herein by reference.  (Order 2–4.)  In brief, Plaintiffs are participants in retirement plans sponsored by Northrop Grumman, their employer.  An error on the part of Alight, a servicer the Administrative Committee hired to assist with plan administration, caused the estimates in Plaintiffs' pension benefit statements in the years leading up to their retirement to be significantly overstated.  Both Mr. Bafford and Ms. Wilson in fact received improperly inflated payments for several months of their retirement before the Administrative Committee discovered the error and contacted them about it.

On December 7, 2018, Plaintiffs sued Defendants in federal court.  Plaintiffs asserted the Court has federal question jurisdiction over the ERISA claims and supplemental jurisdiction over the remaining claims, or, in the alternative, diversity jurisdiction over the entire matter.  (Compl. ¶ 1, ECF No. 1.)

In the Second Amended Complaint, Bafford had alleged that both the Administrative Committee and Alight were liable for the estimation error under various theories.  (*See* Second Am. Compl., ECF No. 83.)  The Administrative Committee

moved to dismiss.[1]  (Admin. Comm. Mot., ECF No. 84.)  The takeaway from the Court's Order granting the Administrative Committee's motion was that, to whatever extent the Administrative Committee was responsible for the above-described error, the Administrative Committee nevertheless could not be held liable for damages arising from the errors in the benefit estimates and payments.  The Court's disposition was as follows:

> Plaintiffs' ERISA claim is **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** to the extent Plaintiffs seek relief for inaccuracies in their pension benefit statements. The ERISA claim is otherwise **DISMISSED WITH LEAVE TO AMEND** to assert (1) a claim for failure to provide an automatic triennial statement or an automatic annual notice of how to obtain a statement, as required by 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A); and/or (2) a claim for failure to provide any benefit statement at all in response to Plaintiffs' written requests, as required by § 1025(a)(1)(B)(ii).

(Order 15.)  Plaintiffs availed themselves of the first prong of this leave to amend, and in the now-operative Third Amended Complaint, they assert a single claim against the Administrative Committee under 29 U.S.C. §§ 1025(a)(1)(B)(i) and 1025(a)(3)(A). (*See* TAC ¶ 115 ("The Administrative Committee did not furnish Mr. Bafford with a pension benefit statement every three years or an annual notice of the availability of a pension benefit statement and how to obtain one.").

In the TAC, Plaintiffs maintain their two claims for negligence and negligent misrepresentation against Alight alone.  The gravamen of these claims is that Alight either committed negligence or made a negligent misrepresentation in miscalculating Plaintiffs' pension benefits in estimates before retirement and payments during retirement.  (*See* TAC ¶ 91 (alleging, for negligence, that Alight "breached its professional duties by providing grossly inaccurate information to Plaintiffs and Class

---

[1] Alight also moved to dismiss the Second Amended Complaint.  (Alight Mot., ECF No. 85.)  The Court deferred ruling on Alight's motion, which would have required substantive determinations regarding Plaintiffs' state-law claims, instead opening the inquiry into jurisdiction that the Court completes herein.

1    members regarding the amount of their benefits under the Northrop Plan on numerous

2    occasions over at least a six-year period"); *id.* ¶ 97 (alleging, for negligent

3    misrepresentation, that Alight "intended that Plaintiffs and the Class members act in

4    reliance on its statements of their pension benefit for purposes of financial planning,

5    including because there is no purpose for a pension benefit statement other than to

6    assess the value of the pension benefits").)

7         No single claim is asserted against both Defendants.

8                          **III.   LEGAL STANDARD**

9         Federal courts have subject matter jurisdiction only as authorized by the

10   Constitution and Congress.   U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v.*

11   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Federal district courts have

12   original jurisdiction where an action arises under federal law, or where each plaintiff's

13   citizenship is diverse from each defendant's citizenship (the "complete diversity"

14   requirement) and the amount in controversy exceeds $75,000.   28 U.S.C. §§ 1331,

15   1332(a).

16        A complaint filed in federal court must contain only "a plausible allegation that

17   the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*

18   *Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *cf. Bey v. Geiser*, No. EDCV

19   19-844 JGB (SHKx), 2019 WL 4422678, at *2 (C.D. Cal. July 24, 2019) (same, as to

20   complete diversity of citizenship).   But where a party contests, or the court questions,

21   another party's allegations concerning the diversity requirements, both sides submit

22   proof, and the court decides whether the party claiming jurisdiction has proven complete

23   diversity or the amount in controversy by a preponderance of the evidence. *Dart*

24   *Cherokee Basin*, 574 U.S. at 88–89; *see* Fed. R. Civ. P. 12(h)(3) ("If the court

25   determines at any time that it lacks subject-matter jurisdiction, the court must dismiss

26   the action.").

27        Here, the Court informed the parties in its Order and Order to Show Further

28   Cause that this was "an inquiry into both the facial and the factual sufficiency of the

parties' showing of subject matter jurisdiction." (Order 16 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014); Order to Show Further Cause 2 (same).) In considering facial sufficiency, courts apply the standard under Federal Rule of Civil Procedure 12(b)(1) or (b)(6), accepting the truth of the plaintiff's allegations and drawing all reasonable inferences in the plaintiff's favor to determine whether the allegations are sufficient as a legal matter to invoke federal jurisdiction. *See Leite*, 749 F.3d at 1121.

In contrast, a factual attack "contests the truth of the plaintiff's factual allegations." *Id.* When the factual sufficiency of jurisdiction is questioned, "the plaintiff must support [his or her] jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." *Id.* at 1121 (internal quotation marks and citation omitted). If there are disputed factual issues going to subject matter jurisdiction, "the district court may resolve those factual disputes itself," unless "the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1121–22 & n.3.

## A.    Diversity Jurisdiction

The Supreme Court has consistently interpreted the diversity jurisdiction statute as "requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005); *Holden v. Fluent, Inc.*, No. 20-cv-03816-JCS, 2020 WL 6822914, at *1 n.3 (N.D. Cal. Nov. 20, 2020).

The relevant citizenship rules are as follows. "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." *3123 SMB LLC v. Horn*, 880 F.3d 461, 462–63 (9th Cir. 2018) (quoting 28 U.S.C. § 1332(c)(1)). A limited liability company ("LLC"), by contrast, "is a citizen of every state of which its owners/members are

citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

A partnership is a citizen of each state of which its partners are citizens. *Id.* When a limited partnership is at issue, courts generally consider the citizenship of both general partners and limited partners. *Nam Soon Jeon v. Island Colony Partners*, 892 F. Supp. 2d 1234, 1239 (D. Haw. 2012) (looking to both general and limited partners to determining the citizenship of a limited partnership); *cf. EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 6:15-CV-146-REW-EBA, 2018 WL 6790486, at *4 (E.D. Ky. Dec. 26, 2018) (looking to both equity and non-equity partners to determine the citizenship of a law firm organized as an LLP).

The citizenship rules for unincorporated entities are "iterative" in that where a member of an unincorporated entity is itself an unincorporated entity, "the citizenship of [that entity's] members (or partners, as the case may be) must then be considered." *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 126–27 (1st Cir. 2011). The Court must "trac[e] through however many layers there may be" to ensure it accounts for the citizenship of every partner or member. *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 830 (7th Cir. 2020).

**B.     Federal Question Jurisdiction; Supplemental Jurisdiction**

Typically, a claim brought under federal law gives rise to federal question jurisdiction. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action.").

Federal law "grants supplemental jurisdiction over state law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1167 (N.D. Cal. 2005) (quoting 28 U.S.C. § 1367(a)). However, even if supplemental jurisdiction exists under this rule, district courts nevertheless possess discretion to decline to exercise supplemental

jurisdiction over a claim if, among other things, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

In exercising this discretion, courts are to consider the values of "judicial economy, convenience, fairness, and comity." *Bennett v. City of Kingman*, 543 F. Supp. 3d 794, 812 (D. Ariz. 2021) (quoting *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (O'Scannlian, J., dissenting)), *appeal filed*, No. 21-16105 (9th Cir. June 30, 2021). "Supplemental jurisdiction[] is 'a doctrine of discretion, not of plaintiff's right[.] . . . [D]ecisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Kurk v. Los Rios Classified Emps. Ass'n*, 540 F. Supp. 3d 973, 983 (E.D. Cal. 2021) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)), *appeal filed*, No. 21-16257 (9th Cir. Aug. 2, 2021).

## IV. DISCUSSION

Plaintiffs' demonstration of complete diversity of citizenship is insufficient, and thus, the Court lacks diversity jurisdiction with respect to the claims against Alight. Moreover, the claims against Alight, on one hand, and the claim against the Administrative Committee, on the other hand, do not arise from a common nucleus of operative facts, so the Court accordingly declines supplemental jurisdiction and dismisses the claims against Alight without prejudice. As a result, Alight's currently pending Motion to Dismiss is moot.

**A.      Diversity Jurisdiction; Complete Diversity of Citizenship**

The first issue is whether diversity provides a basis for jurisdiction over the two claims against Alight for negligence and negligent misrepresentation. Here, Plaintiffs fail to demonstrate complete diversity of citizenship.

*1.      Citizenship of Plaintiffs*

Plaintiffs Stephen and Laura Bafford are citizens of the United States who have lived in Ogden, Utah continuously since 1998 and who consider Utah their permanent

1    home.  (Decl. Teresa S. Renaker ("Renaker Decl.") Ex. E ("Bafford Decl.") ¶¶ 2–4,

2    ECF No. 110-6.)  Plaintiff Evelyn Wilson is a citizen of the United States who has lived

3    in Rancho Palos Verdes, California continuously since 1998 and who considers

4    California her permanent home.  (Renaker Decl. Ex. F ("Wilson Decl.") ¶¶ 2–4, ECF

5    No. 110-7.)  Both declarations also confirm that Plaintiffs are United States citizens.

6    The declarations are sufficient to demonstrate by a preponderance of the evidence that,

7    for the purpose of this jurisdictional inquiry, Plaintiffs are citizens of Utah and

8    California.

9              *2.       Citizenship of Administrative Committee;* Romero *exception*

10          Under an exception to the complete-diversity rule, when a plaintiff asserts a

11   federal question claim against a non-diverse defendant, the presence of that defendant

12   does not defeat jurisdiction over state-law claims against otherwise diverse defendants.

13   *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959) (holding it was error

14   to dismiss claims against diverse respondents where federal law provided independent

15   basis of jurisdiction over non-diverse respondent), *superseded in part by statute on*

16   *other grounds as stated in Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990).  "The

17   *Romero* exception to the . . . complete diversity rule allows a court to ignore a particular

18   party for diversity purposes because that party is properly before the court on a separate

19   ground of original federal jurisdiction."   *Palmer v. Hosp. Auth. of Randolph Cnty.*,

20   22 F.3d 1559, 1565 (11th Cir. 1994) (citing *Romero*, 358 U.S. at 381).  "The reasoning

21   behind this exception is that plaintiffs should not be required to bring two suits in federal

22   court solely in order to avoid destroying complete diversity."  *K.M.B. Warehouse*

23   *Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995); *see Kauth v.*

24   *Hartford Ins. Co.*, 852 F.2d 951, 959 (7th Cir. 1988) ("If independent bases of federal

25   jurisdiction support separate claims, a plaintiff should not be required to bring those

26   claims in separate complaints.").

27          Applying the *Romero* exception here, a separate basis for federal jurisdiction—

28   federal question jurisdiction under ERISA—supports Plaintiffs' claims against the

1  Administrative Committee.   Thus, the Court disregards the citizenship of the

2  Administrative Committee in determining whether complete diversity exists.

3      *3.      Citizenship of Alight*

4      The remaining issue is whether Plaintiffs, who are citizens of California and

5  Utah, are completely diverse from Alight.  The evidence of Alight's citizenship is found

6  in the Declaration of Kirsten Scott and attached exhibits.  (Decl. Kirsten Scott ("Scott

7  Decl."), ECF No. 102-1.)  The Court notes at the outset that Scott is the attorney for

8  Plaintiffs and thus does not have or profess to have personal knowledge of the

9  citizenship of Alight.  This means that the exhibits themselves must demonstrate by a

10  preponderance of the evidence that Alight is a citizen of a state or states that include

11  neither California nor Utah.

12      The exhibits fail in this regard. First, Exhibits C and D contradict one another as

13  to whether Alight has one member (Tempo Acquisition, LLC), as suggested by the

14  California Secretary of State filing, or three members (Tempo Acquisition, LLC plus

15  two individuals), as suggested by the Illinois Secretary of State filing.  If the latter, the

16  Illinois filing fails to demonstrate the state of citizenship of the two individual members

17  by a preponderance of the evidence.  The Illinois filing simply lists one address for all

18  three members, including the LLC.  That may or may not be the address where the two

19  individuals live; moreover, citizenship concerns more than simply where a person lives.

20  *Walters v. U.S. Bank, N.A.*, 203 F. Supp. 3d 1055, 1057 (C.D. Cal. 2016) ("[B]eing a

21  citizen in this context is more than just being a resident. To show state citizenship for

22  diversity purposes a party must be domiciled in the state. A person's domicile is her

23  permanent home, where she resides with the intention to remain . . . ."   (citations,

24  internal quotation marks, and ellipses removed).)

25      Even if the former (i.e., even if Alight has only one member), questions persist.

26  Alight's purported sole member, Tempo Acquisition, LLC, has one manager, Master

27  Graphics, LLC.  (Scott Decl. Ex. E ("Tempo Acquisition Illinois Filing"), ECF No. 102-

28  6.)  Master Graphics, LLC, in turn, has three managers: two individuals and MG limited

1    partnership. (Scott Decl. Ex. F ("Master Graphics Illinois Filing"), ECF No. 102-7.)
2    Attorney Scott declares that she found no information about the MG Limited
3    Partnership in the Illinois Secretary of State database, (Scott Decl. ¶ 8), and the
4    evidentiary showing ends there.

5       But the Master Graphics Illinois Filing does not demonstrate anyone's
6    citizenship—either that of the two individuals or the limited partnership. This filing
7    simply lists one address for all three members, including the limited partnership. That
8    may or may not be the address where the two individuals live; moreover, citizenship
9    concerns more than simply where a person lives. *Walters*, 203 F. Supp. 3d at 1057.
10    The Court is accordingly left with no evidence of the citizenship of the two individuals.

11       Moreover, counsel's declaration regarding MG Limited Partnership does not
12    adequately address the citizenship of the limited partnership. All partnerships,
13    including limited partnerships, have at least two partners, and the Court must consider
14    the citizenship of each in assessing complete diversity. *See Second Measure, Inc. v.*
15    *Kim*, 143 F. Supp. 3d 961, 971 (N.D. Cal. 2015) ("California law defines a partnership
16    as 'the association of two or more persons . . . .'"). Here, the Court has no evidence
17    about the citizenship of the two or more members of MG Limited Partnership.

18       This leaves the citizenship of at least four, possibly six, and possibly more of
19    Alight's constituent members, managers, entities, partners, and other persons unproven
20    and in substantial doubt. Plaintiffs fail to demonstrate by a preponderance of the
21    evidence that none of these constituent parts, which are of unknown form and number,
22    are citizens of California or Utah. Notably, in neither of Plaintiffs' responses to the
23    Court's Order and Order to Show Further Cause, respectively, did Plaintiffs request
24    additional time to conduct jurisdictional discovery. The Court is therefore secure in its
25    finding that complete diversity is not demonstrated and diversity accordingly fails as a
26    basis for subject matter jurisdiction.

27       "[W]here the district court has doubts about whether diversity exists, the district
28    court may insist that the jurisdictional facts be established or the case be dismissed, and

1  for that purpose the court may demand that the party alleging jurisdiction justify [its]

2  allegations by a preponderance of evidence." *Harris v. Rand*, 682 F.3d 846, 851 (9th

3  Cir. 2012) (internal quotation marks omitted).  Here, after this Court's insistence,

4  Plaintiffs fail in their burden of demonstrating complete diversity of citizenship.

5  Accordingly, the Court finds that it lacks diversity jurisdiction over this action.

6  **B.      Supplemental Jurisdiction**

7       The remaining issue is whether the Court should exercise jurisdiction over the

8  claims against Alight as supplemental to the claim against the Administrative

9  Committee.  The Court finds that it does not possess supplemental jurisdiction over the

10 claims against Alight.   In the alternative, if the Court does possess supplemental

11 jurisdiction, it exercises its discretion to decline such jurisdiction under subdivision (2)

12 of 28 U.S.C. § 1367(c).

13       *1.      Existence of Supplemental Jurisdiction*

14       The existence of supplemental jurisdiction in the first instance turns on the

15 question whether the claims over which the court has original jurisdiction, on one hand,

16 and the supplemental claims, on the other hand, form part of the same case or

17 controversy—that is, whether they "derive[] from a common nucleus of operative fact."

18 *Koumarian v. Chase Bank USA, N.A.*, No. C-08-4033 MMC, 2008 WL 5120053, at *3

19 (N.D. Cal. Dec. 3, 2008) (citing *Gibbs*, 383 U.S. at  725).   The common-nucleus

20 standard is broader than the "same case or controversy" standard governing compulsory

21 counterclaims, *Campos*, 404 F. Supp. 2d at 1167–68, and district courts have articulated

22 the standard in various ways, *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F.

23 Supp. 3d 772, 775 (E.D. Cal. 2020).  Some courts consider (1) whether "the facts are

24 related in time, space, origin or motivation"; (2) whether "the facts form a convenient

25 trial unit"; and (3) whether "treating the facts as a unit would conform to the parties'

26 expectations." *St. Paul Mercury Ins. Co. v. Del Webb Cal. Corp.*, No. 16-cv-0209-PSG

27 (SPx), 2017 WL 7661491, at *3 (C.D. Cal. Nov. 7, 2017) (citing *Apparel Art Int'l, Inc.*

28 *v. Amertex Enters. Ltd.*, 48 F.3d 576, 584 (1st Cir. 1995)). Other courts consider more

generally "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Landy v. Pettigrew Crewing, Inc.*, No. 2:19-cv-07474-RGK (AFMx), 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (*quoting Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996)). For these courts, "[e]ven a 'loose factual connection between the claims is generally sufficient.'" *U.S. Chess Fed'n, Inc. v. Polgar*, No. C 08-05126 MHP, 2009 WL 981257, at *3 (N.D. Cal. Apr. 13, 2009) (quoting *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995)).

Here, the Court finds that the ERISA claim against the Administrative Committee as currently pleaded, on one hand, and the state-law claims against Alight, on the other hand, do not derive from a common nucleus of *operative* facts, and that, to the extent there are common facts between the two sets of claims, those facts are ancillary.

The first and most obvious observation in this regard is that the two sets of claims are different claims against different defendants.  This observation alone militates against supplemental jurisdiction, because the separateness of the defendants and the separateness of the sets of claims decreases the degree of commonality of operative facts.  Here, Plaintiffs' ERISA claim against the Administrative Committee now focuses on a narrow factual determination: whether the Administrative Committee provided Plaintiffs with an automatic triennial pension benefit statement or an automatic annual notice of how to obtain one.  This is a statutory duty ERISA places on the Administrative Committee, and it can discharge this duty in any number of ways.  It could have chosen to engage Alight to discharge this duty, *or* it could have engaged a different entity to discharge this duty, *or* it could have discharged this duty itself, using its own employees and resources.

Given these observations, the prove-up of the ERISA claim will involve testimony from Plaintiffs about whether they received statements and testimony from the Administrative Committee about their policies and practices for sending plan participants statements.  This may involve some inquiry into whether Alight sent statements on the Committee's behalf, but if it does, that inquiry will be limited to

1   *whether* and *when* Alight sent statements and reminders; it will have nothing at all to
2   do with the numbers and figures on those statements or reminders, nor will it have
3   anything to do with Alight's direct statutory duty under ERISA, as Alight itself is not a
4   plan administrator.

5   The negligence and negligent misrepresentation claims, by contrast, are based on
6   a completely different set of operative facts: (1) the terms of the operative plans; (2)
7   how and to what extent the Committee delegated to Alight the duty to inform plan
8   participants of their pension benefits; (3) the nature of Alight's error in miscalculating
9   Plaintiffs' benefits; (4) the mathematical extent of that error; (5) Plaintiffs' reliance on
10  that error, and whether that reliance was reasonable; and (6) the extent of damages
11  Plaintiffs suffered as a result of relying on the error.  Not one of these operative facts is
12  common to the claim against the Administrative Committee.  The prove-up of the
13  claims against Alight, unlike that of the claim against the Committee, will involve
14  testimony from Alight employees about the nature and extent of the calculation error
15  and testimony from Plaintiffs on how they acted in reliance (and nothing to do with the
16  frequency with which they received statutory statements).  To the extent testimony from
17  the Administrative Committee will be required, if it is required at all, that testimony
18  will be ancillary to the key issues.

19  Based on these observations, the Court concludes that the ERISA claim, on one
20  hand, and the state-law claims, on the other hand, do not arise from a common nucleus
21  of operative fact.  Accordingly, the Court is not permitted to exercise supplemental
22  jurisdiction over the state-law claims.  28 U.S.C. § 1367(a).

23  *2.    Discretion to Decline Supplemental Jurisdiction*

24  In the alternative, even if 28 U.S.C. § 1367(a) grants the Court discretion to
25  exercise supplemental jurisdiction, the Court nevertheless declines to do so pursuant to
26  28 U.S.C. § 1367(c)(2), because the state-law claims would substantially predominate
27  over the ERISA claim.  The ERISA claim is to be tried by bench on the narrow issue
28  whether the Administrative Committee provided notice in the statutorily required

1    manner.  The state law claims, by contrast, involve a much broader swath of issues,

2    including the nature and extent of the calculation error.  Resolution of the state law

3    claims may also require individualized showings from each plan participant regarding

4    causation and the different retirement decisions each participant would have made had

5    the benefit estimates been accurate.  These claims will all be tried by jury and stand to

6    substantially predominate over the narrower ERISA bench trial.

7        The Court also notes that, although the negligence claims have been pending

8    before this Court since 2018, and although the Ninth Circuit has already examined the

9    claims against Alight, ultimately, this Court is in no better position to adjudicate these

10   claims today than a state court would be were Plaintiffs to file them in state court

11   tomorrow.  This Court has not made significant merits-based determinations regarding

12   the elements of the claims against Alight or Alight's defenses thereto.  The Ninth Circuit

13   opinion did no more than reverse this Court's finding that ERISA pre-empted the state

14   law claims, and if anything, the Ninth Circuit's reasoning only supports the conclusions

15   herein, because the Ninth Circuit's finding of no preemption was based on its

16   conclusion that the claims against Alight do not have a "reference to or connection with"

17   an ERISA plan.  *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1032 (9th Cir.

18   2021).

19       For these reasons, assuming the Court possesses supplemental jurisdiction over

20   the claims against Alight in the first instance, it nevertheless declines to exercise

21   supplemental jurisdiction.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

14

## V.   CONCLUSION

For the foregoing reasons, the Court finds no basis for exercising subject matter jurisdiction over the claims asserted against Alight.   The Court accordingly **DISMISSES** the claims against Alight **WITHOUT PREJUDICE**.  Alight's Motion to Dismiss is correspondingly **DENIED AS MOOT**.  (ECF No. 85.)  Defendant Alight is **DISMISSED** from this case.

**IT IS SO ORDERED.**

April 4, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**