Teresa S. Renaker – CA State Bar No. 187800
teresa@renakerscott.com
Kirsten G. Scott – CA State Bar No. 253464
kirsten@renakerscott.com
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94104
Telephone:  (415) 653-1733
Facsimile:   (415) 727-5079

Elizabeth Hopkins – CA State Bar No. 324431
ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
smeter@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
Telephone:  (818) 886-2525
Facsimile:   (818) 350-6272

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN H. BAFFORD and EVELYN L. WILSON on their own behalves and on behalf of a class of similarly situated participants and beneficiaries, and LAURA BAFFORD,<br><br>Plaintiffs,<br><br>vs.<br><br>ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN,<br><br>Defendant. | Case No.:  2:18-cv-10219 ODW (Ex)<br><br>**FOURTH AMENDED COMPLAINT FOR VIOLATIONS OF ERISA**<br><br>**CLASS ACTION** |

## JURISDICTION

1.    This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f).

## VENUE

2.    Venue lies in the Central District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Northrop Grumman Pension Plan ("Northrop Plan") is administered in this District and Defendant Administrative Committee of the Northrop Grumman Pension Plan ("Administrative Committee") may be found in this District.

## INTRADISTRICT ASSIGNMENT

3.    Pursuant to General Order 16-05, Section I.B.1.a.(1)(c), this case should be assigned to the Western Division.

## NATURE OF THE CASE

4.    Plaintiffs Stephen H. Bafford and Evelyn L. Wilson bring this suit on behalf of themselves and on behalf all similarly situated participants in and beneficiaries of the Northrop Plan under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000 *et. seq.* ("ERISA"), for equitable relief to enforce rights under and remedy violations of ERISA, and to recover statutory penalties for Defendant's failure to comply with ERISA's disclosure requirements.

## PLAINTIFFS, DEFENDANT AND RELEVANT NON-PARTIES

5.    Plaintiff Stephen H. Bafford is, and has been at all relevant times, a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan. Mr. Bafford is a resident of Ogden, Utah.

6.    Plaintiff Evelyn L. Wilson is, and has been at all relevant times, a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Northrop Plan. Ms. Wilson is a resident of Rancho Palos Verdes, California.

7.    Plaintiff Laura Bafford is, and has been at all relevant times, a

1

FOURTH AMENDED COMPLAINT

1   beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(7), of the Northrop Plan.

2   Ms. Bafford is a resident of Ogden, Utah.

3       8.      Northrop Grumman Corporation ("Northrop") is a Delaware

4   corporation with its principal place of business in Falls Church, Virginia. Northrop

5   is a fiduciary of the Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C.

6   § 1002(21), in that it exercises authority or control respecting management or

7   disposition of the Northrop Plan's assets, it exercises discretionary authority or

8   discretionary control respecting management of the Northrop Plan, and/or it has

9   discretionary authority or discretionary responsibility in the administration of the

10  Northrop Plan. Among other authority, Northrop has the authority to appoint the

11  Northrop Plan's Plan Administrator and exercises discretion in selecting and

12  monitoring the Plan Administrator and/or other fiduciaries. The sector headquarters

13  for Northrop Grumman Aerospace Systems is located in Redondo Beach, Los

14  Angeles County, California.

15      9.      Defendant Administrative Committee is the Plan Administrator of the

16  Northrop Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C.

17  § 1002(16)(a)(i). The Administrative Committee is a named fiduciary of the

18  Northrop Plan by reason of being the Plan Administrator, and is a fiduciary of the

19  Northrop Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that

20  it exercises authority or control respecting management or disposition of the

21  Northrop Plan's assets, it exercises discretionary authority or discretionary control

22  respecting management of the Northrop Plan, and/or it has discretionary authority

23  or discretionary responsibility in the administration of the Northrop Plan. The

24  Administrative Committee's address is in El Segundo, Los Angeles County,

25  California.

26      10.     As the Plan Administrator, the Administrative Committee is the entity

27  responsible for providing pension benefit statements to the Northrop Plan

28  participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a), among other

2

FOURTH AMENDED COMPLAINT

responsibilities. The Northrop Plan designates the Administrative Committee as a named fiduciary, with responsibility for the general administration of the Northrop Plan. The Northrop Plan specifies that the Administrative Committee's responsibilities include the responsibility to comply with ERISA's reporting and disclosure requirements, to prepare and distribute communications to employees as a part of Northrop Plan operations, to construe and interpret the terms of the Northrop Plan, and to determine the amount of benefits and authorize payments from the Trust funding the Northrop Plan.

11.    Alight is an Illinois limited liability company with its principal place of business in Illinois. Beginning in 2008, Alight's predecessor, Hewitt, provided record-keeping and third-party administration services to the Northrop Plan. Alight maintains an office in Irvine, Orange County, California. Upon information and belief, pursuant to the Administrative Committee's delegation of authority, Hewitt operated the Northrop Grumman Benefits Center and a website at http://benefits.northropgrumman.com, and issued pension benefit statements and other communications on Northrop letterhead.

12.    Alight holds itself out as providing "a total retirement approach to help drive better solutions and outcomes," based on "40+ years of knowledge, expertise, and innovation managing retirement plans for large organizations, helping people save, plan and retire confidently." Alight publicly asserts that its defined benefit plan administration will enable employees "to retire confidently with industry-leading expertise, technology and support," with "a customer experience designed to help [employees] fully understand their options" and "tools and rigorous processes that assure quality in all aspects of the services we deliver," making "essential plan information easy to access and navigate."

13.    Upon information and belief, Northrop and/or the Administrative Committee contracted with Hewitt to carry out certain of the Administrative Committee's responsibilities for Northrop Plan administration, including its pension

3

FOURTH AMENDED COMPLAINT

1  benefit statement responsibilities under ERISA § 105(a) and its responsibility for

2  processing pension applications.

3      14.    Hewitt's services included providing an online platform that allowed

4  participants to request statements of their accrued pension benefits based on

5  potential future employment termination dates and benefit commencement dates, in

6  purported satisfaction of the Administrative Committee's obligations under ERISA

7  § 105(a).

8                                **FACTS**

9                          **Pertinent Plan Terms**

10     15.    The Northrop Plan is an employee pension benefit plan as defined by

11 ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by Defendant Northrop. The

12 Northrop Plan consists in part of sub-plans including the Northrop Grumman

13 Retirement Plan and the Grumman Pension Plan. The Northrop Plan is a defined

14 benefit pension plan, meaning that each participating employee is entitled to a fixed

15 periodic payment during retirement based on a pension calculation formula set forth

16 in the applicable sub-plan, and each surviving spouse of a participating employee is

17 entitled to a fixed periodic payment during his or her lifetime unless he or she has

18 validly waived the survivor benefit.

19     16.    Prior to July 1, 2003, each Northrop Plan sub-plan used a final average

20 pay formula to calculate benefits. Under the final average pay formula, a

21 participant's pension was calculated based on factors including his years of benefit

22 service and his average rate of annual salary during his highest three years of salary

23 out of the last ten years that he was a covered employee under the plan.

24     17.    Effective July 1, 2003, the Northrop Plan switched to a less-generous

25 "cash balance" formula. However, because ERISA prohibits reductions of accrued

26 benefits, Northrop Plan participants who accrued benefits before the cash balance

27 conversion continued to be entitled to have those benefits calculated under the

28 more-generous final average pay formula.

18.    Thus, after July 1, 2003, participants who accrued benefits prior to July 1, 2003, continued to be entitled to have those benefits calculated using the final average pay formula. Plaintiffs' Northrop Plan benefits are calculated based on the pre-July 1, 2003 benefit formula. Through a complex formula pieced together from multiple plan documents, definitions, and appendices, the final average pay formula recognized Plaintiffs' years of service after returning to Northrop for vesting and early retirement credit, but did not recognize their earnings after returning to Northrop in determining their final average earnings. Plaintiffs had no way to ascertain and apply this multi-step formula without assistance from Defendants.

19.    Under the Northrop Plan's terms, a participant is entitled to a normal retirement benefit commencing at age 65. A participant who has attained at least age 55 with at least 10 years of service is entitled to a reduced early retirement benefit, and a participant whose age plus his years of early retirement service equals at least 85 is entitled to an unreduced early retirement benefit – that is, to receive his full age 65 pension before age 65.

20.    As used in ERISA, "accrued benefit" means the participant's benefit expressed as an annual benefit beginning at normal retirement age, or the actuarial equivalent of that amount. ERISA §§ 3(23)(A), 204(c)(3), 29 U.S.C. §§ 1002(23)(A), 1054(c)(3). The Plan defines "accrued benefit" consistent with these rules.

21.    ERISA defines "normal retirement benefit" as the greater of a participant's benefit at normal retirement age or his or her early retirement benefit.

22.    Because the Northrop Plan's final average pay formulae calculate benefits based in part on a participant's years of service at employment termination and age at benefit commencement, a participant's pension benefit will vary depending upon his or her employment termination date and benefit commencement date. Thus, Hewitt's online platform allowed Northrop Plan participants to request that Hewitt determine the effect of different combinations of

1  dates on their pension benefit amounts, and the statements generated and mailed by
2  Hewitt to participants provided that information.

3  **Plaintiffs' Employment and Pension Service**

4  23.    Mr. Bafford began his employment with Northrop in April 1987, at age
5  26, as a Procurement Expeditor. He worked for Northrop in Pico Rivera, California,
6  and Palmdale, California.

7  24.    Ms. Wilson began her employment with Northrop in September 1986
8  as a software engineer.

9  25.    As Northrop employees, Mr. Bafford and Ms. Wilson accrued pension
10  benefits under the Northrop Grumman Retirement Plan, which is one of the sub-
11  plans of the Northrop Plan. Ms. Wilson also accrued benefits under the Grumman
12  Pension Plan, another Northrop Plan sub-plan.

13  26.    In September 1997, Ms. Wilson was laid off by Northrop and went to
14  work for TRW Corporation ("TRW") in California as a software engineer.

15  27.    In February 1998, Mr. Bafford terminated employment with Northrop
16  and went to work for TRW in Ogden, Utah, as a Subcontract Manager.

17  28.    As TRW employees, Mr. Bafford and Ms. Wilson accrued pension
18  benefits under the TRW Pension Plan ("TRW Plan").

19  29.    In December 2002, Northrop acquired TRW, and Mr. Bafford and Ms.
20  Wilson became Northrop employees again.

21      29A.    During the transition back to Northrop employment, Mr.
22      Bafford and Ms. Wilson attended meetings at which Northrop representatives
23      informed them that they would not initially be able to obtain pension
24      statements online, as they had been able to do at TRW, but assured them that
25      this issue would be corrected so that they could obtain pension statements
26      online.

27  30.    Upon information and belief, more than 20,000 TRW employees
28  became Northrop employees as a result of the December 2002 acquisition.

6

FOURTH AMENDED COMPLAINT

31.    Northrop renamed the TRW Plan the Northrop Grumman Space and Mission Systems Salaried Employees Pension Plan. Mr. Bafford and Ms. Wilson continued to accrue benefits under the renamed TRW Plan as Northrop employees.

### Pension Benefit Statements

32.    Plaintiffs and the members of the proposed Class were the victims of a systemic calculation error affecting Northrop Plan participants who, while working for Northrop, accrued benefits under pension plans formerly sponsored by acquired companies. According to Pension Recalculation Notices issued to Mr. Bafford and Ms. Wilson, the error involved calculating these participants' pensions based on their final average earnings following their return to Northrop employment, rather than on their final average earnings from their first periods of Northrop employment.

33.    The systemic error resulted in participants' benefits being overstated.

34.    The systemic error persisted from at least 2010 until late 2016.

35.    The systemic error infected pension benefit statements provided to participants, pension election paperwork provided to participants, and pension checks provided to participants.

36.    For example, beginning in 2010, Mr. Bafford began requesting pension benefit statements as he approached age 50 to assist him and Ms. Bafford in planning for retirement. Mr. Bafford used the online platform to request statements, which were then mailed to him.

37.    Hewitt's statements consistently informed Mr. Bafford that if he worked until at least age 55 and elected to receive his benefit in the form of a 100 percent joint and survivor annuity, his Northrop Plan benefit would be over $2,000 per month during his lifetime and the same amount for Ms. Bafford's lifetime if he predeceased her. Specifically, Hewitt provided the following statements:

/ /

FOURTH AMENDED COMPLAINT

| Statement Date | Employment Termination Date | Benefit Commencement Date | 100% JSA Benefit Amount |
|---|---|---|---|
| Mar. 2010 | Oct. 2015 | Nov. 2015 | $2,033.93 |
| Nov. 2011 | Sept. 2015 | Oct. 2015 | $2,011.90 |
| Feb. 2013 | Sept. 2015 | Oct. 2015 | $2,007.27 |
| Feb. 2013 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Mar. 2014 | Jan. 2017 | Feb. 2017 | $2,110.64 |
| Oct. 2014 | Sept. 2015 | Oct. 2015 | $2,077.27 |
| Oct. 2014 | Sept. 2015 | Apr. 2016 | $2,098.02 |
| Oct. 2014 | Mar. 2016 | Apr. 2016 | $2,098.02 |
| Aug. 2015 | Sept. 2016 | Oct. 2016 | $2,114.41 |
| Aug. 2015 | Dec. 2016 | Jan. 2017 | $2,111.58 |
| Aug. 2015 | Apr. 2017 | May 2017 | $2,107.58 |
| June 2016 | Sept. 2016 | Oct. 2016 | $2,114.41 |

38.     Each of the statements provided to Mr. Bafford showed that it was based on his earnings from his second period of Northrop employment.

39.     Likewise, Ms. Wilson made numerous requests for benefit statements. For instance, in February 2011, pursuant to Ms. Wilson's request, Hewitt sent Ms. Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on May 31, 2011, and commenced her pension on June 1, 2011. The statement used Ms. Wilson's earnings from her most recent three years of employment: 2009, 2010, and 2011.

40.     Similarly, in November 2013, pursuant to Ms. Wilson's request,

Hewitt sent Ms. Wilson a pension benefit statement that set forth the amount of her retirement benefits under the Northrop Plan if she terminated employment on January 31, 2014, and commenced her pension on February 1, 2014. Again, the statement used Ms. Wilson's average earnings from her last three years of employment: 2012, 2013, and 2014. The statements showed if Ms. Wilson retired on February 1, 2014, and elected to receive her benefit in the form of a 50 percent joint-and-survivor annuity, her Northrop Plan benefit would be $1,630.11 during her lifetime and $815.06 for her spouse's lifetime if she predeceased him.

40A.   Specifically, each time either Plaintiff sought to obtain a new pension benefit statement, he or she made a written request by first logging on to the Northrop benefits website by typing in his or her name and Social Security number or employee identification number. The website had areas for different benefits, including health, 401(k), and pension. Plaintiffs navigated to the pension area of the website by clicking on menu options.

40B.   At that point, each time, the website responded to Plaintiffs' written requests with a message that it could not provide them with a pension benefit statement, and directed them to call a telephone number to request a statement.

40C.   Each Plaintiff then called the telephone number as instructed, provided his or her name and Social Security number or employee identification number, and provided the employment termination date or dates and benefit commencement retirement date or dates for which he or she wished to see a statement. They then received statements for the requested dates by mail.

40D.   Each Plaintiff made a written request for a statement from the website multiple times during the years before they retired, because they had been told by Northrop management that online statements would become available. Also, each Plaintiff was aware that other employees could obtain

9

pension benefit statements by making written requests online.

40E.   However, although the website allowed Plaintiffs to view statements that had previously been sent to them by mail, it always instructed them to continue their written requests for new pension benefit statements by telephone.

40F.   The summary plan description issued for the Northrop Plan in January 2014 directed participants to consult the website for pension benefit information, instructing as follows:

> **Keeping Track of Your Benefit.**
> You can track the amount of your accrued benefit and project your estimated benefit at retirement online at *My Benefits Access*, available at *Benefits OnLine* at http://benefits.northropgrumman.com. . . . Tracking the amount of your cash balance benefit is a key part of planning for a financially secure retirement. It can help you make informed decisions about how much to save on your own and how to diversify your 40(k) savings or other investments.

40G.   By telling Northrop Plan participants in the summary plan description that obtaining their "estimated" benefit amount online would help them make informed retirement planning decisions, the Benefits Committee assured them that the "estimate" would be sufficiently accurate to enable effective planning. This assurance by the Benefits Committee was false, because the benefit amounts that the Benefits Committee provided to Plaintiffs and the proposed Class members via Hewitt's website were grossly overstated. As a result, the information undermined Plaintiffs' retirement planning rather than facilitating it as the summary plan description promised.

40H.   Plaintiffs did not receive any pension benefit statements other than those they requested in writing as described above. They did not receive an unsolicited statement every three years while they were actively employed.

40H(1).   The Administrative Committee has not produced in

10
FOURTH AMENDED COMPLAINT

discovery any automatic triennial pension benefit statements provided to Plaintiffs.

40H(2).  Therefore, the Administrative Committee failed to provide automatic triennial statements to Plaintiffs as required by 29 U.S.C. § 1025(a)(1)(B) and (3)(A).

40I.    Plaintiffs were never told by the online system, the telephone representatives, or any other Northrop or Hewitt source that they should make their requests for pension benefit statements by mailing paper requests. Instead, they were instructed to make the requests by telephone.

40J.    Upon information and belief, Plaintiffs never received any annual notice of the availability of pension benefit statements or the ways in which they could obtain such statements.

40J(1).  Plaintiffs have no record and no recollection of receiving any such notice.

40J(2).  Discovery confirms that the Administrative Committee has no record of providing Plaintiffs with such notices.

40J(3).  Specifically, on October 22, 2021, the Administrative Committee served initial disclosures in this action, listing "Annual Notices regarding the availability of pension benefit statements" among the categories of documents that the Administrative Committee has in its possession, custody, or control and may use to support its claims and defenses. The Administrative Committee did not specify in what years it claimed such notices were sent, or whether they were sent to Plaintiffs.

40J(4).  Specifically, on November 8, 2021, Plaintiffs served requests for production of documents on the Administrative Committee, including a request for all documents described by category in the Administrative Committee's initial disclosures.

11

FOURTH AMENDED COMPLAINT

40J(5).  In response, on December 8, 2021, the Administrative Committee produced 600 pages of documents, none of which was a notice regarding the availability of pension benefit statements.

40J(6).  On December 22, 2021, Plaintiff's counsel wrote to counsel for the Administrative Committee, seeking to meet and confer regarding the Administrative Committee's discovery responses and requesting that the Administrative Committee immediately produce any "Annual notices regarding the availability of pension benefit statements." The Administrative Committee still did not produce any such notices.

40J(7).  Following this Court's Order dated February 1, 2022, on February 2, 2022, Plaintiff's counsel emailed counsel for the Administrative Committee, reviewing the above facts and stating, "This course of events supports Plaintiffs' allegation that they never received such notices, and we expect to so plead in the third amended complaint. If the Administrative Committee has 'Annual Notices' directed to Plaintiffs, it should produce them now."

40J(8).  In response, the Administrative Committee refused to produce any documents.

40J(9).  Since November 2021, the Administrative Committee has not supplemented its discovery responses as required by Fed. R. Civ. P. 26(e).

40J(10).  Therefore, the Administrative Committee failed to provide annual notices of how to obtain pension benefit statements as required by 29 U.S.C. § 1025(a)(1)(B)(i) and (3)(A).

40K.  Upon information and belief, Northrop Plan participants with the same Northrop-TRW-Northrop employment pattern as Plaintiffs, but who were assigned to a "heritage Northrop sector" after Northrop's acquisition of

TRW, were able to obtain pension benefit statements from the website by typing in their anticipated employment termination and benefit commencement dates, rather than being directed to submit this information by telephone as Plaintiffs were. However, the statements that these Class members received were inaccurate in exactly the same way as the statements that Plaintiffs received: they calculated the participants' final average pay benefits using their earnings from their second period of Northrop employment rather than their first period of Northrop employment.

### Plaintiffs' Retirements

41.    Ms. Wilson retired on February 1, 2014, and, consistent with the statements, she began receiving benefits in the amount of $1,630.11 per month under the Northrop Grumman Retirement Plan and $117.36 per month under the Grumman Pension Plan, both based on her average earnings during her final three years of service at Northrop.

42.    From February 1, 2014, through March 1, 2017, the Northrop Plan made payments to Ms. Wilson of $1,630.11 per month for her Northrop Grumman Retirement Plan benefit and $117.36 per month for her Grumman Pension Plan benefit.

43.    In July 2016, Mr. Bafford requested and received materials necessary to commence his pension as of October 1, 2016. The materials included a statement again showing the 100 percent joint-and-survivor benefit amount of $2,114.41 per month.

44.    After Mr. Bafford submitted his pension paperwork, Hewitt issued him a "Retirement Plan Pension Election Confirmation Statement" on Northrop letterhead, showing that he had elected the 100 percent joint-and-survivor annuity benefit of $2,114.41 per month. Mr. Bafford signed and returned the accompanying "Pension Election Authorization Form," certifying that he had elected the 100

percent joint-and-survivor annuity form of benefit. The form states that Mr. Bafford "[c]ertifies that I understand this payment option pays **$2,114.41** per month," and "[c]ertifies that I understand my beneficiary is LAURA A. BAFFORD and will receive upon my death $2,114.41 per month."

45. On August 11, 2016, Hewitt confirmed on Northrop letterhead that it had received and would process Mr. Bafford's Pension Election Authorization Form and that his first payment would be made on October 1, 2016.

46. From October 1, 2016, through January 1, 2017, the Northrop Plan made monthly benefit payments to Mr. Bafford of $2,114.41 each.

**Discovery of the Systemic Error; Benefit Recalculations**

47. Upon information and belief, in 2016 Northrop and/or the Administrative Committee replaced Hewitt as recordkeeper and third-party administrator of the Northrop Plan.

48. Upon information and belief, plan fiduciaries performed an audit in 2016 as part of the hand-off to Fidelity, the new third-party administrator, and discovered the systemic overstatement of benefits.

49. In December 2016, more than three months after his retirement, Mr. Bafford received a "Pension Plan Recalculation Notice" on Northrop letterhead, stating that Northrop had recalculated his benefit "based on updated information."

50. In January 2017, Mr. Bafford received another "Pension Plan Recalculation Notice" on Northrop letterhead, explaining that his monthly Northrop Plan benefit would be permanently reduced from $2,114.41 to $807.89 – a reduction of more than 60 percent.

50A. Thus, Mr. Bafford's monthly joint-and-survivor annuity benefit was reduced by $1,306.52 beginning October 1, 2016, and this reduction in monthly benefits will continue for the rest of his life and Ms. Bafford's life, should he predecease her.

50B. In the 65 months between the start of the reduction and the filing

of this third amended complaint, Mr. Bafford's pension has been reduced by a total of $84,923.80. The present value of the future reduction is well into the hundreds of thousands of dollars.

51.    The second recalculation notice admitted that there was no "updated information" that formed the basis of the recalculation. Instead, the notice explained that that Mr. Bafford's pension amount had been based on "incorrect pay." Specifically, the benefit had been based on Mr. Bafford's final average salary from his second period of Northrop employment, but should have been based on final average salary from his first period of Northrop employment.

52.    Thus, Mr. Bafford's pension was recalculated based on information that had been in Northrop's possession for nearly 20 years, including throughout the period when Hewitt issued at least a dozen statements showing that Mr. Bafford had earned a pension in excess of $2,000 per month.

53.    In February 2017, three years after her retirement, Ms. Wilson received a Pension Plan Recalculation Notice on Northrop letterhead. Although Ms. Wilson was told for numerous years that her benefits would be based on her earnings from her final three years of service at Northrop, and the Northrop Plan actually paid those benefits for three years, the Pension Plan Recalculation Notice states that there was a mistake in the benefit calculation. The notice states that Ms. Wilson's pension benefits would be recalculated using her 1995-1997 salary, the final average salary from her first period of Northrop employment. The recalculation decreased her retirement benefits dramatically to less than half the retirement benefits she had been promised and was receiving for three years.

53A.    Specifically, Ms. Wilson's single life annuity benefit under the Northrop Grumman Retirement Plan was reduced from $1,630.11 per month to $768.59 per month, and her benefit under the Grumman Pension Plan was reduced from $117.36 per month to $55.34 per month, for a total reduction of $823.93 per month beginning February 1, 2014, and this reduction in benefits

FOURTH AMENDED COMPLAINT

1    will continue for the rest of Ms. Wilson's life.

2         53B.   In the 97 months between the start of the reduction and the filing

3    of this third amended complaint, Ms. Wilson's pension has been reduced by a

4    total of $79,921.21. The present value of the future reduction is well into the

5    hundreds of thousands of dollars.

6         54.   Thus, as with Mr. Bafford, Defendants recalculated Ms. Wilson's

7    Northrop Grumman Retirement Plan and Grumman Pension Plan benefits based on

8    information that had been in Northrop's possession for 20 years, including the

9    entire time Hewitt issued statements showing she had earned pension benefits in

10   excess of $1,600 and the entire three years that the Northrop Plan actually paid her

11   that amount.

12        55.   Northrop insisted that Ms. Wilson repay the alleged "overpayment" of

13   over $35,000, even though any mistake in the calculation was through no fault of

14   Ms. Wilson, and stated that if Ms. Wilson did not repay the alleged overpayment in

15   a lump sum, her already diminished pension would be reduced further until the

16   Northrop Plan had collected the alleged overpayment.

17                          **Plaintiffs' Reliance**

18        56.   In issuing and/or directing the issuance of pension benefit statements,

19   pension election paperwork, and pension payments, the Administrative Committee

20   intended to, and did, induce reliance on the part of Northrop Plan participants,

21   including Plaintiffs. The sole purpose for requesting or obtaining a pension benefit

22   statement is to learn the amount of a participant's pension benefit upon retirement.

23        57.   Due to the complexity of the Northrop Plan terms and the required

24   calculations, and the multiple plan documents involved, Northrop Plan participants

25   had no way to verify the benefit amounts provided in pension benefit statements,

26   pension election paperwork, and pension payments.

27        58.   Specifically, in deciding when to retire, and in making other financial

28   decisions to plan for retirement, Plaintiffs relied on the promises of a monthly

FOURTH AMENDED COMPLAINT

pension benefit in excess of $2,000 for Mr. Bafford and in excess of $1,700 for Ms. Wilson.

## CLASS ALLEGATIONS

59.    Mr. Bafford and Ms. Wilson bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (2).

60.    The Class is defined as all Northrop Plan participants and beneficiaries whose final average pay benefits were miscalculated due to participants accruing benefits, while working at Northrop, under a plan previously sponsored by an acquired company, and whose final average pay benefits were recalculated after June 1, 2016.

61.    Plaintiffs reserve the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

62.    The proposed class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

63.    Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. The Northrop Plan's publicly available Form 5500 (Annual Return/Report of Employee Benefit Plan), for the Plan year ending December 31, 2015, states that there were more than 111,000 Northrop Plan participants during that year. Plaintiffs are informed and believe that hundreds of former Northrop employees were hired by TRW, many of whom subsequently returned to Northrop employment when Northrop acquired TRW. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that the substantial number of Northrop Plan participants and beneficiaries who have been similarly affected precludes joinder of all affected participants and beneficiaries. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the members of the class are readily determinable from the Defendants' records.

FOURTH AMENDED COMPLAINT

64.    There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

65.    The claims of the named class representatives are typical of the claims of the proposed Class. Plaintiffs and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of applicable Federal law. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

66.    The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the Mr. Bafford and Ms. Wilson and the other members of the proposed Class.

67.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, *inter alia*, whether the Administrative Committee should be estopped to deny that Plaintiffs and class members are entitled to the miscalculated benefits, and whether other equitable relief is available for Defendant's ERISA violations.

68.    This action is maintainable as a class action under Rule 23(b)(2) because the Administrative Committee has acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate monetary, injunctive and other equitable relief in favor of the Class. In particular, the miscalculation of pension benefits for Northrop Plan participants who accrued benefits under plans

FOURTH AMENDED COMPLAINT

1  formerly sponsored by acquired companies, such as TRW, was systemic in nature,

2  affecting all similarly situated Northrop Plan participants in the same way.

3  <div align="center">**FIRST CLAIM FOR RELIEF**</div>

4  <div align="center">**Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),**</div>

5  <div align="center">**Against Defendants Northrop and the Administrative Committee**</div>

6  69-73.    Claim dismissed.

7  <div align="center">**SECOND CLAIM FOR RELIEF**</div>

8  <div align="center">**Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),**</div>

9  <div align="center">**Against Defendant Alight**</div>

10  74-79.    Claim dismissed.

11  <div align="center">**THIRD CLAIM FOR RELIEF**</div>

12  <div align="center">**Claim for Violation of ERISA § 105(a)(1)(B)(ii), 29 U.S.C. § 1025(a)(1)(B)(ii),**</div>

13  <div align="center">**Against Defendant Administrative Committee**</div>

14  80.    Plaintiffs incorporate Paragraphs 1 through 68 as though fully set forth

15  herein.

16  81.    ERISA § 105(a)(1)(B)(ii), 29 U.S.C. § 1025(a)(1)(B)(ii), requires that

17  a plan administrator furnish pension benefit statements to a defined benefit plan

18  participant or beneficiary of the plan upon written request.

19  81A.  Pursuant to 29 U.S.C. § 1025(a)(2), a pension benefit statement under

20  Section 105(a) must indicate the participant's total benefits accrued.

21  81B.  As used in ERISA, "accrued benefit" means the participant's benefit

22  expressed as an annual benefit beginning at normal retirement age, or the

23  actuarial equivalent of that amount. ERISA §§ (23)(A), 204(c)(3), 29 U.S.C.

24  §§ 1002(23)(A), 1054(c)(3).

25  81C.  The Plan defines "accrued benefit" consistent with these rules.

26  82.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan

27  participant or beneficiary to file suit to obtain injunctive and other appropriate

28  equitable relief from a violation of ERISA.

<div align="center">FOURTH AMENDED COMPLAINT</div>

83.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant or beneficiary to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

84.    ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

85.    The Administrative Committee violated Section 105(a)(1)(B)(ii) by failing to provide Plaintiffs and the Class members with accurate statements of their Northrop Plan benefits in response to written requests by and on behalf of Plaintiffs and Class members and/or by failing to monitor the performance of its delegate that provided inaccurate pension statements to Plaintiffs and the Class members.

86.    Plaintiffs and the Class members have been harmed by the Administrative Committee's breaches in that they received and relied on inaccurate information about their retirement income in planning for retirement.

## FOURTH CLAIM FOR RELIEF
### *In the Alternative to the Second Claim for Relief*
### Claim for Professional Negligence Against Defendant Alight

87-92.    Claim dismissed - Court declined to exert supplemental jurisdiction.

## FIFTH CLAIM FOR RELIEF
### *In the Alternative to the Second Claim for Relief*
### Claim for Negligent Misrepresentation Against Defendant Alight

93-99.    Claim dismissed - Court declined to exert supplemental

FOURTH AMENDED COMPLAINT

1    jurisdiction.

2    ### SIXTH CLAIM FOR RELIEF

3    ### Claim for Violation of ERISA § 406(a), 29 U.S.C. § 1106(a),

4    ### Against All Defendants

5    100-106.    Claim dismissed.

6    ### SEVENTH CLAIM FOR RELIEF

7    ### Claim for Violation of ERISA § 105, 29 U.S.C. § 1025,

8    ### Against Defendant Administrative Committee

9    107.    Plaintiffs incorporate Paragraphs 1 through 68 as though fully set forth

10    herein.

11    108.    ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan

12    administrator furnish pension benefit statements to defined benefit plan participants.

13    Specifically, under ERISA § 105(a)(1)(B)(i), 29 U.S.C. § 1025(a)(1)(B)(i), a plan

14    administrator must furnish a pension benefit statement at least once every three

15    years to each participant with a nonforfeitable accrued benefit and who is employed

16    by the employer maintaining the plan at the time the statement is to be furnished.

17    109.    As an alternative method of compliance, ERISA § 105(a)(3)(A), 29

18    U.S.C. § 1025(a)(3)(A), provides that the requirement to provide a triennial

19    statement is met "with respect to a participant if at least once each year the

20    administrator provides to the participant notice of the availability of the pension

21    benefit statement and the ways in which the participant may obtain such a

22    statement."

23    110.    Pursuant to 29 U.S.C. § 1025(a)(2), a pension benefit statement under

24    Section 105(a) must indicate the participant's total benefits accrued.

25    111.    As used in ERISA, "accrued benefit" means the participant's benefit

26    expressed as an annual benefit beginning at normal retirement age, or the actuarial

27    equivalent of that amount. ERISA §§ 3(23)(A), 204(c)(3), 29 U.S.C.

28    §§ 1002(23)(A), 1054(c)(3).

112.    The Plan defines "accrued benefit" consistent with these rules.

113.    From December 2002 through September 2016, Mr. Bafford was a participant in the Northrop Plan with a nonforfeitable accrued benefit and was employed by the employer maintaining the Northrop Plan – that is, Northrop. Mr. Bafford's Northrop Plan benefit vested – that is, it became nonforfeitable – during his first period of Northrop employment from April 1987 to February 1998. Mr. Bafford became a Northrop employee again in December 2002, when Northrop acquired TRW. Mr. Bafford continued to be a Northrop employee until his retirement in September 2016.

114.    Therefore, from December 2002 through September 2016, the Administrative Committee was required to furnish Mr. Bafford with either a pension benefit statement every three years or an annual notice of the availability of a pension benefit statement and how to obtain one.

115.    The Administrative Committee did not furnish Mr. Bafford with a pension benefit statement every three years or an annual notice of the availability of a pension benefit statement and how to obtain one. Mr. Bafford has no record or recollection of receiving such statements or notices, and the Administrative Committee has been unable to produce such notices in discovery, despite repeated requests. Furthermore, even if the Administrative Committee did provide a pension benefit statement or an annual notice of how to obtain a pension benefit statement, said statement was inaccurate and thus did not meet ERISA's requirements.

116.    From December 2002 through January 2014, Ms. Wilson was a participant in the Northrop Plan with a nonforfeitable accrued benefit and was employed by the employer maintaining the Northrop Plan – that is, Northrop. Ms. Wilson's Northrop Plan benefit vested – that is, it became nonforfeitable – during her first period of Northrop employment from September 1986 to September 1997. Ms. Wilson became a Northrop employee again in December 2002, when Northrop acquired TRW. Ms. Wilson continued to be a Northrop employee until her

FOURTH AMENDED COMPLAINT

1   retirement in January 2014.

2      117.   Therefore, from December 2002 through January 2014, the

3   Administrative Committee was required to furnish Ms. Wilson with either a pension

4   benefit statement every three years or an annual notice of the availability of a

5   pension benefit statement and how to obtain one.

6      118.   The Administrative Committee did not furnish Ms. Wilson with a

7   pension benefit statement every three years or an annual notice of the availability of

8   a pension benefit statement and how to obtain one. Ms. Wilson has no record or

9   recollection of receiving such statements or notices, and the Administrative

10  Committee has been unable to produce such notices, despite repeated requests.

11  Furthermore, even if the Administrative Committee did provide a pension benefit

12  statement or an annual notice of how to obtain a pension benefit statement, said

13  statement was inaccurate and thus did not meet ERISA's requirements.

14     119.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan

15  participant to file suit to obtain injunctive and other appropriate equitable relief

16  from a violation of ERISA.

17     120.   ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan

18  participant to bring a civil action for the relief provided for in ERISA § 502(c), 29

19  U.S.C. § 1132(c).

20     121.   ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any

21  administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C.

22  § 1025(a), with respect to a participant may in the court's discretion be personally

23  liable to such participant in the amount of up to $100 per day from the date of such

24  failure, and the court may in its discretion order such other relief as it deems proper.

25  For this purpose, each violation with respect to any single participant shall be

26  treated as a separate violation. *Id.* The maximum penalty is increased to $110 per

27  day pursuant to 29 C.F.R. § 2575.502c-1.

28     122.   The Administrative Committee failed to meet the requirements of

23

FOURTH AMENDED COMPLAINT

ERISA § 105(a)(1)(B)(i), 29 U.S.C. § 1025(a)(1)(B)(i), by failing to furnish Plaintiffs and class members, during their employment, with either a triennial pension benefit statement or an annual notice of the availability of a pension benefit statement and how to obtain one.

123.  Plaintiffs and class members have been harmed by the Administrative Committee's violations of ERISA § 105(a)(1)(B)(i) because in planning for their retirements, they had no access to statements of their accrued benefits under the Northrop Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class members pray that the court grant the following relief:

**As to the First Claim for Relief:**

Claim dismissed.

**As to the Second Claim for Relief:**

Claim dismissed.

**As to the Third Claim for Relief:**

A.    Declare that Defendant Administrative Committee violated ERISA § 105(a)(1)(B)(ii), 29 U.S.C. § 1025(a)(1)(B)(ii);

B.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), order that Defendant Administrative Committee is estopped to deny that Plaintiffs and Class Members are entitled to benefits under the Plans consistent with the statements provided to Plaintiffs and the Class members prior to their date of retirement;

C.    Reform the Northrop Plan to provide the final average pay benefits promised to Plaintiffs and Class members;

D.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such other equitable relief as the Court deems appropriate;

E.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the Administrative Committee personally liable to Plaintiffs and Class Members in the

24

amount of $110 per day from the date of each separate failure to meet the
requirements of ERISA § 105(a), 29 U.S.C. § 1025(a);

    F.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other
relief as the Court deems proper;

    G.    Award Plaintiffs and the Class members reasonable attorneys' fees and
costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

    H.    Provide such other relief as the Court deems equitable and just.

    **As to the Fourth Claim for Relief:**

    Claim dismissed.

    **As to the Fifth Claim for Relief:**

    Claim dismissed.

    **As to the Sixth Claim for Relief:**

    Claim dismissed.

    **As to the Seventh Claim for Relief:**

    A.    Declare that Defendant Administrative Committee violated ERISA
§ 105(a)(1)(B)(i), 29 U.S.C. § 1025(a)(1)(B)(i);

    B.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), order that
Defendant Administrative Committee is estopped to deny that Plaintiffs and Class
Members are entitled to benefits under the Plans consistent with the statements
provided to Plaintiffs and the Class members prior to their date of retirement;

    C.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), reform the
Northrop Plan to provide the final average pay benefits promised to Plaintiffs and
Class members;

    D.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), surcharge
the Administrative Committee in the amount necessary to place Plaintiffs and Class
Members in the position they would have occupied but for the Administrative
Committee's breaches of its duties;

    E.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the

Administrative Committee personally liable to Plaintiffs and Class Members in the amount of $110 per day from the date of each separate failure to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a);

   F.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief as the Court deems proper;

   G.    Award Plaintiffs and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

   H.    Provide such other relief as the Court deems equitable and just.


Dated: August 19, 2024                    Respectfully submitted,

                                          RENAKER SCOTT LLP
                                          KANTOR & KANTOR, LLP

                                          By:    _____/s/_____
                                                 Kirsten Scott

                                                 *Attorneys for Plaintiffs and the
                                                 Proposed Class*

FOURTH AMENDED COMPLAINT