Teresa S. Renaker – CA State Bar No. 187800
teresa@renakerscott.com
Kirsten G. Scott – CA State Bar No. 253464
kirsten@renakerscott.com
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
Facsimile: (415) 761-3953

Elizabeth Hopkins – CA State Bar No. 324431
ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
smeter@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Ave.
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

*Attorneys for Plaintiffs and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STEPHEN H. BAFFORD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN, et al., <br><br> Defendants. | Case No. 2:18-cv-10219 ODW-E <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN PENSION PLAN'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT AND MOTION TO STRIKE REMEDIES** <br><br> Date: Jan. 13, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 5D |

1

# TABLE OF CONTENTS

2

3   I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.   FACTS PERTINENT TO DEFENDANT'S MOTION. . . . . . . . . . . . . . . . 2

5        A.   The Pension Miscalculations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6        B.   Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7             1.   *Bafford I*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8             2.   The State Court Litigation  . . . . . . . . . . . . . . . . . . . . . . . . . 4

9             3.   *Bafford II* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10            4.   The Operative Complaint.  . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11  III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12        A.   Defendant's Rule 12(b)(6) Motion Should Be Denied.  . . . . . . . . . 6

13            1.   Legal Standard Under Rule 12(b)(6). . . . . . . . . . . . . . . . . . 6

14            2.   The Seventh Claim for Relief Sufficiently Alleges
                   Violation of §1025(a)(1)(B)(i), as the Ninth Circuit Held,
15                 and Is Timely. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16                 a.   There Is No Basis to Dismiss the Seventh Claim
                        Due to the Effective Date of the Pension Protection
17                      Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18                 b.   Under the Federal Discovery Rule, the Statute of
                        Limitations Accrued When Plaintiffs Learned They
19                      Had Been Injured. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20                 c.   The Complaint Does Not Allege That Mr. Bafford
                        Received the Notices Defendant Produced in
21                      Discovery, and the Notices Defendant Produced Are
                        Inaccurate.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
22

23                 d.   Defendant's Argument Contravenes *Bafford II*. . . . . . 12

            3.   The Third Claim for Relief Sufficiently Alleges Violation of
24                 §1025(a)(1)(B)(ii), as the Ninth Circuit Held. . . . . . . . . . . . 13

25                 a.   The Ninth Circuit Held That Plaintiffs State a Claim
                        Against Defendant, So Defendant's Finger-Pointing
26                      at Hewitt Does Not Avail It.  . . . . . . . . . . . . . . . . . . . . . 13

27                 b.   Defendant's Request for an Advance Ruling on
                        Which False Statements Will Support a Penalty Is
28                      Not Authorized by Rule 12(b)(6).. . . . . . . . . . . . . . . . . . 16

c.    The Third Claim Sufficiently Alleges That
Defendant Failed to Provide Requested Statements
to Mrs. Bafford. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

B.    Defendant's Motion to Strike Certain Remedies Should Be
Denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

1.    The Ninth Circuit Does Not Permit Motions to Strike
Remedies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

2.    Plaintiffs' Prayer for Equitable Relief Is Proper. . . . . . . . . .    19

a.    Plaintiffs Properly Plead Entitlement to Plan
Reformation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

b.    Plaintiffs Properly Plead Entitlement to Surcharge. . .    21

c.    Plaintiffs Properly Plead Entitlement to an Estoppel
Remedy.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

C.    If the Court Grants Defendant's Motion in Whole or in Part, It
Plaintiffs Grant Leave to Amend. . . . . . . . . . . . . . . . . . . . . . . . . .    24

IV. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Amara v. Cigna Corp.*,
775 F.3d 510, 525 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*Bafford v. Northrop Grumman Corp.*,
994 F.3d 1020 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14

*Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*,
101 F.4th 641 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . 1, 5-7, 11-15, 20, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brady v. United of Omaha Life Ins. Co.*,
902 F. Supp. 2d 1274 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 446 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Charles v. Pepco Holdings, Inc.*,
2006 WL 1652749 (D. Del. June 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Christensen v. Qwest Pension Plan*,
376 F. Supp. 2d 934 (D. Neb. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Christensen v. Qwest Pension Plan*,
462 F.3d 913 (8th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

*Del Castillo v. Community Child Care Council of Santa Clara County*,
2018 WL 2357698 (N.D. Cal. May 24, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gabriel v. Alaska Elec. Pension Fund*,
773 F.3d 945 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Gleason v. Seaboard Air Line Ry. Co.*,
278 U.S. 349 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*//*

*Greany v. Western Farm Bureau Life Ins. Co.,*
  973 F.2d 812 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*J.J. v. Ashlynn Mktg. Grp., Inc.,*
  2024 WL 4257646 (S.D. Cal. Sept. 20, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kenseth v. Dean Health Plan, Inc.,*
  610 F.3d 452 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Knepper v. Volvo Group N. Am.,*
  2019 WL 4750337 (D. Md. Sept. 27, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Laurent v. PricewaterhouseCoopers LLP,*
  945 F.3d 739 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Martin v. Constr. Laborers Pension Tr. for So. Cal.,*
  947 F.2d 1381 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,*
  856 F.2d 1418 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Meyer v. Holley,*
  537 U.S. 280 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Moyle v. Liberty Mut. Ret. Ben. Plan,*
  823 F.3d 948 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Tr. Fund v. Jumbo Markets, Inc.,*
  906 F.2d 1371 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Paieri v. Western Conf. of Teamsters Pension Tr.,*
  2024 Wl 4554616 (W.D. Wash. Oct. 23, 2024) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pearce v. Chrysler Group LLC Pension Plan,*
  893 F.3d 339 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pell v. E.I. DuPont de Nemours & Co.,*
  539 F.3d 292 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pessin v. JPMorgan Chase U.S. Benefits Exec.,*
  112 F.4th 129 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Petroff v. Ret. Ben. Plan of Am. Airlines,*
  2015 WL 13917970 (C.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pisciotta v. Teledyne Indus.,*
   91 F.3d 1326 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Rigel Pharms., Inc. Sec. Litig.,*
   697 F.3d 869 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Roger v. First Health Corp.,*
   2010 WL 11509054 (C.D. Cal. Mar. 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . 19

*Romero v. Allstate Corp.,*
   404 F.3d 212 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Skinner v. Northrop Grumman Ret. Plan B,*
   673 F.3d 1162 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stone v. Travelers Corp.,*
   58 F.3d 434 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sullivan-Mestecky v. Verizon Commc'ns Inc.,*
   961 F.3d 91 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*U.S. v. Alexander,*
   106 F.3d 874 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
   592 F.3d 954 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Whittlestone, Inc. v. Handi-Craft Co.,*
   618 F.3d 970 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

## FEDERAL STATUTES

ERISA §102, 29 U.S.C. §1025 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

ERISA §104, 29 U.S.C. §1022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA §105, 29 U.S.C. §1024 . . . . . . . . . . . . . . . . . .1, 3, 4, 6, 12-14, 17, 22

ERISA §204, 29 U.S.C. §1054 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA §404, 29 U.S.C. §1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA §205, 29 U.S.C. §1055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ERISA §502, 29 U.S.C. §1132 . . . . . . . . . . . . . . . . . . 6, 8, 14, 16, 19, 20, 22

## STATE STATUTES

Cal. Code Civ. Proc. §338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 18, 24

//

1

**AGENCY GUIDANCE**

2
29 C.F.R. § 2509.75-8, FR-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3

**TREATISES**

4
J. Eaton, Handbook of Equity Jurisprudence (1923) . . . . . . . . . . . . . . . . . . . . . . 23

5
R. Francis, Maxims of Equity (1st Am. ed. 1823) . . . . . . . . . . . . . . . . . . . . . . . 19

6
3 S. Symons, Pomeroy's Equity Jurisprudence (5th ed.1941) . . . . . . . . . . . . . . 23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Defendant has twice failed to persuade the Ninth Circuit to uphold dismissal of Plaintiffs' claims for violation of benefit disclosure requirements of ERISA.[1] Its third attempt flies in the face of the Ninth Circuit's recent holding that Plaintiffs' complaint states claims for violation of two requirements in ERISA's benefit disclosure provision, §1025[2]: the requirement to provide pension benefit statements on request (third claim for relief) and the requirement to provide them automatically (seventh claim for relief). *Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 657 (9th Cir. 2024) ("*Bafford II*").

As the Court is aware, Plaintiffs are participants in pension plans sponsored by Northrop Grumman Corporation ("Northrop") and administered by Defendant Administrative Committee of the Northrop Grumman Pension Plan ("Defendant"), which outsourced pension calculations and notifications to the entity now known as Alight Solutions LLC ("Hewitt"). As plan administrator, Defendant is responsible for complying with §1025. It failed to do so: the pension benefit statements provided to Plaintiffs for years before their retirements were badly miscalculated, showing benefits far in excess of the actual amounts owed under the plans. It was only after Plaintiffs had retired and begun receiving benefits in the miscalculated amounts that Defendant informed them of the error, slashed their pensions for the rest of their lives, and recouped the past overpayments.

Defendant's arguments following *Bafford II* have no merit, being characterized primarily by disregard for controlling authority, starting with *Bafford II* itself. On the Rule 12(b)(6) motion, the federal discovery rule ensures

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

[2] All references to statutory sections are to Title 29 of the U.S. Code.

that Plaintiffs' seventh claim is not time-barred. The notices of how to obtain a

pension statement that Defendant produced in discovery do not satisfy the

statutory notice requirements, because they directed participants to the very

website that provided the miscalculated statements, and in any event Plaintiffs

allege they did not receive them. As the Ninth Circuit held in *Bafford II*,

information provided in purported satisfaction of ERISA's disclosure

requirements must be accurate, not just timely. Defendant's Rule 12(f) motion

runs afoul of Ninth Circuit authority holding that a Rule 12(f) motion may not be

brought to strike remedies, and the remedies Plaintiffs seek are those specifically

authorized by the Supreme Court for ERISA disclosure violations.

Accordingly, Defendant's motions should be denied.

## II. FACTS PERTINENT TO DEFENDANT'S MOTIONS

### A.    The Pension Miscalculations

Plaintiffs are Northrop retirees who worked for Northrop from the late

1980s to late 1990s, left for jobs at TRW Corporation, and then returned to

Northrop employment when Northrop acquired TRW in 2002. (¶¶23-29; Exhs. 1,

2.[3]) During their first period of Northrop employment, they earned benefits under

the Northrop Grumman Pension Plan ("Plan"). (¶¶23-25.) When they returned to

Northrop employment, they earned benefits under a different Northrop-sponsored

pension plan, referred to as the TRW Plan. (¶¶31; Exhs. 1, 2.)

For years, Plaintiffs requested statements of their accrued pension benefits

to assist them with retirement planning. (¶¶36, 37, 39, 40; ECF 134-2, 134-3.)

When they retired, their pension election paperwork confirmed they would

receive the amounts shown on the statements, and upon commencing their

---

[3] References to "¶" are to the paragraphs of the Fourth Amended Complaint (ECF 133).
References to "Exh." are to the Declaration of Teresa S. Renaker in Support of Plaintiffs'
Request for Incorporation by Reference and Plaintiffs' Request for Judicial Notice, filed
herewith.

1    pensions, they received those amounts. (¶¶41-46.)

2        But in early 2017, three years after Ms. Wilson's retirement and three

3    months after Mr. Bafford's, they received notices informing them that their Plan

4    benefits had been miscalculated and their pensions would be cut by more than

5    half; demanding immediate repayment to Northrop of the overpaid amounts; and

6    explaining that if they failed to send checks to Northrop for repayment, the

7    amounts would be withheld from their future reduced pensions. (¶¶50, 51, 53, 55;

8    Exhs. 1, 2.)[4] The notices explained that Plaintiffs' pensions from their first period

9    of Northrop employment were overstated and overpaid because Plaintiffs' higher

10   earnings from their second periods of Northrop employment had been used,

11   incorrectly, to calculate the benefits. (¶ 32; Exhs. 1, 2.)

12   **B.    Procedural Background**

13       **1.    *Bafford I***

14       Mr. Bafford filed his complaint in this Court on December 7, 2018,

15   alleging, *inter alia*, claims against Northrop for violation of §1025 and state-law

16   claims against Hewitt, all based on the inaccurate statements. (ECF 1.) Before the

17   Court ruled on motions to dismiss, Ms. Wilson joined the action via an amended

18   complaint (ECF 32), and the then-defendants refiled their motions. On appeal

19   from dismissal, the Ninth Circuit held that Defendant escaped liability for breach

20   of fiduciary duty under ERISA, but that escape did not "exonerate [Northrop]

21   from its other statutory obligations," specifically those under §1025. *Bafford v.

22   Northrop Grumman Corp.*, 994 F.3d 1020, 1029 (9th Cir. 2021) ("*Bafford I*").

23   The Ninth Circuit held that (1) to state claims for violation of ERISA §1025's

24   requirement to provide *automatic* statements, Plaintiffs would need to

25   additionally allege that on top of the inaccurate statements, Northrop also failed

26

27   ─────────────────

28   [4] Thus, Defendant's assertion that "Northrop has not sought to recoup the overpayments"
     is incorrect. (ECF 134 at 1:11.)

to provide Plaintiffs notice of where to obtain accurate statements; and (2) to state claims for violation of §1025's requirement to provide statements *on request*, Plaintiffs would need to clarify that they requested statements in a manner that constituted a "written request" as the Ninth Circuit explained that term. *Id.* at 1029-30. The Ninth Circuit held that Plaintiffs' state-law claims against Hewitt were not preempted by ERISA. *Id.* at 1030-32.

**2.  The State Court Litigation**

On remand, Plaintiffs filed a second amended complaint in accordance with the Ninth Circuit's direction. After dismissing the amended claims with leave to amend, this Court determined that the claims against Hewitt should proceed, if at all, in state court. (ECF 111 at 14.) Accordingly, Plaintiffs filed *Bafford et al. v. Alight Solutions LLC*, No. 22STCV147818 (Cal. Sup. Ct., County of Los Angeles), and subsequently obtained leave to amend to add additional claims. (ECF 134-8.) Initially, Hewitt filed a cross-complaint against Northrop, alleging Hewitt's function was to "calculate pension benefit estimates based on data and methodology provided by Northrop" and Hewitt "calculated inaccurate pension estimates for plan participants that overestimated the amount of pension benefits that Plaintiffs had accrued" because Northrop "sent [Hewitt] incorrect data" and required that Hewitt follow "incorrect methodology" in calculating benefits. (Exh. 3, ¶¶13, 17-19.) Three months later, Hewitt dismissed its cross-complaint without prejudice (Exh. 4), but its defense continues to be that it was relying on instructions and data from Northrop in miscalculating Plaintiffs' benefits and Northrop was responsible for correcting, and failed to correct, the problem. (Exh. 5, at 7.)[5]

---

[5] Northrop expresses its concern that by pursuing both cases, Plaintiffs may obtain a duplicative recovery. (ECF 134 at 1:17.) Northrop's concern is premature. Whether Plaintiffs will recover against either defendant, and the nature of the recoveries, is yet to be decided. Moreover, as this Court observed, "the two sets of claims are different claims against different

### 3.    *Bafford II*

In this case, Plaintiffs filed a third amended complaint. By minute order, this Court rejected the third amended complaint and directed Plaintiffs to file a fourth amended complaint omitting certain allegations. (ECF 113.) Plaintiffs did so, and the Court struck the fourth amended complaint. (ECF 115.) Plaintiffs then requested entry of judgment and appealed. The Ninth Circuit reversed, holding that Plaintiffs stated cognizable claims for violation of Northrop's obligations both to provide automatic statements and to provide statements on request. *Bafford II*, 101 F.4th at 657. The Ninth Circuit emphasized, "It is plain that if a benefit amount disclosed in a pension benefit statement is substantially miscalculated according to the plan's formula, then that statement of the benefit amount" does not meet ERISA's requirements for the content of a pension benefit statement. *Id.* at 652. ERISA's core purpose of "ensuring that the individual participant knows exactly where he stands with respect to the plan" would be "entirely frustrated if plan administrators could satisfy their disclosure duties by providing grossly inaccurate pension benefit statements." *Id.*

### 4.    **The Operative Complaint.**

On remand from *Bafford II*, Plaintiffs filed a new fourth amended complaint[6] in accordance with the Ninth Circuit's opinions, alleging two claims for relief, both of which the Ninth Circuit held were cognizable in *Bafford II*. The third claim for relief alleges Northrop failed to furnish pension benefit statements in response to Plaintiffs' requests because the statements Plaintiffs received were

defendants" arising from different conduct under distinct sets of rules. (ECF 111, 12:8-14:6.)

[6] From Defendant's repeated assertions that the current fourth amended complaint is Plaintiffs' "fifth attempt" or that Plaintiffs have had "*five* opportunities" to plead their claims, one might assume that this Court had granted four prior motions to dismiss. Not so. This Court has dismissed the complaint twice, and the two claims currently pled are those that the Ninth Circuit held cognizable.

inaccurate, in violation of §1025(a)(1)(B)(ii). (¶¶80-86.) *See Bafford II*, 104 F.4th at 650-55. The seventh claim for relief alleges Northrop failed to furnish either automatic statements or a notice of how to obtain a statement, in violation of §1025(a)(1)(B)(i). *See Bafford II*, 104 F.4th at 649-50. As to each claim, Plaintiffs seek relief pursuant to two ERISA enforcement provisions: (1) §1132(a)(3), which authorizes appropriate equitable relief for a violation of any provision of ERISA Title I; and (2) §1132(c), which authorizes a claim for a penalty for violation of §1025.

### III. ARGUMENT

**A.    Defendant's Rule 12(b)(6) Motion Should Be Denied.**

**1.    Legal Standard Under Rule 12(b)(6)**

Rule 12(b)(6) authorizes a motion to dismiss for failure to state a claim on which relief can be granted. When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Review of a motion to dismiss is "generally limited to the face of the complaint," but a court may consider "materials incorporated into the complaint by reference, and matters of which [it] may take judicial notice." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012). Plaintiffs' accompanying request for incorporation by reference and request for judicial notice ask the Court to consider both types of materials.

1

**2.    The Seventh Claim for Relief Sufficiently Alleges Violation of
§1025(a)(1)(B)(i), as the Ninth Circuit Held, and Is Timely.**

2

3

**a.    There Is No Basis to Dismiss the Seventh Claim Due to the
Effective Date of the Pension Protection Act.**

4

Defendant agrees it was required to provide Plaintiffs with automatic

5

triennial statements or annual notices beginning January 1, 2007. (ECF 134,

6

15:10-12.)[7] Both Plaintiffs were employed at that time, and continued to be

7

employed through January 2014 (Ms. Wilson) and September 2016 (Mr.

8

Bafford). (¶¶ 29, 41, 46.) Therefore, Defendant owed Ms. Wilson either at least

9

two automatic statements or seven notices, and owed Mr. Bafford either at least

10

three automatic statements or ten notices, but failed to provide either. (¶¶115,

11

118.) Plaintiffs' seventh claim alleges a cognizable claim for these violations.

12

*Bafford II*, 104 F.4th at 649-50.

13

Nonetheless, Defendant asserts that "Plaintiffs' claims for failure to

14

provide a triennial pension statement or annual notice for the years 2002-2006

15

must be dismissed *with prejudice*" for failure to state a claim. (ECF 134, 9:12-15

16

(emphasis in original).) But Plaintiffs only have two claims: the third claim for

17

failure to provide statements on request, and the seventh for failure to provide

18

automatic statements or notices. Defendant does not, and cannot, contend that

19

either fails to state a claim. Instead, Defendant asks the Court to edit Plaintiffs'

20

complaint to limit the seventh claim to plan years after December 1, 2006.[8] The

21

Court need not consider arguments that do not address entire causes of action.

22

*Paieri v. Western Conf. of Teamsters Pension Tr.*, 2024 Wl 4554616, at *11 n.12

23

_____

24

    [7] Defendant references "plan years beginning after December 31, 2006." Here, the

25

applicable plan year is coextensive with the calendar year (ECF 42-6, at 2), so Defendant's
obligation began January 1, 2007.

26

    [8] Defendant's statement that Plaintiffs "conceded" that "claims" must be dismissed (ECF

27

134, 9:14-15) is incorrect. Plaintiffs urged Defendant not to waste the Court's time with a motion
to edit, stating that they did not see this argument as a basis for a motion to dismiss. (ECF 134-7,

28

at 3 of 6.)

(W.D. Wash. Oct. 23, 2024) (declining to consider argument that ERISA plan is
not proper defendant on breach of fiduciary duty claim, because even if
successful, it would not result in dismissal from action of either plan or claim).

### b. Under the Federal Discovery Rule, the Statute of Limitations Accrued When Plaintiffs Learned They Had Been Injured.

Defendant fails to carry its burden to show that on the face of the
complaint, the seventh claim is time-barred. The statute of limitations is an
affirmative defense, so Defendant bears the burden of showing "some obvious bar
to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R.
Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Von Saher v. Norton Simon Museum of
Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (running of statute must be
apparent on face of complaint). This Defendant fails to do.

The statute of limitations on Plaintiffs' seventh claim began to run in 2017,
when Plaintiffs learned for the first time that the pension information provided to
them up to and upon their retirements had been grossly exaggerated. (¶¶50, 53;
Exhs. 1, 2.) Plaintiffs filed suit in 2018 (ECF 1), well within the applicable three-
year limitations period for their seventh claim for relief. *See Stone v. Travelers
Corp.*, 58 F.3d 434, 438 (9th Cir. 1995).[9]

Under federal law, the statute of limitations begins to run "when the
plaintiff knows or has reason to know of the injury that is the basis of the action."
*Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Tr. Fund v.
Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990). Thus, accrual "is not
the date on which the wrong that injures the plaintiff occurs, but the date . . . on
which the plaintiff discovers that he has been injured." *Cada v. Baxter*

---

[9] *Stone* addressed the applicable statute of limitations for a claim for the relief provided
under §1132(c). However, the same statute governing "action[s] upon liability created by statute"
presumably also applies to a claim for violations of ERISA brought pursuant to §1132(a)(3); *see*
Cal. Code Civ. Proc. §338(a).

*Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). This is "the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress." *Id.* There is no such directive here.

Applied in the specific context of an ERISA non-fiduciary breach claim, the discovery rule means that a participant's claim accrues when there has been a "clear repudiation" of a right to benefits. *Romero v. Allstate Corp.*, 404 F.3d 212, 222-23 (3d Cir. 2005); *see Martin v. Constr. Laborers Pension Tr. for So. Cal.*, 947 F.2d 1381, 1384 (9th Cir. 1991). Thus, for example, in cases alleging an unlawful plan amendment or a plan administrator's failure to give required notice of a plan amendment, the statute of limitations accrues when participants learn that their benefits will be adversely affected by the amendment – *not* when the amendment was adopted or the notice should have been provided. *See, e.g., Romero*, 404 F.3d at 223-24 (holding claim for violation of ERISA provision requiring prior notice of plan amendment reducing benefits accrues when participant learns that benefits have been reduced, not when notice should have been provided); *Charles v. Pepco Holdings, Inc.*, 2006 WL 1652749, *3 (D. Del. June 12, 2006) (same); *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1422 (9th Cir. 1988) ("Meagher was harmed only by the wrongful *application* of the amendment. Only then were his benefits *decreased*." (emphasis in original)). In the ERISA context, running the statute of limitations off the date of the violation, as Defendant requests, "would have the undesirable effect of requiring plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses." *Romero*, 404 F.3d at 224 (internal quotation marks omitted).

Here, until Defendant slashed their pensions, Plaintiffs believed, and had

1    every reason to believe, that the statements they received contained accurate and

2    reliable information for their retirement planning, as Defendant had promised

3    they would. (¶¶40F, 40G, 56-58.) Their claims for failure to provide the

4    information required by ERISA did not accrue until Defendant repudiated its

5    obligation to provide the previously promised benefits. (¶¶51, 54.)

6        Defendant points to nothing on the face of the complaint that shows

7    Plaintiffs knew they had been injured before it recalculated their pensions in early

8    2017. Instead, Defendant speculates that Plaintiffs "would have . . . known" or

9    "would have been aware" that they had not received accurate information in the

10   form of either an accurate benefit statement or a notice of where to obtain an

11   accurate statement. (ECF 134, 10:7, 10:16, 11:3.) But Defendant cannot carry its

12   burden with inferences drawn in its favor; it must make an affirmative showing

13   based on the allegations of the complaint, which it has not done and cannot do.

14   *See ASARCO*, 765 F.3d at 1004 (9th Cir. 2014).

15       Defendant relies on *Del Castillo v. Community Child Care Council of

16   Santa Clara County*, 2018 WL 2357698 (N.D. Cal. May 24, 2018), and *Knepper

17   v. Volvo Group N. Am.*, 2019 WL 4750337 (D. Md. Sept. 27, 2019), for the

18   proposition that Plaintiffs "legally are deemed" to have discovered their injuries

19   before Defendant repudiated the statements. (ECF 134, 10:5.) But neither case

20   contains any analysis of accrual; instead, the courts simply assumed that the date

21   of the violation and the date of injury were the same. *Del Castillo*, 2018 WL

22   2357698, at *7-*8; *Knepper*, 2019 WL 4750337, at *19.

23       Likewise, Defendant relies on *J.J. v. Ashlynn Mktg. Grp., Inc.*, 2024 WL

24   4257646 (S.D. Cal. Sept. 20, 2024), but *J.J.* exactly parallels this case. In *J.J.*,

25   plaintiffs alleged that a seller failed to disclose that its product was addictive. *Id.*

26   at *1. Plaintiffs' claims were not time-barred on the face of the complaint because

27   they alleged when they discovered their injuries (when they learned they were

28   addicted) and why they had not discovered their addiction sooner (because

addiction came on slowly). *J.J.*, 2024 WL 4257656, at *4. The same is true here: on the face of the complaint, Plaintiffs' claims are not time-barred because they did not discover their injuries until Defendant cut their pensions. (¶¶50, 53, 57.)

### c. The Complaint Does Not Allege That Mr. Bafford Received the Notices Defendant Produced in Discovery, and the Notices Defendant Produced Are Inaccurate.

Plaintiffs allege that Mr. Bafford "has no record or recollection of receiving" notices of how to obtain a pension benefit statement and that Defendant failed to provide them. (¶¶40J, 115.) Thus, Defendant's argument that Mr. Bafford *did* receive such notices merely contradicts the allegations of the complaint, which must be taken as true at this stage. Defendant points to notices that it produced in discovery, bates-stamped versions of which Plaintiffs attached to a prior iteration of the complaint. (ECF 134-4.) But nothing about those notices shows that Defendant sent them to Mr. Bafford.[10] That is, again, an inference that Defendant improperly asks the Court to draw in its favor. *Cf. Knievel*, 393 F.3d at 1072.

Furthermore, Defendant's reliance on the notices is unavailing in light of the Ninth Circuit's holding that an inaccurate statement cannot satisfy a disclosure obligation under ERISA. *Bafford II*, 101 F.4th at 652; *see Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 141-43 (2d Cir. 2024) (plan administrator could not satisfy requirement to provide statement of total benefit accrued by providing statement of another benefit together with telephone number for more information). The notices to which Defendant points direct participants to the very website that Plaintiffs consulted to obtain the grossly inaccurate statements. (ECF 134-4; ¶¶14, 40A.) Therefore, the notices do not

---

[10] Whether by accident or design, Defendant submits non-bates-stamped versions of the notices, perhaps to suggest that Plaintiffs received the notices on the dates they bear. (ECF 134-4.) But Plaintiffs received these notices when Defendant produced them. (ECF 114-2 (bates-stamped notices).)

disclose "the ways in which the participant may obtain" a pension benefit statement, §1025(a)(3)(A); they disclose the way in which participants may obtain inaccurate information about their pensions, which does not satisfy §1025. Defendant may as well have told participants that they could obtain pension benefit statements at www.amazon.com, or that to obtain a pension benefit statement they should take a shovel out back and start digging – at least that way Plaintiffs would have known the notices were unreliable. *See Bafford II*, 101 F.4th at 656 (wrong statement is worse than no statement). Defendant cannot satisfy its obligation to provide pension benefit statements by giving out the wrong benefit amounts, *id.* at 652, and it cannot satisfy its obligation to provide a notice of how to obtain a pension benefit statement by directing participants to a website that gives out the wrong benefit amounts.

### d.    Defendant's Argument Contravenes *Bafford II.*

The Ninth Circuit held that Plaintiffs state a cognizable claim for failure to provide either automatic statements or a notice of how to obtain statements. *Bafford II*, 101 F.4th at 649-50. Nonetheless, Defendant argues that the court of appeals contradicted its own holding by stating that the notices "'appear to comply with § 1025(a)(3)(A).'" (ECF 134, 11:20-21 (quoting *Bafford II*, 101 F.4th at 650).) Defendant is wrong: appearances can be deceiving, as the Ninth Circuit recognized. Thus, the court wrote, "To the extent the . . . Annual Funding Notice pointed participants to the website to request pension benefit statements and Plaintiffs prove that the website failed to function as promised," the notices "do not satisfy Northrop's duty under § 1025(a)(3)(A)." *Bafford II*, 101 F.4th at 650. Though Plaintiffs need not prove their claims at this stage, they allege that the website failed to function as promised, in two ways: (1) rather than providing a statement, it required them to telephone for a statement; and (2) when Plaintiffs followed that instruction, they received information that failed to meet the requirements for a pension benefit statement because it disclosed miscalculated

amounts. (¶¶37, 39, 40-40E, 50, 53.)

Documents referenced in the complaint strongly support these allegations: for example, Mr. Bafford's statements dated February 2013, August 2015, and June 2016, show that his 100% joint-and-survivor annuity benefit as of October 1, 2016, would be $2,114.41 (ECF 134-5, at 30 of 91 (Feb. 2013), 86 of 91 (Aug. 2015; Exh. 10 (June 2016)); when he retired, his pension election paperwork confirmed that amount (ECF 25-18); and three months later Northrop announced that the $2,114.41 figure was wrong and should have been $807.89 (Exh. 1). These documents support the allegation that the website to which the notices directed participants "failed to function as promised." *Bafford II*, 101 F.4th at 650.

### 3. The Third Claim for Relief Sufficiently Alleges Violation of §1025(a)(1)(B)(ii), as the Ninth Circuit Held.

#### a. The Ninth Circuit Held That Plaintiffs State a Claim Against Defendant, So Defendant's Finger-Pointing at Hewitt Does Not Avail It.

As to Plaintiffs' claim that Defendant failed to provide pension benefit statements on request, the Ninth Circuit held, "Plaintiffs adequately alleged that the Committee violated § 1025(a)(1)(B)(ii) because they alleged that the Committee provided them with pension benefit statements that did not calculate their benefits according to the Plan's formula, and grossly overstated their benefits." *Bafford II*, 104 F.4th at 652.

In the face of this unequivocal endorsement, Defendant argues that the Ninth Circuit cannot have meant what it said, because, it contends, Hewitt, not Defendant, provided the statements. But the Ninth Circuit approved Plaintiffs' claim that "*the Committee* violated § 1025(a)(1)(B)(ii)." *Id.* at 650 (emphasis added). That holding is the law of the case. *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Moreover, Defendant's arguments are without merit. First, under ERISA

and the Plan, the disclosure buck stops with the plan administrator – here, Defendant. ERISA makes the plan administrator responsible for providing pension benefit statements on request, §1025(a)(1)(B), and makes the plan administrator exclusively, personally liable for violations of §1025(a), pursuant to §1132(c). Thus, the statute itself defeats Defendant's argument that a plan administrator can negate these responsibilities – and the attendant liabilities – simply by hiring someone else to perform them. Likewise, the Plan charges its administrator with complying with ERISA's reporting and disclosure requirements, preparing and distributing communications to employees, and determining the amount of benefits. (¶10.) Though the plan administrator can delegate these duties, it cannot evade responsibility for its delegee's performance.

Second, the sub-regulatory guidance on which Defendant heavily relies does not apply in this case. *See* 29 C.F.R. § 2509.75-8, FR-11. The guidance deals only with fiduciary responsibilities, opining on the question, "In discharging fiduciary responsibilities, may a fiduciary with respect to a plan rely on" information provided by ministerial agents. *Id.* While Defendant is unquestionably a fiduciary by reason of being the plan administrator, it was not discharging a fiduciary responsibility in supervising Hewitt. *Bafford I*, 994 F.3d at 1029, 1032.

Third, Defendant is strangely preoccupied with the timing of Hewitt's responses to Plaintiffs' requests for pension benefit statements, emphasizing that Plaintiffs do not allege that Hewitt's responses took no more than 30 days. (ECF 134, 12:24-26.) But as the Ninth Circuit held, the problem is that in response to their requests, Plaintiffs *never* received pension benefit statements, because an inaccurate statement does not meet ERISA's requirements, regardless of when it is delivered. *Bafford II*, 101 F.4th at 651-52.

Fourth, in addition to its statutory responsibility, Defendant is also liable for Hewitt's acts under the doctrine of respondeat superior, pursuant to which a

principal may be liable "for the false statement or other misconduct of the agent acting within the scope of his authority." *Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349, 356 (1929). Thus, negligence by a ministerial agent can be imputed to the plan administrator. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 104 (2d Cir. 2020) ("Aon Hewitt's status as a ministerial agent[] does not prevent us from imputing Aon Hewitt's gross negligence to Verizon, Aon Hewitt's principal. Indeed, Aon Hewitt's status as a ministerial agent allows us to do so."); *see Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 301 (3d Cir. 2008) (holding plan fiduciary can be responsible for material misstatements by individual who acts with apparent authority); *see also Meyer v. Holley*, 537 U.S. 280, 287 (2003) (respondeat superior liability may be inferred under a federal statute in the absence of an express contrary intent).

Here, Hewitt acted for Defendant, its principal, with both actual and apparent authority in providing (inaccurate) information to Plan participants. Defendant contracted with Hewitt to carry out Defendant's disclosure responsibilities. (¶13.) Defendant authorized Hewitt to call itself the "Northrop Grumman Benefits Center" and to send communications on Northrop letterhead, giving them Defendant's imprimatur. (¶11; Exhs. 1, 2; ECF 134-5, 134-6.) Accordingly, the complaint sufficiently alleges that Hewitt's misconduct is imputed to Defendant.

Finally, the cases on which Defendant relies do not support its argument. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010) ("*Kenseth I*"), deals with a fiduciary breach claim, not a statutory violation, and holds that occasional inaccurate telephonic advice by health plan representatives will not support a fiduciary breach claim, so long as the fiduciary can prove that it took "reasonable steps to head off such misrepresentations." *Id.* at 464, 471. Plaintiffs' third claim deals with statutorily required written disclosures, not casual oral representations, and there are no allegations that Defendant took any reasonable

steps to prevent Hewitt from misrepresenting benefits – quite the contrary.

Likewise, the Ninth Circuit has already distinguished *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2024), writing that the Eighth Circuit upheld a decision to deny a §1132(c) penalty "because there was no indication of bad faith by the administrator, and because the plaintiff in that case could have detected the error by carefully reading the benefit statement he received." *Bafford II*, 101 F.4th at 656. "Notably, the Committee does not argue that Plaintiffs could have determined from the information they received that the statements erroneously calculated their benefits." *Id.* at 657. Moreover, in stark contrast to this case, *Christensen* also noted that there was no evidence that the error that caused the misstatements at issue "was a recurring problem." 462 F.3d at 918. Here, Plaintiffs allege a recurring problem, including multiple misstatements provided over a period of years and affecting multiple participants. (¶¶ 32-35; *see* Exh. 9 at 6 ("Plaintiffs cite communications with and about participants in a variety of Northrop plans that suggest a common error.").)

Accordingly, Defendant's argument that its contract with Hewitt is a get-out-of-jail-free card fails.[11]

### b. Defendant's Request for an Advance Ruling on Which False Statements Will Support a Penalty Is Not Authorized by Rule 12(b)(6).

Defendant requests that the Court rule at the pleading stage on *which* of the miscalculated statements provided to Mr. Bafford will support a penalty award under §1132(c). This request is not a motion to dismiss for failure to state a claim; tellingly, Defendant does not contend that anything should be dismissed based on its argument. The third claim for relief would be intact even if the Court agreed

---

[11] Defendant's footnoted statement that all its arguments against the third claim also apply to the seventh fails for exactly the same reasons, most prominently that the Ninth Circuit has already held that the third claim states a claim for relief against Defendant. *Bafford II*, 101 F.4th at 657.

with Defendant on what might happen once Plaintiffs have established Defendant's liability.

In addition to being procedurally out of place, Defendant's argument has no merit. While §1025(b) allows a plan administrator to refuse to provide more than one statement in a 12-month period, Defendant never did that. *Cf. Christensen v. Qwest Pension Plan*, 376 F. Supp. 2d 934, 942 (D. Neb. 2005) (explaining that summary plan description "explicitly allowed only one such benefit statement per year"), *aff'd*, 462 F.3d 913 (8th Cir. 2006). Instead, Defendant encouraged participants to use Hewitt's website to "Keep[] Track of Your Benefit" (¶40F), as Plaintiffs did. Accordingly, §1025(b) does not constrain Plaintiffs' potential future remedies.

### c. The Third Claim Sufficiently Alleges That Defendant Failed to Provide Requested Statements to Mrs. Bafford.

Mrs. Bafford is a Plan beneficiary. (¶7.) Under ERISA's spousal protections, she had a legal right to insist that her husband receive his pension in the form of a joint and survivor annuity, as he did. §1055(a)(1). Accordingly, Mr. Bafford made his statement requests on behalf of Mrs. Bafford as well as himself. (¶85.) Mrs. Bafford relied on the resulting statements along with Mr. Bafford in planning for their retirement. (¶58.)

Again, what relief the Court will ultimately award must await further proceedings. At the pleading stage, the third claim states a claim for relief by all three Plaintiffs.

### B. Defendant's Motion to Strike Certain Remedies Should Be Denied.

### 1. The Ninth Circuit Does Not Permit Motions to Strike Remedies.

Defendant has elected to challenge Plaintiffs' prayer for relief under Rule 12(f), but Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010). Applying the plain language

of the rule, damages allegations do not qualify as a "defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* at 974. Also, to conclude that certain "damages should be stricken from the complaint, because such damages are precluded as a matter of law," would create "redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion . . . already serves such a purpose." *Id.* (citations and internal quotation marks omitted). "Moreover, Rule 12(f) motions are reviewed for abuse of discretion, whereas 12(b)(6) motions are reviewed de novo," and "[a]pplying different standards of review, when the district court's underlying action is the same, does not make sense." *Id.* (citations and internal quotation marks omitted). Although the remedies that Defendant seeks to have stricken are equitable remedies rather than damages, the same rationale applies.

Defendant does not distinguish *Whittlestone* and does not argue that Plaintiffs' requested remedies are an insufficient defense or are redundant, immaterial, impertinent, or scandalous. Instead, Defendant merely argues that Plaintiffs' requested remedies are "legally unavailable" – the same argument that the Ninth Circuit rejected in *Whittlestone. Id.* at 976. Defendant also suggests that granting its motion will "'avoid the expenditure of time and money that must arise from litigating spurious issues.'" (ECF 134, 18:12-15 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).) But Defendant does not, and cannot, show that the prayer for equitable relief will require expenditure of time or money not otherwise required to litigate the merits of Plaintiffs' claims. *Cf. Fantasy*, 984 F.2d at 1528 (affirming grant of motion to strike factual allegations that "consisted of stale and barred charges that had already been extensively litigated and would have been burdensome for Fantasy to answer" and presented "a strong likelihood that [related evidence] would lead to unwarranted and prejudicial inferences against Fantasy").

Ignoring controlling authority, Defendant relies on district court cases that it claims stand for the proposition that, contrary to *Whittlestone*, Rule 12(f) authorizes a motion to strike remedies – but the decisions are inapposite. *See Roger v. First Health Corp.*, 2010 WL 11509054, at *8 (C.D. Cal. Mar. 26, 2010) (denying motion to strike prayer for costs, as costs are provided for by statute); *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1285-86 (N.D. Cal. 2012) (granting uncontested Rule 12(f) motion).[12]

### 2.    Plaintiffs' Prayer for Equitable Relief Is Proper.

The controlling authority on equitable relief under §1132(a)(3) is *Cigna Corp. v. Amara*, 563 U.S. 421 (2011) ("*Amara III*"). In *Amara*, just as in this case, pension plan participants brought claims for violations of ERISA disclosure provisions. *Id.* at 424-25, 432. Their claims were successful, but the plan administrator objected to the district court's chosen remedy under §1132(a)(1)(B). *Id.* at 435. The Supreme Court agreed with the plan administrator, but held that equitable relief, including reformation, estoppel, and surcharge, was available under §1132(a)(3). *Id.* at 440-42. The Court explained that the remedies available under §1132(a)(3) are those traditionally available in equity, as described in treatises such as Eaton and Pomeroy. *Amara III*, 563 U.S. at 440. The Court emphasized the "maxim of equity . . . that '[e]quity suffers not a right to be without a remedy.'" *Id.* at 439 (quoting R. Francis, Maxims of Equity 29 (1st Am. ed. 1823)). On remand, the relief awarded was reformation of the plan to provide the benefits promised in the faulty disclosures. *Amara v. Cigna Corp.*, 775 F.3d 510, 525 (2d Cir. 2014) ("*Amara V*") ("The district court . . . properly reformed the CIGNA plan to reflect the representations that defendants

---

[12] Defendant errs in stating that the *Brady* court granted a motion to strike certain remedies. (ECF 134, 18:20-22.) The court granted a Rule 12(b)(6) motion, not a Rule 12(f) motion (except to the extent the Rule 12(f) motion was uncontested). *Brady*, 902 F. Supp. 2d at 1285-86.

made to the plaintiffs."); *see Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948,
960 (9th Cir. 2016) ("*Amara* makes it very clear that remedies such as
reformation, surcharge, estoppel, and restitution are traditionally equitable
remedies."). The relief Plaintiffs seek is squarely within the mandate of *Amara.*

### a.    Plaintiffs Properly Plead Entitlement to Plan Reformation.

Plaintiffs sufficiently plead entitlement to reformation, the remedy awarded
for disclosure failures on remand in *Amara. Amara V*, 775 F.3d at 525.
Reformation is available to remedy false or misleading information. *Amara III*,
563 U.S. at 440. "A contract may be reformed due to the mutual mistake of both
parties, or where one party is mistaken and the other commits fraud or engages in
inequitable conduct." *Amara V*, 775 F.3d at 525. "Fraud or inequitable conduct"
in equity does not require an intent to defraud or misrepresent. *Pearce v. Chrysler
Group LLC Pension Plan*, 893 F.3d 339, 347-48 (6th Cir. 2018); *see also Laurent
v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019) ("We hold
that [§1132(a)(3)] authorizes district courts to grant equitable relief – including
reformation – to remedy violations of subsection I of ERISA, even in the absence
of mistake, fraud, or other conduct traditionally considered to be inequitable.");
*Sullivan-Mestecky*, 961 F.3d at 103 (plaintiff "adequately pled circumstances that
would permit the district court to equitably reform the terms of her plan with
Verizon, sufficient to bind Verizon to its fraudulent representations").

Here, Defendant was responsible for providing pension benefit statements
to Plan participants to ensure that they knew exactly where they stood with
respect to the Plan. *Bafford II*, 101 F.4th at 653. Defendant failed – not just once
but many times over multiple years. *Cf. Skinner v. Northrop Grumman Ret. Plan
B*, 673 F.3d 1162, 1167 (9th Cir. 2012) (on summary judgment, reformation
unavailable because plaintiffs provided no evidence Northrop materially misled
its employees and conceded they had not relied on misleading information).
Plaintiffs allege that due to the erroneous statements, they were mistaken about

their rights under the Plan, and that Defendant engaged in fraud or inequitable

conduct by perpetuating that mistake for many participants over many years. (¶¶

32-40, 56-58.) Indeed, Hewitt contends that Defendant instructed it to calculate

benefits in the way it did (Exhs. 3, 5), whether because Defendant believed the

Plan provided for the methodology it directed (mutual mistake) or because it

either wanted the benefits calculated in contradiction to the Plan or did not care if

they were (fraud or inequitable conduct). Reformation is appropriate equitable

relief under these circumstances.

Defendant relies on the reformation analysis in *Gabriel v. Alaska Elec.*

*Pension Fund*, 773 F.3d 945 (9th Cir. 2014), but *Gabriel* dealt with a request to

"reform" administrative records of a plan, *id.* at 962, not the plan itself as in

*Amara* and this case. Just as in *Amara*, reformation of the Plan to conform to

Defendant's promises would not cause the Plan to pay benefits contrary to its

terms, because Defendant would be required to pay benefits in accordance with

the reformed terms. *Amara V*, 775 F.3d at 523.

### b.   Plaintiffs Properly Plead Entitlement to Surcharge.

Another obvious remedy for Defendant's violations is surcharge: monetary

relief to place the Plaintiffs in the position that they would have occupied had

Defendant fulfilled their disclosure duties. Synthesizing *Amara III*, the Ninth

Circuit wrote that "[e]quity courts possessed the power to provide relief in the

form of monetary 'compensation' for a loss resulting from a trustee's breach of

duty." *Gabriel*, 773 F.3d at 957. "The surcharge remedy extend[s] to a breach of

trust committed by a fiduciary encompassing any violation of a duty imposed

upon that fiduciary." *Amara III*, 563 U.S. at 442.

In *Amara*, the plan administrator's breach of duty was violation of ERISA's

disclosure provisions pertaining to summary plan descriptions (§§1022(a),

1024(b)) and prior notice of certain plan amendments (§1054(h)), *Amara III*, 563

U.S. at 424-25 – not ERISA's fiduciary duty provision (§1104). Defendant's

argument that surcharge is available only for breach of fiduciary duty is foreclosed by *Amara*.[13] Surcharge is available for Defendant's violations of its §1025 disclosure duties.

### c.   Plaintiffs Properly Plead Entitlement to an Estoppel Remedy.

Defendant's arguments against an estoppel remedy are unavailing. First, Defendant mistakenly analyzes estoppel as though Plaintiffs had alleged it as a freestanding common-law claim. Plaintiffs do not, and for a good reason: the Ninth Circuit no longer recognizes such a claim in the ERISA context after *Amara*. *Gabriel*, 773 F.3d at 956 n.4 (9th Cir. 2014). Estoppel is an equitable remedy, not an independent cause of action. *Id.*

Second, the remedies under §1132(a)(3) are those that were typically available in equity in the days of the divided bench. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); *Amara III*, 563 U.S. at 439. Of course, no special estoppel requirements for ERISA violations existed in the days of the divided bench; the extra requirements that Defendant relies on apply to the standalone "ERISA estoppel" claim, not the traditional equitable remedy. *See Greany v. Western Farm Bureau Life Ins. Co*., 973 F.2d 812, 821-22 (9th Cir. 1992) (pre-*Amara* decision discussing requirements for federal common-law claim of equitable estoppel); *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (same).

Instead, the requirements for an estoppel remedy are those set forth in traditional equity treatises. *Amara III*, 563 U.S. at 441. True, *Gabriel* refers to the "additional requirements" for "equitable estoppel in the ERISA context" that

---

[13] Defendant relies on *Petroff v. Ret. Ben. Plan of Am. Airlines*, 2015 WL 13917970 (C.D. Cal. 2015), but *Petroff* granted judgment on the pleadings to the defendant on the basis, in part, that the plaintiff had not sufficiently alleged loss causation to support a surcharge remedy. *Id.* at *12. Defendant does not challenge Plaintiffs' allegations of loss causation.

apply to a freestanding estoppel claim. *Gabriel*, 773 F.3d at 955. But the *Gabriel* discussion is dicta, both because (1) *Gabriel* acknowledges that there is no longer an "independent cause of action" for "equitable estoppel in the ERISA context," *id.* at 956 n.4, 957, and (2) the *Gabriel* plaintiff could not satisfy the traditional requirements for an estoppel remedy because he knew he was ineligible for benefits. *Id.* at 950. Moreover, the imposition of "additional requirements" would be inconsistent with *Amara*.

Here, Plaintiffs sufficiently plead the elements of estoppel as set forth in the treatises cited by the Supreme Court: (1) words amounting to a misrepresentation of material facts (¶¶32-40); (2) Defendant's knowledge, "either actual or implied, at the time the representations were made, that they were untrue" (¶¶10, 32-40, 57); (3) Plaintiffs' lack of knowledge of the truth (¶57); (4) Defendant's intent or expectation that the representations be acted upon (¶¶56, 57); (5) Plaintiffs' reliance (¶58); and (6) detriment to Plaintiffs (¶¶50-50B, 53-53(B), 55). *See* J. Eaton, Handbook of Equity Jurisprudence § 62, p. 150 (1923) (Attachment A hereto); 3 S. Symons, Pomeroy's Equity Jurisprudence § 805, pp. 191-92 (5th ed.1941) (Attachment B hereto) (both cited in *Amara*, 563 U.S. at 441).

Furthermore, if the extra elements for an estoppel claim translate to estoppel as an ERISA remedy, which they cannot under *Amara*, those elements are adequately pled here. The circumstances are extraordinary: more than six years of pension statements, now admitted to be wildly inaccurate, and affecting multiple similarly situated plan participants. Whether the interpretation of the Plan terms that led to the miscalculations was Defendant's preferred interpretation, as Hewitt contends, or a misinterpretation by Hewitt that Defendant failed to detect is irrelevant – Defendant is the entity with the ERISA-mandated responsibility for ensuring accurate information. *See Bafford II*, 101 F.4th at 652.

Moreover, the Plan document here specifically contemplates estoppel by authorizing the Plan to "honor court orders . . . that require action or inaction not otherwise provided in the Plan document." (Exh. 7 at 1, 4.) Accordingly, Defendant's argument that estoppel is not available to alter the Plan terms is inapplicable. Plaintiffs adequately plead that estoppel is an appropriate remedy for the violations alleged.

**C.     If the Court Grants Defendant's Motion in Whole or in Part, It Should Grant Leave to Amend.**

Where a district court grants a Rule 12(b)(6) or 12(f) motion, it should provide leave to amend unless it is clear the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Here, Defendant's statute of limitations and remedies arguments have not been ruled on previously, so Plaintiffs have had no opportunity to re-plead to address any that the Court accepts. Accordingly, Plaintiffs should be granted leave to amend to address any deficiencies the Court identifies.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

Respectfully submitted,

Dated:  November 21, 2024

RENAKER SCOTT LLP
KANTOR & KANTOR, LLP

By:     */s/ Teresa S. Renaker*
Teresa S. Renaker
Attorneys for Plaintiffs

## CERTIFICATION OF COMPLIANCE

I, Teresa S. Renaker, certify that this brief contains 6,976 words, excluding the materials permitted to be excluded under L.R. 11-6.1, using the word count function of Microsoft Word.

Respectfully submitted,

Dated:  November 21, 2024      RENAKER SCOTT LLP
KANTOR & KANTOR, LLP

By:   */s/ Teresa S. Renaker*
Teresa S. Renaker
Attorneys for Plaintiffs