**O**

# United States District Court
# Central District of California

STEPHEN H. BAFFORD et al.,

        Plaintiffs,

    v.

NORTHROP GRUMMAN
CORPORATION et al.,

        Defendants.

Case № 2:18-cv-10219-ODW (Ex)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE AND DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS [134] [135]**

## I.      INTRODUCTION

Plaintiffs Stephen H. Bafford, Laura Bafford, and Evelyn L. Wilson bring this putative class action against Defendant Administrative Committee of the Northrop Grumman Pension Plan (the "Committee"), asserting violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1025. (Fourth Am. Compl. ("FoAC") ¶¶ 80–86, 107–123, ECF No. 133.)   The Committee moves to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(6).   (Mot. Dismiss & Strike, ECF No. 134.)   The Committee also moves to strike certain remedies and the class allegations under Rule 12(f).   (*Id.*; Mot. Strike Class Allegations ("Mot. Strike Class"), ECF No. 135.)   For the reasons below,

the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss &
Strike and **DENIES** the Motion to Strike Class Allegations.[1]

## II.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs Stephen Bafford and Wilson are retirees and former employees of
Northrop Grumman Corporation ("Northrop").   (FoAC ¶¶ 5–6.)   Plaintiff Laura
Bafford is married to Stephen Bafford and is a beneficiary of the Northrop Grumman
Pension Plan (the "Northrop Plan").   (*Id.* ¶ 7.)   Stephen Bafford and Wilson began
working for Northrop in the 1980s, during which time they accrued pension benefits
under two defined benefit subplans of the Northrop Plan.   (*Id.* ¶¶ 23–25.)   The
Committee is the Plan Administrator and fiduciary of the Northrop Plan under ERISA,
29 U.S.C. §§ 1002(16)(a)(i), 1002(21).   (*Id.* ¶ 9.)   The Committee is therefore
responsible for, among other things, providing pension benefit statements to Northrop
Plan participants in accordance with ERISA's requirements.   (*Id.* ¶ 10.)   Beginning in
2008, the Committee delegated this responsibility to Alight Inc., via its predecessor
Hewitt Associates LLC (collectively, "Alight").   (*Id.* ¶ 11.)

In the late 1990s, Stephen Bafford and Wilson stopped working for Northrop
and began working for the TRW Corporation.   (*Id.* ¶¶ 26–28.)   As TRW employees,
they accrued pension benefits under TRW's pension plan (the "TRW Plan").   (*Id.*
¶ 28.)

In December 2002, Northrop acquired TRW and, as a result, Stephen Bafford
and Wilson became Northrop employees again.   (*Id.* ¶ 29.)   Plaintiffs continued to
accrue benefits under the TRW Plan as Northrop employees.   (*Id.* ¶ 31.)   The TRW
Plan and its benefits are not at issue in this lawsuit.

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the
matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.
[2] All factual references derive from the Fourth Amended Complaint, as well-pleaded factual
allegations are accepted as true for purposes of these Motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009).

Beginning in 2010, Stephen Bafford and Wilson began requesting pension benefit statements for their Northrop Plan benefits through Alight. (*E.g., id.* ¶¶ 36, 39–40.) In the FoAC, Stephen Bafford includes a chart indicating the twelve pension benefit statements he received between March 2010 and June 2016, all of which indicated a monthly 100% joint and survivor annuity benefit of approximately $2,100. (*Id.* ¶ 37.) Wilson requested similar statements from Alight. (*Id.* ¶¶ 39–40.)

Wilson retired in 2014, and Stephen Bafford retired in 2016. (*Id.* ¶¶ 41, 113.) They each began receiving monthly pension benefits in accordance with the estimates and statements Alight had provided them. (*Id.* ¶¶ 42, 46.) Then, in late 2016 and early 2017, Northrop sent them recalculation notices informing them of a systemic error that had resulted in Northrop substantially overestimating and overpaying Plaintiffs' pension benefits. (*Id.* ¶¶ 49–50, 53.) Northrop informed Stephen Bafford that his monthly benefit would be reduced from roughly $2,000 to roughly $800. (*Id.* ¶ 50.) Northrop similarly informed Wilson that her benefits should have been less than half of what they had been up to that point and requested that Wilson repay over $35,000 of the benefits she had already received. (*Id.* ¶¶ 53, 55.)

The error occurred as follows. The subplans in which Plaintiffs are participants are defined benefit pension plans, in which "retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020); (FoAC ¶ 15.) A retiree's fixed payment is based on a pension calculation formula set forth in that retiree's subplan. *See Thole* 590 U.S. at 540; (FoAC ¶15.)

Under Plaintiffs' subplans, a final average pay formula is used to calculate the amount of the defined benefit payments, and the two main considerations are: (1) the number of years of service compared to the employee's age; and (2) the average rate of annual salary ("average earnings") during the employee's highest three years of salary out of the last ten years the employee was covered under the Plan. (FoAC

¶ 16.)  The second consideration is the one Alight miscalculated.  Plaintiffs accrued benefits under the Northrop Plan during their earlier years with Northrop.  When they later returned to Northrop after its acquisition of TRW, they continued to accrue retirement benefits under TRW's plan, not Northrop's.  Thus, the second variable should have been calculated based on Plaintiffs' average earnings during their early years with Northrop, in the late '80s and early '90s.  Instead, Alight calculated Plaintiffs' benefits based on their average earnings during their later years with Northrop, which were higher than their salaries many years prior.  Based on this miscalculation of average earnings, Alight overstated—and Northrop overpaid— Plaintiffs' benefits.  (*Id.* ¶¶ 32–35.)  As mentioned, after discovering this error, Northrop told Stephen Bafford and Wilson that their respective monthly benefits would be reduced and asked Wilson to repay over $35,000 of the benefits she had already received.  (*Id.* ¶¶ 50, 53, 55.)

Based on these events, Plaintiffs asserted claims on behalf of themselves and a putative class of employees for: (1) violation of ERISA, 29 U.S.C. § 1104(a), against Northrop and the Committee; (2) violation of ERISA, 29 U.S.C. § 1104(a), against Alight;  (3) violation  of  ERISA,  29 U.S.C.  § 1025,  against  the  Committee; (4) professional negligence, against Alight; (5) negligent misrepresentation, against Alight;  and  (6) violation  of  ERISA,  29 U.S.C.  § 1106(a),  against  Northrop,  the Committee, and Alight.  (First Am. Compl. ("FAC") ¶¶ 69–106, ECF No. 32.)  In April 2019, the Committee and Alight each moved to dismiss the FAC, and the Court granted the motions, dismissing the fourth and fifth claims with prejudice and without leave to amend, and dismissing all other claims with leave to amend.  (Order Dismissing FAC, ECF No. 68.)  Instead of amending, Plaintiffs filed a Notice of Intent Not to Amend, (ECF No. 69), and the Court entered Judgment in favor of Defendants, (J., ECF No. 73).

Plaintiffs appealed, and on April 15, 2021, the Ninth Circuit issued its opinion, affirming in part and vacating in part the Court's dismissal.  *Bafford v. Northrop*

*Grumman Corp.* (*Bafford I*), 994 F.3d 1020 (9th Cir. 2021). The Ninth Circuit affirmed the Court's dismissal of the ERISA claims (the first, second, third, and sixth claims) and confirmed that this Court correctly provided leave to amend the third claim. *Id.* at 1030. The Ninth Circuit also found that, contrary to this Court's prior determination, Plaintiffs' negligence and negligent misrepresentation claims were not preempted by ERISA. *Id.* at 1031. It vacated the dismissal of the negligence and negligent misrepresentation claims and remanded for further proceedings. *Id.* at 1032.

Following the Ninth Circuit's mandate, Plaintiffs filed the Second Amended Complaint ("SAC"), (ECF No. 83). Plaintiffs omitted the first, second, and sixth claims from the SAC, maintaining the third claim against the Committee and the fourth and fifth claims against Alight. (SAC ¶¶ 69–106.) The Committee and Alight each moved to dismiss, and the Court (i) dismissed the third claim against the Committee with limited leave to amend, (ii) deferred ruling on Alight's motion as to the fourth and fifth claims, and (iii) ordered additional briefing on supplemental jurisdiction. (Order Dismissing SAC, ECF No. 100.)

After Plaintiffs filed a Third Amended Complaint ("TAC"), (ECF No. 101), and the Court reviewed the parties' additional briefing, the Court declined supplemental jurisdiction over claims against Alight, and dismissed it from this action, (Order Dismissing Alight, ECF No. 111). The Court then ordered Plaintiffs to further amend their TAC to narrow the scope of their claims consistent with its prior order dismissing the SAC. (Order File Fourth Am. Compl., ECF No. 113.) The Court subsequently struck Plaintiffs' further amended complaint (styled as the Fourth Amended Complaint) because Plaintiffs included allegations outside of the scope of the leave to amend the Court had granted. (Order Striking Fourth Am. Compl., ECF No. 115.) Instead of amending, Plaintiffs filed a Notice of Intent Not to Amend, (ECF No. 116), and the Court entered Judgment in favor of Defendants, (J., ECF No. 117.)

Plaintiffs again appealed, and on May 9, 2024, the Ninth Circuit issued its second opinion. *Bafford v. Northrop Grumman Corp.* (*Bafford II*), 101 F.4th 641

(9th Cir. 2024).  The Ninth Circuit found that Plaintiffs' third claim—ERISA claims against the Committee for violation of § 1025(a)(1)(B)(i) and § 1025(a)(1)(B)(ii)— should not have been dismissed.  *Id.* at 649–55.  Following the Ninth Circuit's mandate, Plaintiffs filed the Fourth Amended Complaint, which is the operative complaint.  In it, Plaintiffs raise two claims against the Committee: (1) violation of § 1025(a)(1)(B)(ii)    ("Count III")    and    (2) violation    of    § 1025(a)(1)(B)(i) ("Count VII").  (FoAC ¶¶ 80–86, 107–23.)  In Count III, Plaintiffs allege that the Committee failed to provide accurate statements of participants' Northrop Plan benefits in response to written requests in violation of § 1025(a)(1)(B)(ii).  (*Id.* ¶¶ 80– 86.)  In Count VII, Plaintiffs allege that the Committee failed to furnish participants a pension benefit statement at least once every three years or provide participants notice of availability of the pension benefit statements and how participants may obtain such a statement at least once each year in violation of § 1025(a)(1)(B)(i).  (*Id.* ¶¶ 107–23.)

The Committee now files two motions.  In the first motion, the Committee moves to dismiss Plaintiffs' claims under Rule 12(b)(6) and to strike certain remedies under Rule 12(f).  (Mot. Dismiss & Strike.)  In the second motion, the Committee moves to strike Plaintiffs' class action allegations under Rule 12(f).  (Mot. Strike Class.)  The motions are fully briefed.  (Opp'n Mot. Dismiss & Strike, ECF No. 141; Reply Mot. Dismiss & Strike, ECF No. 145; Opp'n Mot. Strike Class, ECF No. 142; Reply Mot. Strike Class, ECF No. 144.)

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B.    Rule 12(f)—Motion to Strike**

Under Rule 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The decision on whether to grant a motion to strike is at the court's discretion. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). As with a motion to dismiss, the court must view the pleadings in the light most favorable to the non-moving party. *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012).

Courts may grant a motion to strike "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Courts may also grant a motion to strike to streamline the resolution of the action and focus the fact finder's attention on the real issues in the case. *See Fantasy*, 984 F.2d at 1528. Motions to strike are generally disfavored and should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of litigation." *Shabaz v. Polo*

*Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1209 (C.D. Cal. 2008).  "Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief."  *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks omitted).

## IV.     MOTION TO DISMISS AND STRIKE REMEDIES

The Committee moves to dismiss Plaintiffs' Fourth Amended Complaint for failure to state a claim under Rule 12(b)(6) and to strike certain remedies under Rule 12(f).  (Mot. Dismiss & Strike 8–21.)

**A.     Motion to Dismiss**

As a reminder, Plaintiffs raise two claims against the Committee.  In Count III, Plaintiffs allege that the Committee failed to provide accurate statements of participants' Northrop Plan benefits in response to written requests in violation of § 1025(a)(1)(B)(ii).  (*Id.* ¶¶ 80–86.)  In Count VII, Plaintiffs allege that the Committee failed to furnish participants a pension benefit statement at least once every three years or provide participants notice of availability of the pension benefit statements and how participants may obtain such a statement at least once each year in violation of § 1025(a)(1)(B)(i).  (*Id.* ¶¶ 107–23.)  The Court begins with the Committee's argument that, if successful, would defeat both causes of action—that the ministerial exception precludes its liability.  Next, the Court addresses the Committee's arguments specific each cause of action.  Finally, the Court turns to the Committee's argument that Laura Bafford should be dismissed from this action.

*1.     Ministerial Exception*

The Committee argues that the ministerial exception applies, which means that it cannot be held liable for either of Plaintiffs' claims.  (Mot. Dismiss & Strike 14 (emphasis omitted).)  Per the Committee, under the ministerial exception, a "fiduciary will not be held liable simply because a ministerial, non-fiduciary agent has given incomplete or mistaken advice to an insured."  (*Id.* at 15 (quoting *Kenseth v. Dean*

*Health Plan, Inc.*, 610 F.3d 452, 472 (7th Cir. 2010)).)  The Ninth Circuit concluded that the "calculation of pension benefits is a ministerial function that does not have a fiduciary duty attached to it."  *Bafford I*, 994 F.3d at 1028   The Committee asserts that because the conduct of which Plaintiffs complain—failure to send accurate pension benefit notices—is a ministerial function it delegated to Alight, the Committee cannot be held liable for violations related to these complaints.  (*Id.* at 14–16 (citing *Bafford I*, 994 F.3d at 1028).)

In support, the Committee cites Department of Labor guidance on the question of whether "[i]n discharging fiduciary responsibilities, may a fiduciary with respect to a plan rely on information, data, statistics or analyses provided by other persons who perform purely ministerial functions for such plan," such as a plan administrator. 29 C.F.R. § 2509.75-8; (*see* Mot. Dismiss & Strike 14–16.)  The Department of Labor stated that a plan fiduciary may rely on this information "furnished by persons performing ministerial functions for the plan," so long as the plan fiduciary "has exercised prudence in the selection and retention of such persons."   29 C.F.R. § 2509.75-8.   Thus, per the Committee, Plaintiffs' claims fail as a matter of law because they allege do not allege that the Committee failed to exercise ordinary care in selecting and retaining Alight or that the Committee "was aware, or should have been aware, that [Alight's] alleged performance of ministerial functions was negligent."  (Mot. Dismiss & Strike 16); *see* 29 U.S.C. § 1132(c)(1) (stating that an administrator that fails to meet disclosure requirements "may in the court's discretion be personally liable").

For this leap from the Department of Labor guidance to the Committee being shielded from liability, the Committee relies on two inapposite cases.  First, the Committee cites *Kenseth*.  (Mot. Dismiss & Strike 15 (citing *Kenseth*, 610 F.3d at 472).)  As noted above, in that case, the Seventh Circuit held that a "fiduciary will not be held liable simply because a ministerial, non-fiduciary agent has given incomplete or mistaken advice to an insured."  (*Id.* (quoting *Kenseth*, 610 F.3d

at 472).)  But that ruling concerned the viability of a breach of fiduciary duty claim, not one for the statutory violations under § 1025(a) at issue here.  *See Kenseth*, 610 F.3d at 471.

Second, the Committee invokes *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2006).  (Mot. Dismiss & Strike 15–16.)  In that case, Christensen brought ERISA claims against his employer's plan for reducing the benefits he would receive after it performed a final benefit calculation.  462 F.3d at 916.  These final benefits were less than the estimates the plan had previously provided Christensen. *Id.*  The Eighth Circuit held that the district court did not abuse its discretion by granting summary judgment and declining to impose a penalty "even if § 1025(a) was technically violated."  *Id.* at 919.

The Committee relies on the Eighth Circuit's comment that the inaccurate information about plan benefits in that case was "clearly the result of a clerical or ministerial error made by someone . . . who was not at the time acting in a fiduciary capacity."  *Christensen*, 462 F.3d at 918; (*see* Mot. Dismiss & Strike 15.)  The Committee also quotes the Eighth Circuit's finding that statutory damages against the committee in that case would be inappropriate because "the errors were not committed by the [c]ommittee."  (Mot. Dismiss & Strike 15 (emphasis omitted) (quoting *Christensen*, 462 F.3d at 919).)  Neither quote helps the Committee.  The first quotation concerns a duty of care claim not present here.  *Id.* at 918.  The second references an argument the Ninth Circuit previously rejected in this case.  *See Bafford II*, 101 F.4th at 656–57.

In ruling that the district court did not abuse its discretion, the Eighth Circuit held:

> The Plan provided Christensen with prompt written benefit estimates in response to every request. The estimates proved to be incorrect, but the errors were not committed by the [c]ommittee, the plan administrators who would be personally liable for § 1025(a) penalties. The estimates disclosed their non-binding nature and the erroneous use of

pension band 119, an error that Christensen could have detected had he reviewed the estimates more carefully. There is no evidence of bad faith on the part of anyone, which is relevant to the discretionary penalty decision. In these circumstances, imposition of a statutory penalty would be unjust.

462 F.3d at 919 (internal citation omitted).

In *Bafford II*, the Ninth Circuit rejected the Committee's reliance on *Christensen*, holding that a lack of bad faith does not preclude a court from awarding statutory penalties under § 1132(c)(1).  101 F.4th at 656–57.  First, the Ninth Circuit explained that *Christensen* "did not hold that the absence of bad faith precludes the application of § 1132(c)(1)'s penalty provision"; instead it held that it is only a "factor relevant to the discretionary penalty decision." *Id.* (internal quotation marks omitted). Second, the Ninth Circuit noted that, unlike in *Christensen*, "the Committee does not argue that Plaintiffs could have determined from the information they received that the statements erroneously calculated their benefit." *Id.* at 657.  Last, the Ninth Circuit "decline[d] to read" a bad faith "requirement into the statute," where "[t]he plain text of the penalty provision does not require a plan administrator to act in bad faith to be liable for a penalty." *Id.*

Now, the Committee argues that the Ninth Circuit's ruling "concerned only whether bad faith was necessary to state a claim for statutory penalties—not the appropriateness of § 1025(a) penalties when a third party allegedly committed a ministerial mistake."  (Reply Mot. Dismiss & Strike 7.)   In its argument, the Committee cites *Christensen*'s language that "the errors were not committed by the Committee."  (Mot. Dismiss & Strike 15 (emphasis omitted) (quoting *Christensen*, 462 F.3d at 919).)   As can be seen from the above excerpt from *Christensen*, the Eighth Circuit made this observation in the context of rejecting liability without bad faith.  *See Christensen*, 462 F.3d at 919.  Even the Committee's brief on appeal to the Ninth Circuit concurs: in arguing that bad faith is required for statutory penalties, the Committee quoted the very language from *Christensen* it now argues instead supports

the purported ministerial mistake exception.    *See* Br. for Def.-Appellee at 37,
*Bafford II*, 191 F.4th 641 (9th Cir. 2024) (No. 22-55634), 2022 WL 18135938, at *37.

Accordingly, this Court reads *Christensen* to only invoke a bad faith
requirement, not an independent ministerial exception.    To the extent the ministerial
nature of the violation is relevant, it is only relevant in determining whether a plan
administrator acted in bad faith, a requirement the Ninth Circuit declined to read into
the statute.  *Bafford II*, 101 F.4th at 657.  Like with bad faith, "[t]he plain text of the
penalty provision does not require," *id.*, that a plan administrator's violation was
discretionary (i.e., non-ministerial) for an administrator to be liable for the claims
Plaintiffs assert in the Fourth Amended Complaint.    Thus, the Court **DENIES** the
Committee's Motion to Dismiss & Strike to the extent it seeks to dismiss Plaintiffs'
claims based on its asserted ministerial exception.

> ### 2.    *Count VII*

The Committee argues that Plaintiffs' claim for violation of § 1025(a)(1)(B)(i)
fails for independent reasons.    (Mot. Dismiss & Strike 8–12.)    Recall, through this
claim, Plaintiffs allege the Committee failed to (1) furnish a pension benefit statement
at least once every three years, or (2) provide participants notice of availability of the
pension benefit statements and the ways in which the participant may obtain such a
statement at least once each year.  (FoAC ¶¶ 107–23.)    First, the Committee contends
that Plaintiffs cannot state a claim for violations before 2007 because the statutory
requirement did not exist until then.    (Mot. Dismiss & Strike 9.)    Second, the
Committee argues that the statute of limitations bars Plaintiffs' claims for violations
before 2015.  (*Id.* at 9–11.)  Third, the Committee maintains that the Baffords' claims
for violations from 2014 to 2016 fail because Stephen Bafford received the
documentation required by the statute during that period.  (*Id.* at 11–12.)

> #### a.  Pre-2007 Conduct

Plaintiffs allege that the Committee "was required to furnish Mr. Bafford with
either a pension benefit statement every three years or an annual notice of the

availability of a pension benefit statement and how to obtain one" from December 2002 to September 2016, and that Wilson was entitled to the same from December 2002 through January 2014. (FoAC ¶¶ 114, 117.) Plaintiffs further allege that the Committee did not furnish these statements during that period. (*Id.* ¶¶ 107–23.)

The Committee's obligation, however, only began on January 1, 2007, when Congress passed the legislation that required such statements. *See* Pension Protection Act of 2006, Pub. L. No. 109-280 § 508(c), 120 Stat. 952. Plaintiffs do not contest this. (*See* Opp'n Mot. Dismiss & Strike 7–8.) Instead, they argue that the Committee's request to dismiss claims for this period is an improper attempt "to edit Plaintiffs' complaint" because they bring a cause of action for violations from 2002 through 2016, not a standalone claim for violations from 2002 to 2006. (*Id.* at 7.) They contend that "[t]he Court need not consider arguments that do not address entire causes of action" when ruling on a motion to dismiss. (*Id.*)

The Court declines Plaintiffs' invitation for it to ignore the Committee's basis for dismissal. This is a clear-cut legal issue. The Committee cannot be liable for actions taken (or not taken) prior to the statute's effectiveness. That Plaintiffs organized their claims into one cause of action, as opposed to separate causes of action for each violation, makes no difference. To decline to dismiss on this basis would encourage plaintiffs to organize complaints in such a way that would permit clearly meritless claims to advance past the motion to dismiss stage. In any event, § 1132(c)(1) is clear that "each violation . . . shall be treated as a *separate* violation." (emphasis added). And Plaintiffs are seeking statutory damages for "each *separate* failure to meet" ERISA's requirements. (FoAC, Prayer for Relief, Count VII(E).) Accordingly, to the extent Plaintiffs allege the Committee violated § 1025(a)(1)(B)(ii) for failure to provide statements before 2007, the Court **DISMISSES WITH PREJUDICE** those claims.

b. Conduct from 2007 to 2014

Next, the Committee contends that the statute of limitations bars Plaintiffs'
pre-2015 claims for failure to furnish a triennial pension benefit statement or an
annual notice of availability.  (Mot. Dismiss & Strike 9–11.)  The parties agree that a
three-year statute of limitations applies to these claims.  (*See id.* at 9; Opp'n Mot.
Dismiss & Strike 8.)  They disagree about the date the statute of limitations began to
accrue.  The Committee argues that accrual began the day after the pension benefit
statement or annual notice of availability was due.  (Mot. Dismiss & Strike 9–10.)
Conversely, Plaintiffs assert that accrual began when they learned that the information
the Committee provided was inaccurate.  (Opp'n Mot. Dismiss & Strike 8.)

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only
when the running of the statute of limitations is apparent on the face of the
complaint."  *Thomas v. County of Humboldt*, 124 F.4th 1179, 1191 (9th Cir. 2024).
"Under federal law, a cause of action accrues when the plaintiff knows or has reason
to know of the injury that is the basis of the action."  *Pisciotta v. Teledyne Indus., Inc.*,
91 F.3d 1326, 1331 (9th Cir. 1996).  "[T]he accrual of an ERISA cause of action is
determined by federal" law.  *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability
Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000).

Here, Plaintiffs allege the Committee violated § 1025(a)(1)(B)(i) by failing to
furnish Plaintiffs with a triennial pension benefit statement or an annual notice of
availability within the specified period.  (FoAC ¶¶ 115, 118, 122.)   Therefore,
Plaintiffs would have been injured the day after the specified period elapsed without
having received the statement or notice required by the statute.  Plaintiffs also would
have "reason to know of the injury," *Pisciotta*, 91 F.3d at 1331, that same day.  In
other words, Plaintiffs would have known whether they received the triennial pension
benefit statement or annual notice of availability the day after the specified period
elapsed.  For example, on January 1, 2015, Plaintiffs would have known whether they
received an annual notice of availability from January 1, 2014, to December 31, 2014.

They also would known whether they received a pension benefit statement from January 1, 2012, to December 31, 2014. Therefore, in this example, Plaintiffs' claim for violations from January 1, 2012, to December 31, 2024, began to accrue on January 1, 2015.

The Court rejects Plaintiffs' arguments to the contrary. Plaintiffs assert that an ERISA non-fiduciary breach "claim accrues when there has been a 'clear repudiation' of a right to benefits." (Opp'n Mot. Dismiss & Strike 9.) To hold otherwise, they argue, "would have the undesirable effect of requiring plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses." (*Id.* (alteration in original) (quoting *Romero v. Allstate Corp*, 404 F.3d 212, 224 (3rd Cir. 2005).)

While this may be the rule for some ERISA causes of action, none of the cases on which Plaintiffs rely support applying this rule to Plaintiffs' § 1025(a)(1)(B)(i) claims. Some of Plaintiffs' cited cases concern a claim related to denial of benefits, which is not analogous to Plaintiffs' statutory violation claims regarding notice failures. *See, e.g.*, *Martin v. Constr. Laborer's Pension Tr. for S. Cal.*, 947 F.2d 1381, 1383 (9th Cir. 1991) (seeking credit for years worked that were improperly cancelled); *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1422 (9th Cir. 1988) (raising claim related to an amendment of the plan that decreased benefits).

Other cases Plaintiffs cite concern conditional requirements under which an administrator must provide notice only under certain circumstances not in the employee's control. *See, e.g.*, *Romero*, 404 F.3d at 218–19, 225 (alleging defendant failed to provide notice when it added an amendment that "caused a significant reduction" in benefits (quoting 29 U.S.C. § 1054(h))); *Charles v. Pepco Holdings, Inc.*, No. CIV. 05-702-SLR, 2006 WL 1652749, at *2 (D. Del. June 12, 2006) (same). In these failure-to-give-notice cases, an employee may not learn that notice was

1   required until well after notice was due.  Thus, the employee would only learn they
2   are injured after they find out notice was required.

3          For example, § 1054(h) states that a pension plan may not be amended that
4   would significantly reduce the rate of future benefit accrual *unless* the plan
5   administrator provides required notice to employees.  Let's say, for instance, that a
6   plan administrator amends a pension plan such that it significantly reduces the rate of
7   future benefit accrual, but the plan administrator does not provide the required notice
8   to the employee.  This would violate § 1054(h).  In that case, the employee will not
9   know that notice was required until she learns that the amendment significantly
10  reduces the rate of future benefit accrual.  In other words, because notice is only
11  required under certain circumstances (i.e., when an amendment significantly reduces
12  benefits), an employee could not possibly learn of the injury (i.e., the failure to
13  provide notice) until she learns of the amendment and its effect.  Without knowing
14  about the amendment, she would not have known notice was required.

15         Therefore, in that situation, requiring the "clear repudiation" before a claim
16  begins to accrue may make sense.  As the *Romero* court explained,

17         It would make no sense, and indeed do a remarkable disservice to the
18         underlying purposes of ERISA and its disclosure requirements, to deem a
           notice claim to have accrued before a plaintiff knows or should have
19         known that an amendment has the effect which triggers the notice
           requirement.  Thus, it is appropriate to use the federal discovery rule to
20         discern the date of accrual of the ERISA § 204(h) claim made here.
21

22  404 F.3d at 225.  That concern is absent in cases like this one, where the notice
23  requirement is absolute, not conditional.  In Plaintiffs' case, under *all* circumstances,
24  the Committee was required to provide a triennial pension benefits statement or
25  annual notice of availability.  There is not some fact unknowable to the employee that
26  triggers the notice requirement.  If the Committee did not provide notice by the
27  deadline, Plaintiffs would know this fact as the deadline elapsed, and thus know they
28  were injured. Accordingly, the statute of limitations bars Plaintiffs' claims to the

extent they are premised on the Committee's failure to provide a triennial pension benefits statement or annual notice of availability before 2015.

But this does not bar Plaintiffs' entire claim for pre-2015 violations. In addition to alleging that the Committee did not provide these documents to them, Plaintiffs allege that "even if the Administrative Committee did provide a pension benefit statement or an annual notice of how to obtain a pension benefit statement, said statement was inaccurate and thus did not meet ERISA's requirements." (FoAC ¶¶ 115, 118.) If providing an inaccurate statement violates § 1025(a)(1)(B)(i)'s requirement (as opposed to providing no statement at all), then the statute of limitations for such a violation does not necessarily start to run the day after the notice requirement was due. In that situation, an employee may not know they were injured until they discover that the provided statement was inaccurate. Therefore, the statute of limitations would not begin to run on the claim for inaccuracies until the employee discovered the inaccuracy of the statement. Here, Plaintiffs allege that they did not discover an error in the statements until 2017 when they were notified that their benefits were being reduced. (FoAC ¶¶ 50, 53). Thus, if providing an inaccurate statement can violate § 1025(a)(1)(B)(i)'s requirement, then the statute of limitations would not bar Plaintiffs' pre-2015 claims.

Indeed, providing an inaccurate statement can violate § 1025(a)(1)(B)(i)'s requirement. The Ninth Circuit's decision in *Bafford II* supports this reading. Section 1025(a)(1)(B) provides that an administrator shall furnish a pension benefit statement as required under § 1025(a)(1)(B)(i) (Count VII) and § 1025(a)(1)(B)(ii) (Count III). In *Bafford II*, the Ninth Circuit held that "a pension benefit statement reporting a substantially inaccurate benefit amount does not comply with § 1025(a)(1)(B)(ii)." 101 F.4th at 652. In so holding, the Ninth Circuit interpreted the very same text that underpins § 1025(a)(1)(B)(i)'s furnishing requirement. *See* 29 U.S.C. § 1025(a)(1)(B) ("The administrator . . . shall furnish a pension benefit statement . . . .) The Ninth Circuit's reasoning in interpreting § 1025(a)(1)(B)(ii) thus

applies equally to § 1025(a)(1)(B)(i). Therefore, Plaintiffs state a claim under § 1025(a)(1)(B)(i) for the Committee providing a substantially inaccurate triennial pension benefit statement before 2014, and the Court cannot conclude at this time that the statute of limitations bars this claim in its entirety. (*See* FoAC ¶¶ 115, 118.)

In short, the statute of limitations bars Plaintiffs' claims for pre-2015 violations of § 1025(a)(1)(B)(i) to the extent that Plaintiffs assert the Committee provided *no statement* that purported to satisfy their disclosure obligations. However, the statute of limitations does not bar Plaintiffs' claims for pre-2015 violations of § 1025(a)(1)(B)(i) to the extent Plaintiffs allege that the Committee provided *substantially inaccurate triennial* pension benefit statements. As a portion of Plaintiffs' claims for violations from 2007 to 2014 survives, the Court saves for another day whether Plaintiffs can state a claim for the Committee providing substantially inaccurate *annual* notice of pension statement availability. Similar to the inaccurate triennial notice, to the extent a claim for a substantially inaccurate annual notice violates § 1025(a)(1)(B)(i), Plaintiffs' alleged discovery of the error in 2017 means that the statute of limitations would not bar these claims.

### c. Post-2013 Conduct

Next, the Committee argues that Plaintiffs cannot state a claim for the its purported failure to provide a triennial pension benefit statement or annual notice of availability after 2013 because it furnished an annual notice of availability in the plan's annual funding notice ("AFN") in 2014, 2015, and 2016. (Mot. Dismiss & Strike 11.) The Committee asks the Court to incorporate these documents by reference, a request the Court **GRANTS**. (Def.'s Req. Incorporation by Reference, ECF No. 134-9; Decl. Douglas A. Smith ISO Mot. Dismiss & Strike ("Smith Decl.") Ex. 1 ("AFNs"), ECF No. 134-4.)[3]

---

[3] The Committee also asks the Court to incorporate by reference retirement plan pension estimate calculation statements for Stephen Bafford and Wilson. (Smith Decl. Exs. 2–3, ECF Nos. 139-5, 139-6.) Further, Plaintiffs ask the Court to incorporate by reference and take judicial notice of various documents, including pension plan recalculation notices the Committee sent to Plaintiffs and

In *Bafford II*, the Ninth Circuit commented that the AFNs "appear to comply with and that the "record before" the court showed "that the Committee provided . . . Annual Funding Notices in 2014, 2015, and 2016." 101 F.4th at 650. Based on this, the Committee asserts that the AFNs establish that Plaintiffs have no claim for 2014, 2015, and 2016. (Mot. Dismiss & Strike 11.)

The Ninth Circuit did not go so far. *See* 101 F.4th at 650 (declining to dismiss claim). To satisfy § 1025(a)(3)(A), the Committee must have "provide[d] to the participant notice of the availability." But the Committee does not point to anywhere in the AFNs to support that it actually provided the AFNs to Plaintiffs. Therefore, Plaintiffs' failure to oppose the Committee's request to incorporate the AFNs by reference does not mean that they admit they received the notices. (*See* Reply Mot. Dismiss & Strike 4.) In fact, Plaintiffs explicitly allege that they did not receive the AFNs. (*See* FoAC ¶¶ 40J–40J(1), 115, 118.) Accordingly, at this stage, Plaintiffs adequately state a claim for the Committee's violation of § 1025(a)(1)(B)(i).

In sum, the Court **DISMISSES WITH PREJUDICE** Count VII to the extent Plaintiffs allege the Committee violated § 1025(a)(1)(B)(ii) for failure to provide statements before 2007. Conversely, the Court **DENIES** the Committee's motion to the extent it seeks to dismiss Plaintiffs' claims in Count VII that the Committee violated § 1025(a)(1)(B)(i) for conduct from 2007 to 2016.

*3.    Count III*

The Committee also moves to dismiss Plaintiffs' claim for violation of § 1025(a)(1)(B)(ii). (Mot. Dismiss & Strike 12–18.) Recall, under this section, the Committee must have furnished Plaintiffs pension benefit statements upon request. The Court rejects each of the Committee's arguments. First, as discussed, the Court disagrees with the Committee's contention that it cannot be liable for violating this

---

documents filed in Plaintiffs' state court case against Alight. (Pls.' Request Req. Incorporation by Reference, ECF No. 143.) Because the Court reaches its conclusions without relying on those documents, it **DENIES** the requests. (ECF Nos. 134-9, 143.)

section because "calculation of pension benefits is a ministerial function."  (Mot. Dismiss & Strike 14 (emphasis omitted).)  Second, the Ninth Circuit has already held that "Plaintiffs adequately alleged that the Committee violated § 1025(a)(1)(B)(ii)," *Bafford II*, 101 F.4th at 652, so the Court rejects any argument to the contrary, (*see* Mot. Dismiss & Strike 13–14).    Ultimately, § 1025(a)(1)(B)(ii) requires the Committee to have furnished Plaintiffs pension benefit statements when requested and, whether by fault of the Committee or Alight, Plaintiff alleges that the Committee did not furnish such statements.  (*See* FoAC ¶¶ 80–86.)

Further, the Committee moves to dismiss seven of Steven Bafford's twelve written request claims because § 1025(b) provides that "[i]n no case shall a participant or beneficiary of a plan be entitled to more than 1 statement . . . in any 12-month period."  (Mot. Dismiss & Strike 17.)  Seven of Steven Bafford's claims are based on requests and allegedly inaccurate responses that occurred within twelve months of each other.  (*Id.*)  For example, in February 2013, he requested two statements, and the Committee responded to both requests separately.  (*Id.*)  Therefore, the Committee argues, Steven Bafford cannot state a claim based on the second request and response because this would be more than one statement (and thus more than one violation) in a twelve-month period.  (*Id.*)

Even if Plaintiffs can only state a claim based on one statement per year, the Court declines, at this stage, to dismiss any of Plaintiffs' claims on these bases.  The Court will not decide for Plaintiffs under which inaccurate statement they should assert claims (e.g., February 2013 or May 2014), and the Court will not provide an advisory opinion on how the statute treats certain issues that may or may not come up later in this case (e.g., if the first response to a written request complied with the statute, but the second one did not).

Accordingly, the Court **DENIES** the Committees' motion to dismiss Plaintiffs' claims in Count III for violating § 1025(a)(1)(B)(ii).

1        *4.    Laura Bafford*

2        The Committee moves to dismiss Laura Bafford from this case. (Mot. Dismiss

3 & Strike 17–18.)

4        Plaintiffs do not address the Committee's contention that Laura Bafford cannot

5 bring a claim under § 1025(a)(1)(B)(i) (Count VII). (*See* Opp'n Mot. Dismiss &

6 Strike); *Heraldez v. Bayview Loan Servicing, LLC*, No. 5:16-cv-01978-R (DTBx),

7 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes a

8 waiver or abandonment of the issue."), *aff'd*, 719 F. App'x 663 (9th Cir. 2018).

9        As to Laura Bafford's claim under § 1025(a)(1)(B)(ii) (Count III), the

10 Committee concedes that beneficiaries may request pension benefit statements, but

11 argues that she does not allege that she ever made a request. (Mot. Dismiss &

12 Strike 18.) In response, Plaintiffs assert that Steven Bafford "made his statement

13 requests on behalf of" Laura Bafford and himself. (Opp'n Mot. Dismiss & Strike 17.)

14 But Plaintiffs do not allege this in the Fourth Amended Complaint. (*See, e.g.*, FoAC

15 ¶ 36 ("Mr. Bafford began requesting pension benefit statements . . . .").)

16        Accordingly, Laura Bafford does not state a claim for relief, and the Court

17 **GRANTS** the Committee's motion to dismiss Laura Bafford from this action. The

18 Committee has shown that "amendment would be futile," *Carrico v. City & County of*

19 *San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011), only with respect to Count VII,

20 so dismissal as to Laura Bafford's Count III is **WITH LEAVE TO AMEND**.

21 **B.    Motion to Strike Certain Remedies**

22        The Committee moves under Rule 12(f) to strike certain remedies from the

23 Fourth Amended Complaint. (Mot. Dismiss & Strike 18–21.) In particular, the

24 Committee asks the Court to strike the following remedies Plaintiffs seek:

25 (1) estopping the Committee from denying "that Plaintiffs and Class Members are

26 entitled to benefits under the Plans consistent with the statement provided to Plaintiffs

27 and Class [M]embers," (2) surcharging the Committee "in the amount necessary to

28 place Plaintiffs and Class Members in the position they would have occupied but for"

the Committee's breaches of its duties, and (3) reforming the Northrop Plan "to provide the final average pay benefits promised to Plaintiffs and Class [M]embers." (FoAC, Prayer for Relief, Count III(B)–(C), Count VII(B)–(D); *see* Mot. Dismiss & Strike 18–21.)

Plaintiffs argue that the Court need not address each remedy individually because Rule 12(f) does not permit a district court to dismiss these remedies when the Committee argues only that they are legally unavailable.  (Opp'n Mot. Dismiss & Strike 17–19.)  The Committee disagrees.  (Reply Mot. Dismiss & Strike 8–9.)

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Accordingly, the Court begins by determining whether these challenged remedies are: "(1) an insufficient defense;    (2) redundant;    (3) immaterial;    (4) impertinent;    or (5) scandalous."  *Whittlestone*, 618 F.3d at 973–74.  The Committee does not invoke any of these bases for its motion.  (*See* Mot. Dismiss & Strike 18–21; Reply Mot. Dismiss & Strike 8–10.)  Instead, the Committee argues that these remedies should be stricken because they are unavailable to Plaintiffs as a matter of law.  (Reply Mot. Dismiss & Strike 9.)

In *Whittlestone*, the Ninth Circuit held "that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."  618 F.3d at 974–75.  *Whittlestone* is not limited to damages but extends to equitable remedies.  *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) (denying motion to strike plaintiffs' request for injunctive relief); *Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 869 (C.D. Cal. 2016) (denying motion to strike plaintiffs' request for injunctive relief and dismissing claim *sua sponte* due to court's independent obligation to examine whether a plaintiff has standing).

1    The Committee argues that "[w]hile motions to strike are disfavored, courts
2    may strike ERISA remedies that are legally unavailable." (Reply Mot. Dismiss &
3    Strike 9.)    But neither the Committee, nor the one case it cites, address why
4    *Whittlestone* does not extend to requests for declaratory and injunctive relief under
5    ERISA.  (*Id.* (citing *Kimberly v. Sharp Rees-Stealy Med. Grp. Inc. Grp. Long Term*
6    *Disability Ins. Plan*, No. 08-CV-157-MMA (POR), 2012 WL 12960587, at *3
7    (S.D. Cal. Mar. 19, 2012)).)    Accordingly, the Court finds that *Whittlestone* applies
8    here and **DENIES** the Committee's motion to strike these remedies.

9    In its Reply, the Committee asks that "if the Court is not inclined to strike under
10   Rule 12(f)," then it should "dismiss Plaintiffs' remedies under Rule 12(b)." (Reply
11   Mot. Dismiss & Strike 9.)  But, in its motion, the Committee does not move to dismiss
12   these remedies under Rule 12(b).[4]  (*See* Mot. Dismiss & Strike 18–21.)    While the
13   Committee moves to dismiss the entire Fourth Amended Complaint for failure to state
14   a claim, nowhere in its motion does it argue that these remedies should be
15   independently dismissed under Rule 12(b)(6) because they are legally unavailable.
16   (*See id.*)    Instead, these remedies would only be dismissed under Rule 12(b)(6) if
17   Counts III and VII were dismissed in their entirety.  Because the Committee has not
18   moved to dismiss these remedies for failure to state a claim under Rule 12(b)(6), the
19   Court declines to dismiss these remedies on this basis.  *Zamani v. Carnes*, 491 F.3d
20   990, 997 (9th Cir. 2007) (affirming district court's decision to reject points raised for
21   the first time in reply).

22
23
24

---

25   [4] This is unlike the Committee's prior motions to dismiss, in which the Committee moved to dismiss
     Plaintiffs' estoppel, surcharge, and reformation remedies under Rule 12(b)(6).  (*See* Mem. P & A
26   ISO Northop Defs.' Mot. Dismiss Compl. 16–21, ECF No. 22-1 (estoppel and surcharge); Mem.
     P & A ISO Northrop Defs.' Mot. Dismiss FAC 22–25, ECF No. 42-1 (estoppel and surcharge);
27   Mem. P & A ISO Committee's Mot. Dismiss SAC 12–17, ECF No. 84-1 (estoppel, surcharge, and
     reformation).)    Thus, the Committee knows how to seek dismissal of these remedies under
28   Rule 12(b)(6) if that is what it intended to do in this motion.

## V.    MOTION TO STRIKE CLASS ACTION ALLEGATIONS

The Committee separately moves to strike Plaintiffs' class allegations because Plaintiffs cannot certify a class under Rule 23(b)(1)(A), 23(b)(1)(B), or 23(b)(2). (Mot. Strike Class 1–3.)

Under Rule 12(f), class allegations may be stricken from a complaint if "the allegations make it obvious that classwide relief is not available" under Rule 23. *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. 2:15-cv-00153-BRO (SPx), 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015).  Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks omitted). Ordinarily, "Rule 23 is the better vehicle to test the propriety of class certification." *Ashton v. J.M. Smucker Co.*, No. 5:20-cv-00992-JGB (SHKx), 2020 WL 8575140, at *16 (C.D. Cal. Dec. 16, 2020).  But "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Dean v. Colgate-Palmolive Co.*, No. 5:15-cv-00107-JGB (DTBx), 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)).

"In ruling on a motion to strike under Rule 12(f), the court must view the pleading in the light most favorable to the nonmoving party." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).  "Thus, 'before granting such a motion, the court must be satisfied that there are no questions of fact, that the claim or defense is insufficient as a matter of law, and that under no circumstance could it succeed.'" *Id.* (alterations omitted). (quoting *Tristar Pictures, Inc. v. Del Taco, Inc.*, No. 2:99-cv-07655-DDP (Ex), 1999 WL 33260839, at *1 (C.D. Cal. Aug. 31, 1999)).

24

In its motion, the Committee argues that Plaintiffs' claims for statutory damages, surcharge, estoppel, and reformation cannot be certified under any of Rules 23(b)(1)(A), 23(b)(1)(B), or 23(b)(2).  (Mot. Strike Class 8–18.)   Given the purpose of Rule 12(f), that striking class allegations at this stage is rare and generally disfavored, and that such a motion should only be granted if a class claim could not succeed under any circumstance, the Court will only strike the class allegations if it could strike *all* of Plaintiffs' class allegations asserted in the Fourth Amended Complaint.

At this early stage of the proceedings, it is premature to say whether the matter should proceed as a class action.  For example, with respect to a Rule 23(b)(2) class, the Committee argues that there can be no class that seeks plan reformation because it is "ultimately . . . the payment of monetary compensation." (*Id.* at 16.)  In response, Plaintiffs cite cases from the Second and Seventh Circuits in which those courts held that "reformation is available to a Rule 23(b)(2) class in the context of ERISA claims."  *Amara v. CIGNA Corp.*, 775 F.3d 510, 523 (2d Cir. 2014); *see Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012) (describing reformation of ERISA plan as "a declaration of the rights that the plan confers and an injunction ordering [the administrator] to conform the text of the plan to the declaration"); *cf. Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 960 (9th Cir. 2016) (recognizing that in *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–43 (2011), the Supreme Court "held that plan reformation was available under § 1132(a)(3) as an equitable remedy").  The Committee's counter to these cases is only that "plan reformation is legally unavailable and cannot support certification."  (Reply Mot. Strike Class 4.)  While that may be true, as discussed, the Court will not strike any of Plaintiffs' remedies under Rule 12(f) at this stage.  Because reformation is available in the class context of some ERISA claims, the Court cannot conclude at this point that there are no circumstances in which the proposed class could succeed.  Accordingly, the Court **DENIES** the Committee's Motion to Strike the Class Allegations.

# VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Committee's Motion to Dismiss and Strike, (ECF No. 134), and **DENIES** the Committee's Motion to Strike Class Allegations, (ECF No. 135).    In particular, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claims in Count VII to the extent they allege violations of § 1025(a)(1)(B)(i) for pre-2007 conduct.    The Court also **DISMISSES** Plaintiff Laura Bafford from this action.    Her dismissal from Count VII is **WITH PREJUDICE**.    In contrast, because amendment is not futile, her dismissal from Count III is **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.    All other bases for dismissal are **DENIED**.    The Court also **DENIES** the Committee's attempts to strike certain remedies and the class allegations from the Fourth Amended Complaint.

If Plaintiffs choose to amend, the Fifth Amended Complaint is due no later than **fourteen days** from the date of this Order, in which case the Committee shall answer or otherwise respond within **fourteen days** of the filing.    Plaintiffs' amendment must be limited to allegations concerning Laura Bafford stating a claim for Count III.    If Plaintiffs do not timely amend, Laura Bafford's dismissal from Count III shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend.

**IT IS SO ORDERED.**

April 2, 2025

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**